# WARSHAW LAW FIRM, LLC

266 King George Road, Suite C2
Warren, New Jersey 07059
Phone: (973) 433-2121
Fax: (973) 439-1047
jwarshaw@warshawlawfirm.com
clientservices@warshawlawfirm.com
www.warshawlawfirm.com

Julie M.W. Warshaw, Esq. *~^
Caryn Fitzgerald, Esq. *~

*Of Counsel:*
David B. Warshaw, Esq. *~^

Licensed in New Jersey *
Licensed in New York ~
Licensed in Massachusetts ^
Licensed in Pennsylvania

*[handwritten: Warshaw 3pm]*

September 19, 2017

*[handwritten: Schedule tel. Conf. to discuss request for exp basis]*

Via Priority Mail
Honorable Thomas Betancourt, A.L.J.
33 Washington Street, 7th Floor
Newark, New Jersey 07102

Re: F.H. and M.H. o/b/o J.H. v. West Morris Regional High School Board of Education
OAL Docket No.: EDS 10706-2017 N
Agency Ref. No.: 2017-26311

Dear Judge Betancourt:

This office represents the Petitioners in the above referenced matter. Enclosed please find an original and one (1) copy of Petitioners' motion for summary decision filed on an expedited basis including a Notice of Motion, Certification of Service, Proposed form of Order, Certification of Counsel, Exhibits, and Supporting Brief.

Thank you for your time and attention to this matter.

Respectfully Submitted,

By: _____
Julie Warshaw, Esq.

*[stamp: STATE OF NEW JERSEY OFFICE OF ADMIN. LAW  2017 SEP 20 P 2: 38  RECEIVED]*

cc:    Jodi Howlett, Esq. (Via Email and Regular Mail)
       F.H. and M.H. (Via Email)

*[handwritten: Filed 9/20
Reply 10/10
Sur reply 10/20]*

**Warshaw Law Firm, LLC**
Julie Warshaw, Esq. (ID# 027931993)
266 King George Road, Suite C2
Warren, New Jersey 07059
Phone (973) 433-2121
Fax (973) 439-1047
Attorneys for Petitioner

| | |
|---|---|
| F.H. and M.M. o/b/o J.H., | : STATE OF NEW JERSEY |
|   MINOR CHILD | : OFFICE OF ADMINISTRATIVE LAW |
|            : | |
|      Petitioners | : |
| | : |
| v. | : AGENCY NO.: 2017-26311 |
| | : DOCKET NO.: EDS 10706-2017 N |
| WEST MORRIS REGIONAL | : |
| HIGH SCHOOL DISTRICT | : |
| BOARD OF EDUCATION | : |
| | :   NOTICE OF MOTION |
|      Respondent | : |
| | : |

STATE OF NEW JERSEY
OFFICE OF ADMIN. LAW

2011 SEP 20 P 2:38

RECEIVED

To: Jodi Howlett, Esq.
    Cleary, Giacobbe, Alfieri & Jacobs, LLC
    5 Ravine Drive
    P.O. Box 533
    Matawan, New Jersey 07747

      **PLEASE TAKE NOTICE** that the undersigned attorney for Petitioners, F.H. and M.H. o/b/o J.H., Minor Child, will apply to the Office of Administrative Law, the Honorable Thomas Betancourt, A.L.J., as soon as counsel may be heard for an Order granting summary decision in favor of the Petitioners and against the Respondents because the school district failed to comply with the IDEA and Section 504. Petitioners shall rely upon their brief in support of their motion for summary decision as well as Counsel's Certification, and Exhibits attached thereto.

      **PLEASE TAKE FURTHER NOTICE** that Petitioners respectfully request oral argument on a date certain for said motions.

                        WARSHAW LAW FIRM, LLC
                        Attorneys for Petitioners

                        By: _____
                            Julie Warshaw, Esq.

Dated: September 19, 2017

**Warshaw Law Firm, LLC**
Julie Warshaw, Esq. (ID# 027931993)
266 King George Road, Suite C2
Warren, New Jersey 07059
Phone (973) 433-2121
Fax (973) 439-1047
Attorneys for Petitioners

---

| | |
|---|---|
| F.H. and M.M. o/b/o J.H., | : STATE OF NEW JERSEY |
|   MINOR CHILD | : OFFICE OF ADMINISTRATIVE LAW |
|            : | |
|       Petitioners | : |
| | : |
| v. | : AGENCY NO.: 2017-26311 |
| | : DOCKET NO.: EDS 10706-2017 N |
| WEST MORRIS REGIONAL | : |
| HIGH SCHOOL DISTRICT | : |
| BOARD OF EDUCATION | : |
| | :      CERTIFICATION OF SERVICE |
|       Respondent | : |
| | : |

---

I, Julie Warshaw, Esq., do hereby certify that on September 19, 2017, I sent by Regular Mail a copy of Petitioners' motion for summary decision to Jodi Howlett, Esq., attorney for the Respondent. I also hereby certify that I sent by Priority Mail the original and one copy to the Honorable Thomas Betancourt, A.L.J.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

WARSHAW LAW FIRM, LLC
Attorneys for Petitioners

By: _____
Julie Warshaw, Esq.

Dated: September 19, 2017

**Warshaw Law Firm, LLC**
Julie Warshaw, Esq. (ID# 027931993)
266 King George Road, Suite C2
Warren, New Jersey 07059
Phone (973) 433-2121
Fax (973) 439-1047
Attorneys for Petitioners

| | |
|---|---|
| F.H. and M.M. o/b/o J.H., | : STATE OF NEW JERSEY |
| MINOR CHILD | : OFFICE OF ADMINISTRATIVE LAW |
| : | |
| Petitioners | : |
| | : |
| v. | : AGENCY NO.: 2017-26311 |
| | : DOCKET NO.: EDS 10706-2017 N |
| WEST MORRIS REGIONAL | : |
| HIGH SCHOOL DISTRICT | : |
| BOARD OF EDUCATION | :        ORDER |
| | : |
| Respondent | : |
| | : |

**THIS MATTER** having come before the Court by Petitioners' motion for summary decision, and the Court having considered the submissions of the parties in support thereof and in opposition thereto, and for the reasons set forth herein;

**IT IS** on this _____ day of _____, 2017,

**ORDERED** that Petitioners' motion for summary decision is hereby granted and Petitioners are declared the prevailing party; and it is

**FURTHER ORDERED** that a copy of this Order shall be served upon all counsel of record within _____ days of the date hereof.

_____
Honorable Thomas Betancourt, A.L.J.

**Warshaw Law Firm, LLC**
Julie Warshaw, Esq. (ID# 027931993)
266 King George Road, Suite C2
Warren, New Jersey 07059
Phone (973) 433-2121
Fax (973) 439-1047
Attorneys for Petitioners

| | |
|---|---|
| F.H. and M.M. o/b/o J.H., | : STATE OF NEW JERSEY |
| MINOR CHILD | : OFFICE OF ADMINISTRATIVE LAW |
| | : |
| Petitioners | : |
| | : |
| v. | : AGENCY NO.: 2017-26311 |
| | : DOCKET NO.: EDS 10706-2017 N |
| WEST MORRIS REGIONAL | : |
| HIGH SCHOOL DISTRICT | : |
| BOARD OF EDUCATION | : |
| | : |
| Respondent | : |
| | : |

## BRIEF IN SUPORT OF PETITIONERS' MOTION FOR SUMMARY DECISION


On the brief:

Julie Warshaw, Esq.
Dated:   September 19, 2017

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**                                      3

**STATEMENT OF FACTS**                                       5

**LEGAL ARGUMENT**

     I.    PETITIONERS HAVE MET THE LEGAL STANDARD FOR
           SUMMARY DECISION                           15

     II.   THE SCHOOL DISTRICT FAILED TO COMPLY WITH THE
           REQUIREMENTS OF THE IDEA                    17

     III.  THE SCHOOL DISTRICT FAILED TO PROVIDE A STAY PUT
           PLACEMENT                                   18

     IV.  PETITIONERS ARE ENTITLED TO UNILATERALLY PLACE
           THEIR DAUGHTER AND BE REIMBURSED BY THE SCHOOL
           DISTRICT                                    21

     V.   THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AND
           PETITIONERS ARE ENTITLED TO SUMMARY
           DECISION                                    26

     VI.  THIS COURT SHOULD RENDER A DECISION ON AN
           EXPEDITED BASIS                             26

**CONCLUSION**                                               28

## TABLE OF AUTHORITIES

Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley,          17
458 U.S. 176, 102 S. Ct. 3034, 73 L.Ed.2d 690 (1982)

Bd. of Educ. of Poughkeepsie City Sch. Dist. v. O'Shea,               19
353 F. Supp. 2d 449 (S.D.N.Y. 2005)

Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520 (1995)      15, 16

Carlisle Area Sch. v. Scott P., 62 F.3d 520 (3d Cir. 1995)           22

C.H. v. Cape Henlopen School Dist., 606 F.3d 59 (2010)               17

Drinker v Colonial Sch. Dist. 78 F.3d 859 (3d Cir. 1996)             19

Endrew F. v. Douglas Cty. Sch. Dist., 173 S. Ct. 988 (2017)          22

J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ., 287 F.3d 267 (3d Cir. 2002)   19

Judson v. People's Bank and Trust Company of Westfield, 17 N.J. 67 (1954)    15

Lascari v. Bd. of Educ., 995 F.2d 1204 (3d Cir. 1993)                23

Matthew K. v. Parkland Sch. Dist., 1998 U.S. Dist. LEXIS 2024, 1998   19
WL 84009 (E.D.Pa. 1998)

Michael C. ex rel. Stephen C. v Radnor Twp. Sch. Dist.,              19
202 F.3d 642 (3d Cir 2000)

Montgomery Twp. Bd. of Educ. v S.C. ex rel. D.C.,
Civ. Action No. 06-398 (FLW) (D. New Jersey, January 29, 2007),
2007 U.S. Dist. LEXIS 6071                                           19, 21

Oberti v. Bd. of Educ., 995 F.2d 1204 (3d Cir. 1993)                 23

Ridgewood Bd. of Educ. v. P.S., 172 F.3d 238 (3d Cir. 1999)          22

S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260 (3d Cir. 2003)   21, 22

Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78 (3d Cir. 1996)        19, 24

T.R. v. Kingwood Twp. Bd. of Educ., 205 F.3d 572 (3d Cir. 2000)          22

**STATUES, RULES, CODE PROVISIONS**

N.J.A.C. 1:1-12.5                                    15

N.J.A.C. 6A:14-1.1(b)(1)                             21

N.J. Rule 4:46-2(c)                                  16

20 U.S.C. § 1412(a)(5)(A)                            21

20 U.S.C. § 1412(a)(10)(c)(ii)                       23

34 CFR § 300.510(b)                                  27

34 CFR § 300.515                                     27

## STATEMENT OF FACTS

1. J.H. is a minor child and is currently in the 11th grade.

2. J.H. suffers from school related anxiety and school phobia.

3. J.H. was enrolled in a therapeutic day program for a few months at the beginning of the 2016-2017 school year. She currently attends therapeutic sessions after school with a counselor at the Immediate Care Psychiatric Center ("ICPC") in Parsippany on a regular basis.

4. J.H. attempted to return to high school in December 2016 but that was not successful due to her school related anxiety and school phobia. In December 2016, the Petitioners agreed to implement a 504 Plan allowing J.H. time and access to a quiet place or to the guidance counselor or nurse if she was feeling anxious. However, she was only able to attend school for a few days and then had to stop, resulting in the school district placing her on home instruction. There was no IEP at that time.

5. In December 2016, since J.H. was unable to attend school, the school district placed J.H. on home instruction for the remainder of the 2016-2017 school year due to school related anxiety and school phobia. J.S. did very well academically on home instruction.

6. According to J.H.'s medical providers, she is ready to attend a lesser restrictive out of district learning environment but she still suffers from school related anxiety and school phobia.

7. Petitioners sought an IEP for J.H. and an out of district placement. The school district would only place her in an in district behavioral self-contained class.

8. ICPC recommended that J.H. attend an out of district placement. J.H. receives therapeutic services on a regular and on-going basis and therefore she is not in need of a therapeutic school setting.

9. J.H. was evaluated by the child study team and toward the end of the 2016-2017 school year, the school district proposed an IEP classifying J.H. as "Emotionally Disturbed" due to her school related anxiety.

10. J.H. is not emotionally disturbed, as she does not meet the criteria for said classification. Although the school district attempted to characterize J.H.'s school related anxiety as defiance and school refusal, her therapist and Psychiatrist have not characterized her anxiety in this manner. Her school related anxiety is not defiance or school refusal, as J.H. does not have any behavioral issues.

11. The psychological evaluation conducted on January 19, 2017 by Dr. Sherry Wilk on behalf of the school district noted that J.H. scored in the low average range for Working Memory and overall in the average range for processing speed but her scores on the subtests varied considerably. The discrepancies in her scores should have led the district to identify a learning disability but instead, these discrepancies in scores were ignored. The school district failed under Child Find to recognize that she had an underlying learning disability and they failed to classify her as such. It is important to note that there were also factual errors in the district's testing reports and instead of recognizing J.H.'s anxiety, they used wording in their reports that would suggest that J.H. had behavioral issues, despite no evidence to support such a conclusion. A redacted copy of Dr. Wilk's January 19th report is attached hereto as **Exhibit A**.

12. A report dated March 15, 2017 from Psychiatrist, Dr. Shankar Srinivasan at
Immediate Care Psychiatric Center ("ICPC"), indicated that J.H.'s diagnosis was
"Major depression recurrent, Panic Disorder and School issues" and there is a
recommendation for an out of district placement, but not a therapeutic out of
district placement. Nowhere was J.H. ever diagnosed as being emotionally
disturbed. A redacted copy of Dr. Srinivasan's March 15th report is attached hereto
as **Exhibit B**.

13. A report dated August 17, 2017 from J.H.'s therapist, Melissa Dolgos at
Immediate Care Children's Psychiatric Center ("ICCPC") noted that, J.H. in the
school district setting, "was unable to complete her academic assignments due to
the anxiety causing her confusion and delaying her ability to function in school.
While in smaller group settings, I have noticed that [J.H.] was able to progress in
managing her anxiety." Ms. Dolgos also noted, "She excels better when people
around her are mature and college bound rather than peers who have behavioral
issues. Throughout my time with her, [J.H.] has never demonstrated any negative
behaviors or came to program due to behavioral issues. She also does not respond
well when others around her have behavioral issues as it distracts her and causes
her to become anxious again. She also will be continuing treatment here at ICCPC
throughout the school year and will not be in need of therapy while in school." Ms.
Dolgos also noted, "She will need a structured but non-strict educational
environment as she functions better with more flexible schedules. It is highly
recommended that she be placed in a school that can meet these needs in order for

[J.H.] to function academically and succeed." A redacted copy of Ms. Dolgos' report is attached hereto as **Exhibit C.**

14. The school district agreed to pay for independent Psychiatric and Psychoeducational testing. Dr. Natalie Schuberth from Alexander Road Associates conducted the Psychoeducational testing and issued a report dated August 21, 2017. On July 31, 2017, August 2, 2017 and August 3, 2017, J.H. was evaluated by Dr. Schuberth, Psy.d, BCBA-D. A redacted copy of the report is attached hereto as **Exhibit D**. Dr. Schuberth indicated in her evaluation report that JH met the criteria for the diagnosis of Specific Learning Disorder with impairment in mathematics, specifically with fluent calculation and she had issues with processing speed. See **Exhibit D,** pg. 13. She also met the criteria for Major Depressive Disorder, Recurrent Episode, and Generalized Anxiety Disorder. See **Exhibit D,** pg. 13.

15. We are still waiting for Dr. Platt's independent psychiatric report to be completed.

16. However, in the interim, school has started. Counsel for Petitioners has reached out to counsel for the district on numerous occasions through telephone calls and emails and has not received the courtesy of any response. Copies of various e-mails to counsel for the district are attached hereto as **Exhibit E.**

17. The school district did not have an appropriate placement for J.H. and they refused to continue home instruction as a stay put placement until such time as an appropriate placement could be determined.

18. Without having an appropriate educational placement ready for J.H. or a stay put placement at the school district, Petitioners, through counsel, sent a 10-day unilateral placement letter to counsel for the district.

19. Petitioners applied to the Purnell School for placement of J.H. for the 2017-2018 school year. J.H. was accepted.

20. Before the first day of school, Petitioners reached out to the school district since there had been no response from counsel for the district. Petitioners were informed that as of the first day of school, J.H. would not be classified and that she would be considered a general education student with a 504 Plan. Pursuant to an email exchange with Petitioners and Joseph Cusack from the school district, he confirmed that he and Kendra from the school district had a conversation with Petitioner on August 25, 2017 and that according to the school district, J.H. would be returning back to West Morris High School as a general education student with a 504 Plan. Mr. Cusack indicated in his response email dated September 11, 2017 that the 504 Plan that was developed for J.H. in December 2016 would still be in effect when she returned to school for the 2017-2018 school year. The 504 Plan attached to his email was not signed by Petitioners and it was not updated to include any diagnosis, accommodations, or any relevant information since December 2016. A redacted copy of this 504 Plan is attached hereto as **Exhibit F**.

21. Petitioners were not aware that this 504 Plan would still be in effect or used by the district since it was not up to date and it was drafted in December 2016. Petitioners did not sign this 504 Plan and were of the belief that the December 2016 504 Plan was no longer in effect and had expired, especially in light of the fact that the

school district had found J.H. eligible for special education services in May 2017

and had drafted a proposed Individualized Education Plan ("IEP"), for which the

Petitioners' pending Due Process action was filed. A redacted copy of the

proposed IEP is attached hereto as **Exhibit G**. This again is an example of the

denial of rights under the IDEA and Section 504. J.H. is entitled to an updated and

appropriate document and this 504 Plan does not cover her learning disability and

is not appropriate for her current issues or placement. Thus, the school district has

again violated her rights.

22. The school district found J.H. eligible for special education services in April 2017

and then recently, on their own without any meeting or input from Petitioners,

decided to de-classify J.H. and to now consider her only a general education

student without any special education services and without any information to

support removal of the diagnosis of school related anxiety. School related anxiety

was the basis for the school district classifying J.H. She continues to have school

related anxiety. She remains eligible for special education services under the IDEA

and is entitled to an IEP. The school district unilaterally acted on its own to

declassify J.H. without any basis or justification. The district has violated J.H.'s

rights under the IDEA, Section 504, and Child Find and has denied J.H. a free and

appropriate public education in the least restrictive environment entitling J.H. and

Petitioners to damages, costs, reimbursement, compensatory education, and

attorney's fees.

23. Moreover, the school district refused to continue J.H. on home instruction, which was her last known placement at the school district, thereby denying her a stay put placement and further violating her rights.

24. Interestingly, according to the proposed IEP dated May 16, 2017, there are several references to the school district continuing home instruction and that Jenna would slowly transition into the Behavioral Supports Program. See **Exhibit G,** pages 13, 14, 15, 17, 18.

25. J.H. met and continues to meet the criteria under the Individuals with Disabilities Education Act ("IDEA") as a person with a disability and is entitled to special education, related services, accommodations, and an appropriate placement.

26. To date, the School District has failed to classify her appropriately or offer her an appropriate educational placement that meets her unique academic, social, emotional and physical needs.

27. At the initial IEP meeting on May 16, 2017, the School District proposed the Behavior Services Program ("BSP") behavioral program at the Mendham High School.  This program is a behavior program with a school counselor available during the school day. It is a self-contained classroom for approximately 20 students of all grade levels with multi-levels of academics being taught at once throughout the classroom.  However, specials such as gym class are done on the computer rather than in gym classes. In the proposed IEP dated May 16, 2017, the BSP program is described as, "A reward system is built into this program in which students can earn field trips for consistent attendance and completion of academic work." **Exhibit G,** pages 10, 17.

11

28. There are even behavior oriented goals and objectives included in the proposed IEP relating to J.H. learning what the triggers of her anxiety are, to be able to measure the strength of her emotional reactions, and to identify strategies to reduce anxiety and attendance at school. See **Exhibit G, page 11.**

29. The proposed IEP indicates, "J.H. has tried returning to general education classes with supports such as extended time, frequent breaks, and opportunities to meet with her guidance counselor and/or the CST. Despite these supports, consistent school attendance still proved difficult for [J.H.] The class size and school environment at West Morris Central High School has been challenging for her. Having a fresh start at Mendham High school with different peers is suggested at this time." **Exhibit G,** page 17.  Although the district indicates she will be in regular education classes (**Exhibit G**, page 17), she would face the same stressors if not more being in a new unfamiliar environment and the school district acknowledged that this environment already failed.

30. Moreover, although the district claims that she would be in regular education classes, the proposed IEP states she would be, "In the presence of General Education Students for less than 40% of the entire school day." **Exhibit G,** page 18. In actuality, the BSP class is self-contained and would be more restrictive for her and any classes she needed for a college track would be offered in the general education setting, which the district acknowledged failed her.

31. Furthermore, the BSP program does not cater to students who are on a college track in that many classes are not offered all of the time and if J.H. wanted to be on a college bound track, she would have to take classes in the larger general

education setting and navigate crowded hallways within a school that she was not familiar with, as the school is located in Mendham and not in Chester. This type of program is contrary to J.H.'s needs and would cause her severe anxiety. Therefore, this proposed behavioral placement is not appropriate to meet J.H.'s unique needs.

32. In addition, upon an observation of the BSP program by Petitioner and J.H., they determined that the students in that isolated program are not her social peers. J.H. was uncomfortable with the students, as they were not academically oriented or involved in challenging academic subjects. No homework is given in the BSP program and it caters to students who are truant and have significant behavioral issues. These students were not socially appropriate peers for J.H., as J.H. is not dealing with behavioral issues, issues with the criminal justice system, truancy, substance abuse, etc.

33. J.H. has succeeded academically on home instruction as she works well in a one to one or small classroom setting. J.H. is academically oriented and plans to attend college after graduating high school.

34. The School District would not consider a Flex school or a school with a one to one academic setting with some socialization for group activities or specials for J.H. because the School District claimed that J.H. needs to be in a public school setting so that she can learn to function in a larger environment in preparation for college. Petitioners believe this argument is without merit because J.H. can choose a college with an atmosphere that will meet her academic and her social needs. The school district also claimed that she needed a therapeutic educational setting but that is not the case according to J.H.'s therapist and now Dr. Schuberth's

13

independent evaluation report. Therefore, since J.H. needs a lesser restrictive environment and the BSP program is a self-contained more restrictive environment, it is not an appropriate placement for J.H. For the school district to suddenly consider J.H. a general education student after being found eligible for special education services is also not an appropriate placement for J.H. Thus, the school district has violated her rights under the IDEA, Section 504, and Child Find.

35. An out of district placement at a Flex type School, a school with a one to one learning environment with a social component or a private school with small classes and an appropriate peer group would meet J.H.'s needs academically and socially. J.H. would simultaneously continue her therapeutic component at ICPC where she has a trusted therapist and appropriate services.

36. The school district argues that an out of district placement at the Purnell School would be more restrictive to J.H. than the BSP program, despite the fact that the BSP program would place J.H. in an isolated classroom with inappropriate peers and cause her unnecessary anxiety by placing her with the larger general education classes for her academics.

37. Presently, the Due Process hearing is scheduled for February 26, 2018, April 6, 2018, and April 9, 2018, more than six months into the 2017-2018 school year. Since the parties have only had brief conference calls with Judge Moskowitz and Judge McGill, Petitioners respectfully request that this Court conduct an in-person settlement conference, that this Court hear their motion for summary decision on an expedited basis with a date certain with oral argument, that this Court grant

Petitioners' motion for summary decision, and that this Court expedite the Due

Process hearing in accordance with the 75-day Rule under the IDEA.

## LEGAL ARGUMENT

### I. PETITIONERS HAVE MET THE LEGAL STANDARD FOR SUMMARY DECISION

Pursuant to N.J.A.C. 1:1-12.5 entitled, Motion for Summary Decision; when and

how made; summary decision, it states,

> (a) At any time after a case is determined to be contested, a party may move for summary decision upon all or any of the substantive issues therein.

> (b) The motion for summary decision shall be served with briefs and with or without supporting affidavits. The Decision sought may be rendered if the papers and discovery which have been filed, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to prevail as a matter of law. When a motion for summary decision is made and supported, an adverse party in order to prevail must be responding affidavit set forth specific facts showing that there is a genuine issue which can only be determined in an evidentiary proceeding. If the adverse party does not so respond, a summary decision, if appropriate, shall be entered.

Further, the New Jersey Supreme Court, in Brill v. Guardian Life Ins. Co. of America,

142 N.J. 520 (1995), re- examined the summary motion procedure and directed that the

trial courts should not hesitate to grant summary judgment when the evidence is "so one-

sided that one party must prevail as a matter of law." Id., at 540.  It is respectfully

submitted that the evidence in the within matter dictates that Petitioners motion for

summary judgment should be granted.

The Brill Court, following Judson v. People's Bank and Trust Company of

Westfield, 17 N.J. 67 (1954), found that ". . . a court should deny a summary judgment

motion only where the party opposing the motion has come forward with evidence that

creates a 'genuine issue as to any material fact challenged'." Id., at 529.  In order for
summary judgment to be defeated, the party opposing the motion must point to disputed
issues of fact that are of a substantial nature. "While those that are 'of an insubstantial
nature' do not, 'genuine' issues of material fact preclude the granting of summary
judgment." Id. 529-530.

> The Brill Court held:
>
> "Under this new standard, a determination whether there exists a 'genuine issue'
> of material fact that precludes summary judgment requires the motion judge to
> consider whether the competent evidential materials presented, when viewed in
> the light most favorable to the non-moving party, are sufficient to permit a
> rational factfinder to resolve the alleged disputed issue in favor of the non-
> moving party. The 'judge's function is not himself [or herself] to weigh the
> evidence and determine the truth for trial' . . . . Credibility determinations will
> continue to be made by a jury and not a judge. If there exists a single
> unavoidable resolution of the alleged disputed issue of fact, that issue should be
> considered insufficient to constitute a 'genuine' issue of material fact for
> purpose of Rule 4:46-2." Id. 540.

The New Jersey Supreme Court amended the summary judgment rule, effective
September 1996, to conform to the Brill opinion.  In pertinent part, Rule 4:46-2(c) now
provides: "An issue of fact is genuine if, considering the burden of persuasion at trial, the
evidence submitted by the parties on the motion, together with all legitimate inferences
therefrom favoring the non-moving party, would require submission to the trier of fact."
Id.

In the present case, Petitioners have met their burden that no genuine issues of
material fact exist in that Petitioners have proven conclusively that the School District
has failed to offer an appropriate placement for J.H. and has unilaterally denied her
special education services in violation of IDEA.  Petitioners were forced to place J.H. at
the Purnell School as a unilateral placement due to the school district's failure to provide

any appropriate placement and for unilaterally de-classifying her and considering her a general education student without any supports needed to succeed in public school. Therefore, Petitioners respectfully request that their motion for summary decision be granted and that the school district must pay for the costs and transportation to and from the Purnell School as a valid unilateral placement for J.H. for the remainder of high school (two years). Petitioners seek reimbursement from the school district for their costs, tuition and all associated fees at the Purnell School, and attorney's fees.

## II.     THE SCHOOL DISTRICT FAILED TO COMPLY WITH THE REQUIREMENTS OF THE IDEA

Under the Individuals with Disabilities Education Act (the "IDEA"), the inquiry is twofold. First, did the School District comply with the procedures set forth in the IDEA and second, did the School District fulfill its obligations to provide the student with FAPE. C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 66 (2010); See also Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 206-07, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Procedurally, the "IDEA sets out a variety of procedures to be followed in the creation of the IEP. For instance, the IEP is to be prepared at a meeting including a qualified representative of the local educational agency, the child's teacher, a special education teacher, the child's parent or guardian, and, where appropriate, the child." Id. §1414(d)(1)(B). Id. At 65-66.

The School District found J.H. eligible for special education services in April 2017 and is now attempting to de-classify her and withdraw those services and place J.H. with general education students. The School District did this in contradiction to Petitioners' wishes and without their consent or knowledge. This is a direct violation of J.H.'s rights under IDEA. The school district also attempted to classify her incorrectly

and failed to consider the report by her Psychiatrist. The School District cannot unilaterally change J.H.'s placement and find her ineligible for special education.

Further, under the Child Find provisions, school districts are responsible for identifying students with a disability. The School District failed to identify J.H. as a student with learning disabilities, despite finding deficits in some areas. As indicated by Dr. Schuberth's report, J.H. meets the criteria for the diagnosis of Specific Learning Disorder with impairment in mathematics and she has processing issues. The School District had an obligation to evaluate and find this learning disorder and provide J.H. with appropriate services. Instead, the School District insisted on trying to classify J.H. as emotionally disturbed without any of the criteria for that diagnosis being met and then suddenly unilaterally determined she was a general education student. This is a denial of J.H.'s right to FAPE. Presently, J.H. does not have a proposed special education placement for the 2017-2018 school year, only that she would be a general education student, despite their own finding of eligibility for special education services. This is a direct violation of the IDEA, Child Find, and Section 504. Since no genuine issues of material fact exist, Petitioners are entitled to summary decision.

### III.    THE SCHOOL DISTRICT FAILED TO PROVIDE A STAY PUT PLACEMENT THEREBY DENYING J.H. FAPE

Under the IDEA, the Stay Put provision requires that, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child… until all such proceedings have been completed." See 20 U.S.C. Section 1415 (l).

The stay put provision of the IDEA "represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 83 (3d Cir. 1996) (citing Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864-65 (3d Cir. 1996)). Moreover, courts have held school districts responsible for pendent placement including years subsequent to the year for which an IEP is at issue. See, e.g., Matthew K. v. Parkland Sch. Dist., 1998 U.S. Dist. LEXIS 2024,1998 WL 84009, *7 (E.D.Pa. 1998) ("pendent placement is an entirely independent determination" from the determination of the appropriate placement for the following school year); Bd. of Educ. of the Poughkeepsie City Sch. Dist. v. O'Shea, 353 F.Supp.2d 449, 459 (S.D.N.Y. 2005)("pendency placement and appropriate placement are separate and distinct concepts"). Montgomery, at *43-44.

Furthermore, "Stay-put orders are designed to maintain the status quo during the course of proceedings. They 'function[], in essence as an automatic preliminary injunction.'" See J.O. ex rel. C.O. v. Orange Tp. Bd. of Educ., 287 F.3d 267, 272 (3d Cir. 2002). "[T]he stay-put provision was intended to serve as a type of 'automatic preliminary injunction' preventing *local educational authorities* from unilaterally changing a student's existing educational program." See Michael C. ex rel. Stephen C. v. Radnor Twp. Sch. Dist., 202 F.3d 642, 650 (3d Cir. 2000) (emphasis added).

Petitioners believe that the stay put placement would be home instruction because that was the last placement that J.H. was in for almost the entire 2016-2017 school year. The district through counsel argued to Judge McGill that stay put was at issue because Petitioners were seeking a non-special education out of district placement. This is not true. Since the school district failed to propose an appropriate placement for J.H., the Petitioners were forced to locate an appropriate placement for J.H. at the Purnell School, which is an all-girls school for students who are college bound with IEP's and 504 Plans and who need small classes and some emotional support, but it is not a therapeutic school. The Petitioners did not pursue a motion for stay put only because they felt that

19

based on J.H.'s therapist's and Psychiatrist's recommendations, J.H. was at a point where she needed to begin socialization with like peers and to begin to transition into a supportive and appropriate school setting. However, Petitioners did not feel that placing her into the Behavioral Supports Program ("BSP"), a self-contained behavioral based program at a different high school, was an appropriate educational or psychological setting for her. In fact, that program is geared toward disaffected and troubled students, those with learning disabilities for alternative hands-on learning, and students dealing with issues such as truancy, drugs, alcohol abuse, issues with the law, and school refusal. There is no homework given in that class, it is geared toward multi-levels of students and multi-grades, and the students do not have socialization outside of that self-contained classroom. The only way J.H. could complete a college preparation curriculum in that class was to go to general education classes in the main part of the high school as many classes are not offered in the BSP program. Since navigating through crowded hallways and attending large general education classes was a source of J.H.'s school related anxiety, that would not meet her needs. As a result, the only way she would be able to complete her gym class or other college preparation classes would be to take them on line in the BSP self-contained room. That would not meet her needs. J.H.'s medical providers and Petitioners believe that the BSP program would be very restrictive and not the least restrictive environment to meet J.H.'s needs. In fact, they believe that she needed to go from home instruction, a very restrictive environment, to a lesser restrictive school setting but one that could meet her academic, social, emotional, and physical needs. They did not feel that the BSP program could meet those needs.

While this dispute over the appropriate program took place, J.H. should have been provided with a stay put placement, her last educational placement, which was home instruction. The district refused. Since the district had argued to the Court during the first settlement conference that J.H. was classified as Emotionally Disturbed and needed a therapeutic educational setting, and then argued to the Court during the second settlement conference that J.H. was a general education student, Petitioners lost faith in the abilities of the district to meet their daughter's needs. It was then that they decided to unilaterally place J.H. at the Purnell School. Nevertheless, the fact that the district refused to provide J.H. with a stay put placement of home instruction, denied J.H. her rights under the IDEA entitling Petitioners to summary decision as no genuine issues of material fact exist.

## IV.   PETITIONERS ARE ENTITLED TO UNILATERALLY PLACE THEIR DAUGHTER AND BE REIMBURSED BY THE SCHOOL DISTRICT

Pursuant to the IDEA when a student is determined to be eligible for special education services, the school district is then required to develop an IEP setting forth the program by which the child will receive a free appropriate public education ("FAPE") in the least restrictive environment ("LRE"). The IEP is required to be developed through collaboration between the parents and the school district's child study team. See 20 U.S.C. Section 1414(d)(1)(B); 20 U.S.C. Section 1412.  See also, S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 264 (3d Cir. 2003); Montgomery Twp. Bd. of Educ. v. S.C. ex rel. D.C.,Civ. Action. No. 06-398 (FLW) (D. N.J. January 29, 2007).

Under IDEA and the New Jersey regulations, there is a strong preference for mainstreaming, or requiring education in the least restrictive environment. See 20 U.S.C. § 1412(a)(5)(A); See also N.J.A.C. Section 6A:14-1.1 (b)(1).  The Third Circuit has interpreted this requirement as "mandating education 'in the least restrictive environment

that will provide [the student] with a meaningful educational benefit.'" S.H. v. State-Operated School Dist. of the Cty. of Newark, 336 F.3d 260, 265  (3rd Cir. 2003) (quoting T.R. v. Kingwood Twp. Bd. Educ., 205 F.3d 572, 578 (3d Cir. 2000)). "The least restrictive environment is one that, to the greatest extent possible, satisfactorily educates disabled children together with children who are not disabled, in the same school the disabled child would attend if the child were not disabled." Carlisle Area Sch. v. Scott P., 62 F.3d 520, 535 (3d Cir.1995).

Before the Endrew decision by the United States Supreme Court, a FAPE was defined as, "an IEP must provide "'meaningful' access to education and confer 'some educational benefit' upon the child for whom it is designed." Ridgewood Bd. of Educ. v. P.S., 172 F.3d 238, 247 (3d Cir. 1999) (quoting Rowley, 458 U.S. at 192, 200). To be appropriate under IDEA, however, this educational benefit must be more than "trivial," and must offer the potential for "significant learning" and "meaningful benefit." See Rowley, 458 U.S. at 189; See also Ridgewood Bd. of Educ., 172 F. 3d at 247. However, the Endrew case more clearly defined the standard to determine if a child was receiving FAPE. In Endrew F. v Douglas Cty Sch. Dist., 173 S. Ct. 988 (2017), the Supreme Court focused on student progress and stated that,

> To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances. The "reasonably calculated" qualification reflects a recognition that crafting an appropriate program of education requires a prospective judgment by school officials. The Act contemplates that this fact-intensive exercise will be informed not only by the expertise of school officials, but also by the input of the child's parents or guardians. Endrew. 173 S. Ct. at 999. (quoting Rowley, 458 U.S. at 208).

The Supreme Court, focusing on progress through the system as the true

definition of education, stated that for a child who is fully integrated in a regular classroom, an IEP typically should be, "'reasonably calculated to enable the child to achieve passing marks and advance from grade to grade.'"  Id., at 999. (quoting Rowley, 458 U.S. at 203-204).

The Supreme Court noted that Rowley applied to a child who is in the general education setting. However, for those students not in the general education setting, the Court noted, "When all is said and done, a student offered an educational program providing 'merely more than *de minimis*' progress from year to year can hardly be said to have been offered an education at all." Id., at 1001.  When a child with disabilities is receiving instruction that is so low, it is almost akin to the child 'sitting idly... awaiting the time when they were old enough to "drop out.'...The IDEA demands more." Id.

If a parent disagrees with the proposed placement set forth in the IEP and cannot reach a resolution with the school district as to placement, the parents under the IDEA, after giving the school district the required 10-day notice, have the right to unilaterally place their child in a private school or a non-public school and seek reimbursement from the school district for that unilateral placement. The parents must demonstrate, not that the unilateral placement meets the child's needs, but rather that the program proposed in the IEP by the district was not appropriate and that the parents acted in good faith. See 20 U.S.C. Section 1412(a)(10)(C)(ii); See also Lascari v. Bd. of Educ., 116 N.J. 30, 560 A. 2d 1180, 1183-1184 (N.J. 1989). The school district must demonstrate that the proposed IEP was appropriate. See also Oberti v. Bd. of Educ., 995 F.2d 1204 (3d Cir. 1993).

The Third Circuit has held that if the Administrative Law Judge determines that the unilateral placement was appropriate, then that creates a new interim placement. See

Susquenita School District., 96 F. 3d at 83 (3d Cir. 1996). Further, once a unilateral placement is determined to be appropriate, then the parents would be entitled to retroactive reimbursement.

The May 16, 2017 draft IEP proposed that J.H. continue with home instruction and then attend the BSP program in the afternoons. There are behavior oriented goals and objectives set forth in the IEP. These assume that J.H.'s school related anxiety is behavioral, school refusal, defiance, and purposeful, rather than a psychological issue. Petitioners and J.H.'s medical providers did not believe that this program was appropriate for J.H. and that it was actually a more restrictive placement that would not meet her needs. Despite the language in the proposed IEP, the school district disputed and would not continue the stay put placement of home instruction. Without a stay put placement at the start of the school year and without an agreed upon IEP, and the district on its own determining that she was no longer eligible for special education services as they deemed her a general education student, J.H. did not have a place to attend school and the district was in violation of her rights to FAPE.

Further, on September 11, 2017, after the school year had already started, Petitioners were informed by the school district that J.H. would be considered a general education student with a 504 Plan. That means that the school district, after having found her eligible for special education services, without any consultation or consent or knowledge by Petitioners, determined that she was no longer eligible for special education services, without any basis to make that decision. J.H.'s underlying school related anxiety, the basis for which the school found her eligible for special education services, did not change and there is no evidence to that effect. In fact, Dr. Schuberth's

independent evaluation determined that in addition to her school related anxiety, J.H. actually had a specific learning disability that had not been identified by the school district. The school district's May 16, 2017 IEP and then determining on their own that J.H. was a general education student, after seeing Dr. Schuberth's independent report, runs contrary to their duties under the IDEA. The school district failed to discover or acknowledge J.H.'s specific learning disability and certainly did not address it or her school related anxiety by deciding she was now going to be a general education student. Therefore, since the school district cannot sustain their burden of proof that the proposed IEP for the BSP program was appropriate and that the removal of eligibility for special education services was appropriate, Petitioners are entitled to summary decision and to prevail.

Furthermore, Petitioners acted in good faith and at all times communicated with the district and tried to work with the district to resolve this matter through participating in mediation, settlement discussions, conference calls with Administrative Law Judges, and constant communication with the attorney for the district, as well as communication directly with the district. However, for several weeks there has been no response from the attorney for the district regarding classification, placement, eligibility, and settlement. **(Exhibit E)** Thus, the district failed to act in good faith. Since there are no genuine issues of material fact, Petitioners are entitled to summary decision.

Petitioners with the assistance of J.H.'s medical providers, selected an appropriate educational setting for J.H. which has met her needs academically with a challenging college track curriculum, like-minded peers, a place that cultivates friendships, a place that is supportive with a full-time counselor and a psychologist on campus three (3) days

per week, and a learning environment where she can take regular gym classes and classes with peers and not on-line classes. J.H. continues to see her therapist a few times a week outside of school, where she is comfortable and is supported. Although the Court does not examine the unilateral placement program, it is fair to say that J.H. has attended for almost two (2) weeks and is doing well academically, socially, emotionally, and physically. Therefore, since the school district cannot sustain their burden of proof that they provided J.H. with FAPE in the LRE, due to their failure to propose an appropriate educational placement in the May 16, 2017 IEP and then on their own determined she was a general education student, no genuine issues of material fact exist, entitling Petitioners to summary decision and being declared the prevailing party in this action.

## V.  THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AND PETITIONERS ARE ENTITLED TO SUMMARY DECISION

As set forth in detail above, Petitioners have provided specific reasons and supporting documents and law to determine that they have met their burden of proof. Since no genuine issues of material fact exist as to whether or not the school district failed to comply with the IDEA and to identify J.H.'s disability and provide an appropriate placement option, Petitioners are entitled to summary decision. In this case, Respondent school district cannot sustain its burden of proof. Petitioners have provided specific, clear, and multiple violations of the IDEA. Therefore, Petitioners respectfully requests that their Motion for Summary Decision be granted and that they are determined to be the prevailing party.

## VI.  THIS COURT SHOULD RENDER A DECISION ON AN EXPEDITED BASIS

Under the IDEA, the parties are supposed to receive a final written decision within 75 days of filing their Due Process Complaint.  See 34 CFR § 300.515.  The only exception to that rule is if there is a good reason for a delay explained by either party, such as a medical reason, death in the family, or key witnesses are unavailable. The 75-day period is broken up into two parts: (1) the first 30 days after filing, known as the "resolution period," when the parties should attempt to settle the case; and (2) if the case does not settle, the decision should come from the hearing officer within 45 days after the resolution period expires. See 34 CFR § 300.515; see also 34 CFR § 300.510(b).

Petitioners filed their Due Process Complaint on May 30, 2017.  It has been over 75 days from the filing of the Complaint. The Due Process hearings are not scheduled until February 26, 2018, April 6, 2018, and April 9, 2018. The parties have had ample time to settle the case yet the School District seems unwilling to do so and their attorney has failed to respond to any communications from Petitioners' counsel. A final decision has not been reached and neither party has requested a specific extension of time in accordance with the rules.  J.H. does not have a current placement for the 2017-2018 academic year as the school district unilaterally de-classified her without any basis and in contradiction to Dr. Schuberth's independent evaluation report finding a specific learning disability and school related anxiety, and in contradiction to Ms. Dolgos' report, and that of J.H.'s Psychiatrist, Dr. Srinivasan.  J.H. has been denied FAPE and the school district is violating the IDEA.  A decision must be rendered expeditiously to protect J.H.'s rights. Petitioners should not have to suffer a financial burden of paying for the Purnell School because of the school district's blatant failures. Therefore, due to the school district's violations and considering J.H. is doing well at the Purnell School as a result of a

unilateral placement, it is respectfully requested that this Court find that the school district denied J.H. a FAPE in the least restrictive environment by proposing the BSP behavioral program for a student without behaviors, by trying to classify her incorrectly as emotionally disturbed, by failing to find that she has a specific learning disability in addition to school related anxiety, by unilaterally declassifying her and indicating that she is now considered a general education student with a 504 Pan, and by denying her a stay put placement of continued home instruction. Petitioners respectfully request that this Court grant their motion for summary decision on an expedited basis requiring the school district to pay for the Purnell School and transportation to and from said school and award attorney's fees and costs, declaring the Petitioners as the prevailing parties, as there are no genuine issues of material fact and the school district cannot sustain their burden of proof. J.H.'s parents have had to unilaterally place their child in a private school and incur unnecessary financial burdens due to the school district's colossal failures and denial of FAPE in the least restrictive environment.

## CONCLUSION

Due to the reasons set forth above, Petitioners respectfully request that this Court grant their Motion for Summary Decision as there are no genuine issues of material facts concerning the school district's failure to comply with the IDEA.

Respectfully Submitted,
WARSHAW LAW FIRM, LLC

By: _____
Julie Warshaw, Esq.

Dated: September 19, 2017

28

**Warshaw Law Firm, LLC**
Julie Warshaw, Esq. (ID# 027931993)
266 King George Road, Suite C2
Warren, New Jersey 07059
Phone (973) 433-2121
Fax (973) 439-1047
Attorneys for Petitioner

| | |
|---|---|
| F.H. and M.M. o/b/o J.H.,<br>  MINOR CHILD<br>            :<br>            Petitioners | : STATE OF NEW JERSEY<br>: OFFICE OF ADMINISTRATIVE LAW<br>:<br>: |
| v. | : AGENCY NO.: 2017-26311<br>: DOCKET NO.: EDS 10706-2017 N |
| WEST MORRIS REGIONAL<br>HIGH SCHOOL DISTRICT<br>BOARD OF EDUCATION<br>            Respondent | :<br>:<br>:      CERTIFICATION OF COUNSEL<br>:<br>: |

I, Julie Warshaw, do hereby certify as follows:

1. I am an attorney at law in the State of New Jersey and the owner of the Warshaw Law Firm, LLC. I am the attorney for the Petitioners and as such, I am fully familiar with the facts of this matter.

2. To the best of my knowledge, Exhibit A is a true and accurate copy of the original documents.

3. To the best of my knowledge, Exhibit B is a true an accurate copy of the original documents.

4. To the best of my knowledge, Exhibit C is a true an accurate copy of the original documents.

5. To the best of my knowledge, Exhibit D is a true an accurate copy of the original documents.

6. To the best of my knowledge, Exhibit E is a true an accurate copy of the original documents.

7. To the best of my knowledge, Exhibit F is a true an accurate copy of the original documents.

8. To the best of my knowledge, Exhibit G is a true an accurate copy of the original documents.

9. In an attempt to resolve an appropriate placement for J.H., I reached out to counsel for the school district on August 18, 2017.

10. I also made several more attempts to obtain a placement for the start of school for J.H. by leaving messages for counsel for the district as well as emailing her on August 24, 2017, drafting and emailing a letter to her on August 26, 2017, and again on August 29, 2017.

11. To date, I have not had the courtesy of any response from counsel for the school district. **(See Exhibit E)**

12. At the start of the school year, J.H. had no appropriate placement at the public school.

13. The school had previously proposed the Behavioral Supports Program ("BSP") at another high school where she would be in a self-contained behavioral class with students of varying ages and grades, where the object of the class was to keep students in school rather than have them pursue higher learning. The BSP program is not geared toward students who are academically oriented who want to attend college because there is no homework in that program and any higher-level classes are only provided in the general education setting, which is the setting that causes J.H. anxiety.

14. However, even after the school district found J.H. eligible for special education services, they then unilaterally after school began this year, de-classified her and told Petitioners that J.H. would be considered a general education student with a 504 Plan.

15. The school district has ignored the independent evaluation results by Dr. Natalie Schuberth wherein she diagnosed J.H. with a specific learning disorder with impairment in mathematics, specifically with fluent calculation, Major Depressive Disorder, Recurrent Episode, and Generalized Anxiety Disorder.

16. Dr. Schuberth's report is dated August 21, 2017. Yet, on September 11, 2017, after school had already started, Petitioners were informed by school personnel that J.H. was to be considered a general education student with a 504 Plan. Dr. Schuberth confirmed J.H.'s underlying anxiety and that was the reason that the district found her eligible for special education services in April 2017.

17. Therefore, despite no change in the original reasons for finding eligibility, and with the addition of a Specific Learning Disorder, the district unilaterally determined contrary to all of the expert reports that J.H. was no longer eligible and denied J.H. a free and appropriate public education in the least restrictive environment.

18. J.H. has no placement in the school district and school began more than a week ago. J.H. is entitled to special education services. The district has failed to provide them to her.

19. Petitioners respectfully request that their motion for summary decision be granted. Petitioners have had to file this motion because of the lack of any communication or response from counsel for the district.

20. Petitioners respectfully request reimbursement for all tuition costs and all costs associated with having been forced to place J.H. at the Purnell School including all attorney's fees and costs and Petitioners seek a judgment that their unilateral out of district placement is appropriate to meet J.H.'s needs.

## CERTIFICATION

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By: _____

Julie Warshaw, Esq.

Dated: September 19, 2017

# EXHIBIT A

**West Morris Regional High School District**
**Department of Special Education**
10 South Four Bridges Road
Chester, New Jersey 07930
908-879-6404

**Invitation to a Meeting**

Student's Name: ███████████          Date: 03/22/2017
Student's School: West Morris Central High School

Parent's Name: ████████████████

Parent's Name: ████████████████

Dear ██████████ and ██████████

You are invited to attend a meeting regarding your child, ██████

Your participation in planning for the educational needs of your child is important. The meeting is scheduled for:

**Date:** 04/06/2017        **Time:** 11:45        **Location:** West Morris Central High School

Please read this entire notice. To confirm your participation, please complete the information on the Meeting Confirmation Form and return the form to the district as directed.

The purpose(s) of the meeting is:
    Determination of initial eligibility for special education;*
    Planning for transition to adult life;

If you have any questions, please contact Sherry Wilk by 04/04/2017 at 908-879-6404 x3530 to reschedule the meeting.

The following individuals will be participating in the meeting:
**Title**                                    **The agency representative is:**

- ✔ School psychologist: Sherry Wilk for Kendra Dickerson
- ✔ School social worker: Betina Goldberg-Rappoport
- ✔ General education teacher: Tamara Wubbenhorst
- ✔ Special education teacher: David Ehasz
- ✔ Other: Guidance Counselor: Joseph Cusack

Sincerely,

*Sherry Wilk / cg*
Name: Sherry Wilk
Position: School Psychologist
*Attachments:              For eligibility and continuing eligibility: Copy of evaluation reports

## Meeting Confirmation Form
**Please sign and return this page to Sherry Wilk at West Morris Central High School by 04/04/2017.**

Parent(s) Name: ████████████████████████

Date of Conference: 04/06/2017

Child's Name: ████████████

If you cannot attend the meeting in person but wish to participate, other arrangements can be made to include you (for example, by a telephone conference).

Indicate how you will participate:
☐ In person      ☐ By telephone      ☐ By electronic conference equipment (if available through the school)

Please indicate whether you require any accommodations to participate in the meeting.

_____

You may invite another person(s) who has knowledge or special expertise regarding your child to accompany you to the meeting. You may also bring your child to the meeting if you believe it is appropriate.

Please provide the names of anyone you are inviting to the meeting:

_____

Will he or she require any accommodations? ☐ Yes ☐ No
If yes, please describe:

_____

Participants at the meeting may use an audiotape recorder during the meeting. If you wish to tape the meeting, please check:
☐ I am planning to record the meeting.

If you plan to bring an advocate and/or an attorney to the meeting, please notify Sherry Wilk as the meeting may need to be rescheduled to include district representation.

_____          _____
Parent(s) Signature                                               Date

**WEST MORRIS REGIONAL HIGH SCHOOL DISTRICT**

**Chester, New Jersey**

**Department of Special Services**

**Social History**

**CONFIDENTIAL**

NAME: ███████         SCHOOL:  West Morris Central H.S.

PARENTS: ███████      GRADE: 10

ADDRESS: ███████      C.A.: 16.0

                      D.O.B.: ███████

EXAMINER:  Betina Goldberg-Rappoport, MSW, LCSW

**REASON FOR IDENTIFICATION:** ███ was referred to the Child Study Team for evaluation due to difficulty attending school. ███ was enrolled in a therapeutic program full day for several months and coming back has proven impossible for her.  Currently she is home receiving home instruction while the evaluations are being completed.

**MEDICAL AND DEVELOPMENTAL HISTORY:** Mrs. ███ was 40 years old when ███ was born.  She was full term weighing 8 lbs.  She was well enough to be discharged from the hospital with her mother. ███ had a difficult time gaining weight at first so had formula supplementing breast milk by four months old.

According to Mrs. ███ ███ achieved developmental milestones early.  She continues to be a healthy young lady.  She had no chronic ear, nose or throat issues. ███ never had surgery or any hospitalizations.  She eats two meals a day, breakfast and dinner. ███ said that she is not hungry during the day. ███ goes to be at around 11 and sleeps through the night.  She has no difficulty falling or staying asleep.

A review of the family's medical and educational history revealed the following. ███'s oldest brother ███, 23 has Asperger's. He is high functioning and currently finishing a Master's degree in composition. He writes predominantly church music.

Maternal uncle is diagnosed with anxiety, depression and OCD (obsessive, compulsive disorder). He too is high functioning and works as a translator of documents from German to English. He is not married, but has a girlfriend. Maternal great-grandmother made have suffered from depression as well.

Grandparents died from varying ailments. Paternal grandmother was the only one that died of old age. Their deaths were sad for ███, but she was not devastated as her relationships with them were not particularly close and intense.

In 6th grade, ███ described starting to feel lonely. She said it wasn't severe and she did have friends. As her brothers began to go away to college, she started to feel more and more depressed. In September, 2016 she told a friend that she felt suicidal. Instead of being inpatient,███ went to ICCPC (Immediate Care Children's' Psychiatric Center). She attended an intensive Day Program from 9:00 a.m.- 2:30 p.m. and then tutoring in the same place from 2:30 p.m.- 4:30 p.m. She also worked with a therapist and psychiatrist there. She was diagnosed with depression and anxiety. ███ worked with a therapist every other day and had many group sessions with children her age. Techniques such as DBT and CBT were used. ███ felt that the therapy along with the medication was certainly helping. ███ continues to be on Prozac 10 ml. and Wellbutrin 150 ml. She is followed by Dr. Srinivasan who is the owner of ICCPC and her clinician Melissa. Additionally, when not in program, ███ saw Tracie Sakar, LCSW who she felt was helpful.

Parents terminated the program a bit before Christmas. They felt that ███ would do better with everything once her brothers began to return home. Neither ███ nor staff at ICCPC felt that ███ was quite ready. ███ felt that Christmas break was more difficult than usual because her aunt and cousin were visiting. It was all too much for her. She felt that by the time her relatives left that she was feeling badly again. ███ attempted to return to West Morris shortly before winter break and it was just too difficult. Her anxiety was too acute to be able to stay in school.

**SCHOOL HISTORY:** Currently,███ is on home bound instruction. She has tutors come to the house and she attends therapy sessions at ICCPC twice a week in the afternoon. ███ is very socially isolated. The one friend she considered her closest has been unkind. This had a devastating effect on ███.

███ has never had learning issues. Throughout her school history she was a strong student. Currently her emotional issues are paramount and preventing her from being in a mainstream setting. Her

parents have been exploring small private high schools where she might be more comfortable. Some of these schools are religious schools. None are therapeutic.

**FAMILY AND SOCIAL HISTORY:** ████ and ████████ have been married for 27 years. They have four children ████████████████ This is the first and only marriage for both parents.

████ was raised in Lakewood, NJ. Her parents are deceased. She has a sister that lives in Hawaii and a brother who lives in Virginia. ████ enjoys her maternal uncle because he is funny. She cares for her aunt, but she is more intense in nature and ████ become apprehensive with that type of personality. She is big hearted, but often has no filter and says whatever she is thinking despite the impact of her words.

████ was raised in Bergen County. His parents are deceased as well. ████ was an only child so ████ has no connections there.

████ has a close relationship with her brothers. She is the youngest and only girl. She feels protected and comfortable with them. They are all in college or graduate school and this is very difficult for ████. She likes having them home and interacting with them on a regular basis. Her parents are caring and loving towards her.

████ does have some chores around the house that include caring for two cats and a dog and emptying the dish washer. She spends most of her time playing guitar and preparing for her classes.

**SUMMARY:** ████, a 10th grader, is the youngest and only daughter of four born to an intact family. ████ senses that she began feeling loneliness in 6th grade and by September of 10th grade was depressed, anxious and suicidal. Her parents put her into a therapeutic program immediately and this appeared to help ████ a great deal. She was in a full time day program at Immediate Care Children's' Psychiatric Center until right before winter break. She had no intervention for a few weeks during the holiday and family visits and she decompensated some. Currently she is on home-bound instruction after returning to school proved too stressful and has tutors coming to the home along with afterschool programs twice a week at ICCPC.

Betina Goldberg-Rappoport, LCSW, MSW

**CLIFTON PUBLIC SCHOOLS**
**SPECIAL EDUCATION DEPARTMENT**

The material contained herein is privileged, confidential and restricted to professional personnel.

## REPORT OF PSYCHOLOGICAL EVALUATION

████████████    **BIRTHDATE:** ██████    **C.A.:** ████████████
**WEST MORRIS CENTRAL HIGH SCHOOL**                    **GRADE:** ████
**DATE OF EVALUATION: 1-19-17**    **PSYCHOLOGIST:  SHERRY WILK**

### REASON FOR REFERRAL:

████████was referred by her parents for a psychological evaluation as part of the assessment process (as per N. J. Administrative Code 6A: 14) to assess her current functioning levels, determine if she is eligible for Special Education and Related Services, and to help plan an appropriate educational program. Her parents are concerned about the impact her anxiety and depression has on her functioning in school.

### BACKGROUND INFORMATION:

*ICCPC — DAY Program*

████████was hospitalized on 9/22/16 at Immediate Care Children's Psychiatric Center, for depression and anxiety. She subsequently attended the partial care program, where she received counseling and academic tutoring. It was reported that she improved in the small, therapeutic school environment, where she received individualized attention. On 10/17/16, she was released from the program and cleared to return to school.  After attending WMCHS for two days, she refused to go back to school. She has been receiving Home Instruction since 10/24/16, and a 504 plan was implemented for her effective 12/7/16.

*mabie*

████████has been diagnosed by the Immediate Care Children's Psychiatric Center as having Major Depressive Disorder, recurrent, severe, without psychotic

features, as well as with Generalized Anxiety Disorder. She is currently taking Prozac and Wellbutrin. The Center is recommending that she be educated in a smaller and more therapeutic environment so that she could continue progressing with her anxiety, depression, and school functioning.

████is currently a ███ grade student in a general education program at West Morris Central High School. She is taking French 2 Geometry, US History 2, English 2, and Chemistry, all at the Advanced level. Last year in ███grade, ████s core academic classes were at the Advanced. level, and her grades ranged from "A" to "B-." In 8th grade, she was absent 19 times, with grades in core subjects ranging from "B" to "C+."

See recent Social History Report for additional pertinent information.

## OBSERVATION:

On a one-to-one basis during the testing session, ████was pleasant and friendly. Although she has not been attending school, she was (almost) punctual for the evaluation appointment. She was cooperative, and completed all components of the evaluation without resistance. She was initially slightly apprehensive, but relaxed as the evaluation proceeded. She was able to focus and concentrate, and was not fidgety or easily distracted. She did not give-up easily, and persevered on the more challenging items. She rarely required clarification of instructions or repetition of directions. Nor did she make any inquiries. She executed all paper and pencil tasks in a timely fashion with due consideration given to the final product. Her manner of responding was slow, reflective and self-paced.

## METHODS OF ASSESSMENT:

Wechsler Adult Intelligence Scale - Fourth Edition (WAIS-IV)
Diagnostic Interview
Information from school personnel
Review of school records
Observation
Behavioral Assessment System for Children, Second Edition (BASC-2)
- *Parent Rating Scales*
- *Self-Report of Personality*

## ASSESSMENT RESULTS AND INTERPRETATION:

### *Cognitive Functioning:*

████ was administered ten subtests of the Wechsler Adult Intelligence Scale– Fourth Edition. The WAIS-IV is an individually administered battery of tests that evaluates intellectual functioning across different areas of abilities. The Full Scale score *(FSIQ)* is an index of general overall cognitive functioning, from which composite scores are derived.  The Full Scale IQ (FSIQ) is derived from a combination of ten subtest scores and is considered the most representative estimate of global intellectual functioning.

The WAS- IV also provides a measure of four index scores: Verbal Comprehension (*VCI*), Perceptual Reasoning *(PRI)*; Working Memory (*WMI)*, and Processing Speed (*PSI*). The Verbal Comprehension subtests assess the child's ability to process verbal material and to use language to reason and express ideas. The Perceptual Reasoning subtests evaluate nonverbal reasoning, visual-spatial perception, and ability to process visual material. Auditory recall and attention are assessed by Working Memory subtests, and visual-motor integration and efficiency of visual processing are measured by Processing Speed subtests. Each of these index scales has a number of subtests, i.e., areas of specific/special ability or skill.  The index scores are summary measures of these specific abilities.

Subtests scores (i.e., specific abilities) are compared to other children in the same age group, and provide an indication of strengths and weaknesses compared to same age peers. Subtests are also examined to determine personal strengths and weaknesses in order to understand learning style.  It should be noted that a subtests score may differ from that of same age peers, but may not be a personal strength or weakness.  Conversely, the score may indicate a personal strength or weakness without differing from that of the same age group.

No array of tasks can cover all aspects of ████'s intelligence.  Factors such as creativity, artistic skills, etc., are not tapped by standard intelligence tests. Furthermore, traits and attitudes such as planning, goal awareness, impulsivity, anxiety, persistence, enthusiasm, and field (in)dependence, also shape how ████'s abilities are expressed.  It also should be noted that children develop their intellectual abilities in different ways, and have different patterns of cognitive strengths and weaknesses.

This assessment can be considered a reliable and fairly valid estimate of ████'s current cognitive functioning.  The following interpretation best describes her functioning at the present time.

## Composite Score Summary

| Scale | Composite Score | | Percentile Rank | 95% Confidence Interval | Qualitative Description |
|---|---|---|---|---|---|
| Verbal Comprehension | VCI | 116 | 86 | 110-121 | High Average |
| Perceptual Reasoning | PRI | 107 | 68 | 100-113 | Average |
| Working Memory | WMI | 86 | 18 | 80-94 | Low Average |
| Processing Speed | PSI | 94 | 34 | 86-103 | Average |
| Full Scale | FSIQ | 104 | 61 | 100-108 | Average |

The FSIQ is a measure of general ability and is considered the most representative estimate of global intellectual functioning. The VCI is a measure of concept formation, verbal reasoning, and knowledge acquired from one's environment. The PRI is a measure of perceptual and fluid reasoning, spatial processing, and visual-motor integration. The WMI measures the ability to retain information in memory, perform an operation with it, and produce a result. The PSI measures the ability to quickly and correctly scan, sequence or discriminate simple visual information.

██████'s performance is evaluated in terms of her overall ability as well as patterns of composite and subtest scaled scores. Relative to children of comparable age, ██████'s current general level of cognitive ability is estimated to be within the average range of intellectual functioning on a standardized measure of intellectual functioning. Her overall thinking and reasoning abilities exceed those of approximately 61% of individuals her age (FSIQ = 104; 95% confidence interval = 100-108). She performed slightly better on verbal than on nonverbal reasoning tasks, but there is no meaningful difference between ██████'s ability to reason with and without the use of words.

### Verbal Comprehension Subtest Scores Summary

| Subtests | Scaled Score |
|---|---|
| Similarities | 11 |
| Vocabulary | 13 |
| Information | 15 |

*Similarities:* measures verbal abstract reasoning and concept formation.
*Vocabulary:* measures word knowledge, verbal concept formation, fund of knowledge, learning ability long-term memory, and degree of language development. Best overall measure of general intelligence
*Information:* measures isolated knowledge, verbal reasoning, ability to evaluate and use past experience, and ability to demonstrate practical information.

## Perceptual Reasoning Subtest Scores Summary

| Subtests | Scaled Score |
|----------|--------------|
| Block Design | 9 |
| Matrix Reasoning | 11 |
| Visual Puzzles | 14 |

**Block Design**: measures ability to analyze and synthesize abstract visual stimuli. Strong measure of nonverbal intelligence and reasoning.
**Matrix Reasoning**: measures fluid intelligence and estimates general intellectual
**Visual Puzzles**: measures visual processing, spatial relations, closure speed, and visualization; good measure of Perceptual Organization ability.

## Working Memory Subtest Scores Summary

| Subtests | Scaled Score |
|----------|--------------|
| Digit Span | 6 |
| Arithmetic | 9 |

**Digit Span**: measures auditory short-term memory, sequencing skills, attention, and concentration.
**Arithmetic**: measures numerical reasoning, attention, and short-term auditory memory.

## Processing Speed Subtest Scores Summary

| Subtests | Scaled Score |
|----------|--------------|
| Symbol Search | 5 |
| Coding | 13 |

**Symbol Search**: measures processing speed, short-term visual memory, visual-motor coordination, cognitive flexibility, visual discrimination, and concentration.
**Coding**: measures processing speed, short-term memory, learning ability, visual perception, visual-motor coordination, visual scanning ability, cognitive flexibility, attention and motivation.

████'s verbal reasoning abilities as measured by the *Verbal Comprehension Index (VCI)* are in the high average range and above those of approximately 86% of her peers (VCI = 116; 95% confidence interval = 110-121). The VCI is designed to measure verbal reasoning and concept formation. ████'s performance on the verbal subtests contributing to the VCI presents a diverse set of verbal abilities, as she performed much better on some verbal tasks than

others. The degree of variability is unusual and may be noticeable to those who know her well.

███ achieved her best performance among the verbal reasoning tasks on the Information and Vocabulary subtests. Her strong performances on the Information and Vocabulary subtests were better than that of most of her peers. As a direct assessment of word knowledge, the Vocabulary subtest is one indication of her overall verbal comprehension. Performance on this subtest also requires abilities to verbalize meaningful concepts as well as to retrieve information from long-term memory (Vocabulary scaled score = 13). Performance on the Information subtest also may be influenced by cultural experience and quality of education, as well as her ability to retrieve information from long-term memory (Information scaled score = 15). This subtest is primarily a measure of her fund of general knowledge

███'s nonverbal reasoning abilities as measured by the Perceptual Reasoning Index (PRI) are in the average range and above those of approximately 68% of her peers (PRI =107; 95% confidence interval = 100-113). ███ presents a diverse set of nonverbal abilities, performing much better on some nonverbal tasks than others. The degree of variability is unusual for individuals her age and may be noticeable to those who know her well. ███'s performance was significantly better on the Visual Puzzles subtest than her own mean score. Furthermore, she performed better than most of her peers, thus demonstrating strong abilities on the Visual Puzzles subtest. Performance on this task may be influenced by visual perception, broad visual intelligence, fluid intelligence, simultaneous processing, spatial visualization and manipulation, and the ability to anticipate relationships among parts (Visual Puzzles scaled score = 14).

███'s ability to sustain attention, concentrate, and exert mental control is in the low average range. She performed better than approximately 18% of her peers in this area (Working Memory Index (WMI) = 86; 95% confidence interval 80-94). ███'s abilities to sustain attention, concentrate, and exert mental control are a weakness relative to her nonverbal and verbal reasoning abilities. A weakness in mental control may make the processing of complex information more time-consuming for ███; draining her mental energies more quickly as compared to others at her level of ability, and perhaps result in more frequent errors on a variety of learning or complex work tasks.

███'s ability in processing simple or routine visual material without making errors is in the average range when compared to her peers. She performed better than approximately 34% of her peers on the processing speed tasks (Processing Speed Index [PSI] = 94; 95% confidence interval 86-103). ███'s performance on the subtests that compose the PSI is quite variable; therefore, the PSI score should be interpreted with caution. She performed much better on Coding (scaled score = 13), which is more demanding of fine-motor skills, short-term memory, and learning ability, than on Symbol Search (scaled score = 5), which is more demanding of attention to detail and visual discrimination.

Processing visual material quickly is an ability that ████ performs less well than her verbal reasoning ability. Processing speed is an indication of the rapidity with which ████ can mentally process simple or routine information without making errors. Because learning often involves a combination of routine information processing (such as reading) and complex information processing (such as reasoning), a relative weakness in the speed of processing routine information may make the task of comprehending novel information more time-consuming and difficult for ████. Thus, this may leave her less time and mental energy for the complex task of understanding new material. Although much less developed than her verbal and nonverbal reasoning abilities, ████'s speed of information processing abilities are still within the average range and better than those of approximately 34% of her age-mates (Processing Speed Index = 94; 95% confidence interval 86-103).

## Social And Emotional Functioning

According to her hospital therapist, ████ "struggles with major anxiety related to school work. She places a lot of pressure on herself, (and has) ... fear of failure. ████ also struggles with depression that can involve some suicidal thoughts at times. Her depression has impacted her to the point where she has not been able to attend school due to lack of motivation and the inability to function. ████'s anxiety has also prevented her from being able to attend a regular high school, as she feels judged, pressured and scared."

████ presents as a slightly anxious girl who wants to be perceived as poised and mature. She is articulate, and expresses her thoughts without much prompting. She denies interpersonal problems with her family or peers, and says she cannot identify what is contributing to her school avoidance. However, her insight tends to be limited, and she probably feels unable to solve her difficulties. Her affect appears to be somewhat restrictive, although this may be due to medication. It is likely that she perceives her family as quite supportive.

## Behavioral Assessment System for Children, Second Edition (BASC-2) is an
integrated system designed to facilitate the differential diagnosis and classification of a variety of emotional and behavioral disorders of children and to aid in the design of treatment plans. Scale scores in the Clinically Significant range suggest a high level of maladjustment. Scores in the At-Risk range may identify a significant problem that may not be severe enough to require formal treatment or may identify the potential of developing a problem that needs careful monitoring. The narrative and scale classifications are based on *scores* obtained using norms.

- ## _BASC-2 Self-Report of Personality_
  (Based on ███'s rating of herself)

Some caution should be employed regarding the interpretation of the Self-Report of Personality, as ███ depicted her behavior in an inordinately negative fashion. While as it is possible that ███ may be exaggerating some of her symptoms and maladaptive behaviors, it is also plausible that she may be actually experiencing acute psychological distress.

As compared to her peers, ███ rates herself as _not_ having any noteworthy difficulties in a number of areas, including, sensation seeking, atypicality, locus of control, attention problems, hyperactivity, relations with parents, self-reliance, test anxiety, anger control, and mania. However, she does rate herself as having notable difficulties in the following areas:

<u>School Problems composite scale</u>: ███'s score on this composite falls in the At-Risk classification range. Problematic areas include:
  _Attitude to School_: ███ reports that she dislikes school and sometimes wishes to be elsewhere. Her score falls in the At-Risk classification range
  _Attitude to Teachers_: ███ generally considers her teacher(s) to be unfair, uncaring, and/or overly demanding. Her score falls in the Clinically Significant classification range.

<u>Internalizing Problems composite scale</u>: ███'s score on her composite scale falls in the At-Risk classification range. Problematic areas include:
  _Social Stress_: ███ reports some difficulty with establishing and maintaining close relationships with others, and reports sometimes being isolated and lonely. Her score falls in the At-Risk classification range.
  _Anxiety_: ███ reports substantial worrying, nervousness, and/or an inability to relax. Her score falls in the At-Risk classification range.
  _Depression_: ███ reports sometimes feeling sad, being misunderstood, and/or feeling that life is getting worse and worse. Her score falls in the At-Risk classification range.
  _Sense of Inadequacy_: ███ reports sometimes being dissatisfied with her ability to perform a variety of tasks, even when putting forth substantial effort. Her score falls in the At-Risk classification range.
  _Somatization_: ███ reports experiencing health-related problems that may include headaches, sore muscles, stomach ailments, and/or dizziness. Her score falls in the At-Risk classification range.

<u>Emotional Symptoms Index:</u> The Emotional Symptoms Index (ESI) is the most global indicator of serious emotional disturbance, particularly internalized disorder. ███'s score on her composite scale falls in the At-Risk classification range. See below for Problematic areas.
  <u>Personal Adjustment</u> composite-scale: ███'s score on her composite scale falls in the At-Risk classification range. Problematic areas include

**Interpersonal Relations:** ████ reports having substantial difficulty establishing and maintaining relationships with others. Her score falls in the Clinically Significant classification range.

**Self-Esteem:** ████ reports a lower self-image than others her age. Her score falls in the At-Risk classification range.

### Content Scales

**Ego Strength:** ████ reports dissatisfaction with herself and her abilities. Her score falls in the At-Risk classification range.

### Critical Items of note:

████ admits to believing that she never seems to get anything right. She also revealed that she often feels sad, and that she "hates" school. In addition, she reports sometimes feeling that no one understands her, that other kids hate to be with her, and that her life is getting worse and worse.

- ### _Parent Rating Scales_
  ### _(Based on Parent's rating of_ ████ _'s behavior)_

As compared to her peers, ████ is rated by her parent as having typical adolescent behaviors in a number of areas, including: hyperactivity, aggression, conduct problems, somatization, atypicality, attention problems, and social skills, activities of daily living, anger control, bullying, emotional self-control, and executive functioning. However, ████ is rated by her parent as having noteworthy difficulties in the following areas: including:

### Internalizing Problems: ████'s overall scores on her composite scale fall in the At-Risk classification range.   Problematic areas include:

**Anxiety:** ████'s parent reports that she sometimes displays behaviors stemming from worry, nervousness, and/or fear. ████'s scores on this scale fall in the  At-Risk classification range

**Depression:** ████'s mother reports that ████ is withdrawn, pessimistic, and/or sad. Scores in this range warrant assessment of vegetative symptoms (e.g., weight loss or gain, fatigue, etc.). Her score on this scale falls in the Clinically Significant classification range.

### Behavioral Symptoms Index:

**Withdrawal:** ████'s parent reports that she generally alone, has difficulty making friends, and/or is unwilling to join group activities. Her score on this scale falls in the Clinically Significant classification range.

### Adaptive Skills Composite Scale: ████'s overall scores on her composite scale fall in the At-Risk classification range. Problematic areas include:

**Adaptability:** ████'s score falls in the At-Risk classification range. Her parent reports that ████ has difficulty adapting to changing situations, and that

she takes longer to recover from difficult situations than most others her age.
*Leadership*: ▇▇▇▇'s parent reports that ▇▇▇ sometimes has difficulty
making decisions, lacks creativity and/or has trouble getting others to work
together effectively. Her score falls in the At-Risk classification range.
*Functional Communication*: ▇▇▇▇'s parent indicates that ▇▇▇
demonstrates poor expressive and receptive communication skills, and that she
has difficulty seeking out and finding information on her own. ▇▇▇'s score falls
in the At-Risk classification range.

## Content Problem

*Developmental Social Disorders*: J▇▇▇'s parent reports that she has
some problems concerning social skills and communication. Her score falls in the At-
Risk classification range.
*Negative Emotionality*:
▇▇▇'s parent reports that ▇▇▇ has a tendency to react negatively when faced
with changes in everyday activities or routines. ▇▇▇'s score falls in the At-Risk
classification range.
*Resiliency*: ▇▇▇'s parent reports that Jenna has difficulty overcoming
stress and adversity. Her score falls in the Clinically Significant classification
range.

Critical Items of note: ▇▇▇'s parent reports that ▇▇▇ has some issues — *resolved*
involving food consumption. Furthermore, it is reported that is often easily
annoyed by others, and sometimes threatens to hurt others. — *Never*

## SUMMARY AND CONCLUSION:

Relative to children of comparable age, ▇▇▇'s current general level of cognitive
ability is estimated to be within the average range of intellectual functioning on a
standardized measure of intellectual functioning. Her overall thinking and
reasoning abilities exceed those of approximately 61% of individuals her age
(FSIQ = 104; 95% confidence interval = 100–108). Her general verbal
comprehension abilities were in the high average range (VCI = 116), and her
general perceptual reasoning abilities were in the average range (PRI = 107).
▇▇▇'s ability to sustain attention, concentrate, and exert mental control is in the
low average range (WMI = 88). ▇▇▇'s ability in processing simple or routine
visual material without making errors is in the average range when compared to
her peers (PSI = 94). She performed slightly better on verbal than on nonverbal
reasoning tasks, but there is no meaningful difference between ▇▇▇'s ability to
reason with and without the use of words. Also, as she performed much better on
some verbal tasks than others.  Furthermore, due to variability between the two
subtests that compose the PSI, caution is warranted when interpreting this index
score. Significant specific strengths include orally defining vocabulary words,
knowledge of isolated facts/information, and analysis and synthesis of abstract
visual stimuli and nonverbal reasoning. A significantly weaker specific skill

involves the interplay of visual memory and discrimination, attentiveness to visual tasks, processing speed, visual-motor organization, and cognitive adaptability. Moreover, another significant weakness involves her auditory short-term memory. The latter specific skills score at a Borderline level.

███ struggles with anxiety and depression, and has a fear of academic failure. She has limited insight into her difficulties, feels helpless, and likely has limited problem-solving abilities. She does feel her family is supportive of her.

As compared to her peers, ███ rates herself as *not* having any noteworthy difficulties in a number of areas, including, sensation seeking, atypicality, locus of control, attention problems, hyperactivity, relations with parents, self-reliance, test anxiety, anger control, and mania. However, ███ rates herself within the *At-Risk* range in attitude to school, social stress, anxiety, depression, sense of inadequacy, somatization, self-esteem, and ego strength. Furthermore, ███ rates herself in the *Clinically Significant* range in attitude to teachers, interpersonal relations. As compared to her peers, ███ is rated by her parent as having typical adolescent behaviors in a number of areas, including: hyperactivity, aggression, conduct problems, somatization, atypicality, attention problems, and social skills, activities of daily living, anger control, bullying, emotional self-control, and executive functioning. However, ███'s parent rates her within the At-Risk range in anxiety, adaptability, leadership, functional communication, social development, and negative emotionality. Furthermore, ███'s parent rates her in the Clinically Significant range in depression, withdrawal, and resiliency.

Sherry J. Wilk, M.A.
Certified School Psychologist

EXHIBIT B



**Immediate Care Psychiatric Center**

Srinivas N Rao, MD
Shankar Srinivasan, MD
Rashiminkumar Solanki, MD
Krishan Maroti, MD
Evelyn Kaminki, APN-R
Susan Franz, LCSA
Mary Lorraine Graham, LCSW
Virginia Twersky, LCSW
Sarah Levy LCSW

www.njpsychcenter.com

## IMMEDIATE CARE PSYCHIATRIC CENTER ("ICPC")
## IMMEDIATE CARE CHILDREN'S PSYCHIATRIC CENTER ("ICCPC")
## IMMEDIATE CARE WOMEN'S PSYCHIATRIC CENTER ("ICWPC")

March 15, 2017

To Whom It May Concern:
RE: ▮▮▮▮▮▮▮

### Psychiatric Evaluation

#### I- Reason for Consultation:

"Depression and Anxiety"

#### II- Informants for the Assessment:

▮▮▮and ▮▮▮'s mother

#### III- History of Presenting Illness:

▮▮▮ reports doing well until this past January of 2016, at which time she began to experience relapse of her depression, her symptoms included sadness, no motivation, loss of interest, hopelessness and suicidal ideation. There was no apparent trigger other than returning to school. ▮▮▮ denied any other symptoms of psychosis, mania, aggression or mood swings. She did admit to more anxiety, which was described as generalized worry and panic type symptoms. ▮▮▮'s relapse has caused significant psychological distress and is impacting her ability to go to school. Due to her struggles she was re-admitted to ICCPC partial hospital program.

#### IV- Psychiatric History:

▮▮▮ was first admitted to ICCPC Day partial hospital program for the first time in October of 2016, for worsening depression. ▮▮▮ feels her depression has been ongoing since January of 2016. ▮▮▮ was seeing her primary care for medication, as she was placed on Lexapro and was also seeing a private outpatient therapist at this time.

Morris County: 22 Hill Road Parsippany NJ 07054 | P: (973) 335-9909 | F: (973) 335-9910
Bergen County: 205 Robin Road Suite 115 | Paramus, NJ 07652 | P: (201) 984-9373 | F: (201) 561-0198

WM 063



Srinivasa K Rao, M.
Shankar Srinivasan, M.
Rashiminkumar Solanki, M.
Krishna Maruri, M.
Evelyn Kaminski, APN-
Susan Frantz, L.C.S.
Mary Lorraine Graham, L.C.S.
Virginia Twersky, L.C.S.
Sarah Levy L.C.S.

**Immediate Care Psychiatric Center**

www.njpsychcenter.cor

# IMMEDIATE CARE PSYCHIATRIC CENTER ("ICPC")
# IMMEDIATE CARE CHILDREN'S PSYCHIATRIC CENTER ("ICCPC")
# IMMEDIATE CARE WOMEN'S PSYCHIATRIC CENTER ("ICWPC")

- No history of inpatient treatment
- No addiction or substance abuse history
- No history of suicide attempts
- No history of violence

## V- Family Psychiatric History:

Depression

## VI- Medical History:

None NKDA

## VII- Developmental History:

Normal milestones no delay, no emotional, or behavioral issues from childhood. ▓▓▓ has done well academically and is socially well related.

## VIII- Social History:

▓▓▓ lives with her parents, and has 3 older brothers all in college. She is currently in the 10th grade.

## IX- Mental Status Examination:

Appearance- neatly groomed, well nourished female
Speech: Normal

Morris County: 22 Hill Road Parsippany NJ 07054 | P: (973) 335-9909 | F: (973) 335-9910
Bergen County: 205 Robin Road Suite 115 | Paramus, NJ 07652 | P: (201) 984-9373 | F: (201) 561-0198

WM 064





Srinivasa K Rau, M
Shankar Srinivasan, M
Rashiminkumar Solanki, M
Krishna Maruri, M
Evelyn Kaminski, APN-l
Susan Frantz, L.C.S.
Mary Lorraine Graham, L.C.S.
Virginia Twersky, L.C.S.
Sarah Levy L.C.S.

www.njpsychcenter.com

# IMMEDIATE CARE PSYCHIATRIC CENTER ("ICPC")
# IMMEDIATE CARE CHILDREN'S PSYCHIATRIC CENTER ("ICCPC")
# IMMEDIATE CARE WOMEN'S PSYCHIATRIC CENTER ("ICWPC")

Mood: sad
Affect: flat
No suicidal or homicidal ideation
Sensorium: Normal
Attention and Concentration: Normal
Thought process: Normal
Associations: Normal
Thought content: Normal
Perception Disturbances: Denied
Judgment and insight: Normal
Memory: Normal

## X- Axis Diagnoses:

**Axis I:** Major depression recurrent, Panic Disorder
**Axis II:** Deferred
**Axis III:** none
**Axis IV:** School issues
**Axis V:** GAF 45

## XI- Assessment:

███'s psychiatric issues specifically , pervasive mood disturbances, avoidance behaviors even when not under stress, along with irrational fears and anxiety secondary to school issues, all collectively at this time are directly impacting learning and ability to maintain and build satisfactory interpersonal relationships.

## XII- Recommendations:

- At this time an out an out of district placement is advised.

Morris County: 22 Hill Road Parsippany NJ 07054 | P: (973) 335-9909 | F: (973) 335-9910
Bergen County: 205 Robin Road Suite 115 | Paramus, NJ 07652 | P: (201) 984-9373 | F: (201) 561-0198

WM 065



**Immediate Care Psychiatric Center**

Srinivasa K Rao, M
Shankar Srinivasan, M
Rashiminkumar Solanki, M
Krishna Maruri, M
Evelyn Kaminski, APN-
Susan Frantz, L.C.S.
Mary Lorraine Graham, L.C.S.
Virginia Twersky, L.C.S.
Sarah Levy L.C.S.

www.njpsychcenter.co

# IMMEDIATE CARE PSYCHIATRIC CENTER ("ICPC")
# IMMEDIATE CARE CHILDREN'S PSYCHIATRIC CENTER ("ICCPC")
# IMMEDIATE CARE WOMEN'S PSYCHIATRIC CENTER ("ICWPC")

- ██████ needs regular follow up with a child psychiatrist for medication management and psychotherapist for counseling.

If you have any questions or concerns, please feel free to contact us at (973)335-9909. Thank you.

Sincerely,

Shankar Srinivasan M.D
**Child and Adolescent Psychiatrist**

Morris County: 22 Hill Road Parsippany NJ 07054 | P: (973) 335-9909 | F: (973) 335-9910
Bergen County: 205 Robin Road Suite 115 | Paramus, NJ 07652 | P: (201) 984-9373 | F: (201) 561-0198

WM 066

EXHIBIT C



# ĬCCPC

**Immediate Care
Children's
Psychiatric Center**
28 B Hill Road, Parsippany, NJ 07054
TEL (973) 794-3281 FAX (973) 794-3284
*www.NJPsychCenter.com*

8.17.17

RE: ███████████

To whom it may concern,

I am the clinician working with ███████████ here at ICCPC.   I am writing this letter on behalf of ██████'s anxiety and how it affects her education.   Throughout her time here, ████, struggled with anxiety in social situations and when under pressure.   She has struggled in large with engaging in large group settings due to feeling overwhelmed and having thoughts that others were going to judge her for what she says.   I was able to encourage ██████ to try and attend school again for approximately two days last year.   She continued to report anxiety due to the large population of students and the size of her classes.   She was unable to complete her academic assignments due to the anxiety causing her confusion and delaying her ability to function in school. While in smaller group settings, I have noticed that ██████ was able to progress in managing her anxiety.  She became more open and engaged and identified that her anxiety lessened throughout time.  I have worked with ██████ for almost one full year and throughout that time, have seen her progress when she is in smaller settings where she can get more attention and feel less anxious. ██████ is a very mature and bright person.  She excels better when people around her are mature and college bound rather than peers who have behavioral issues.  Throughout my time with her, ██████ has never demonstrated any negative behaviors or came to program due to behavioral issues.  She also does not respond well when others around her have behavioral issues as it distracts her and causes her to become anxious again.  She also will be continuing treatment here at ICCPC throughout the school year and will not be in need of therapy while in school.  She will need a structured but non – strict educational environment as she functions better with more flexible schedules.  It is highly recommended that she be placed in a school that can meet these needs in order for ██████ to function academically and succeed.   If there are any further questions, please feel free to contact me.  Thank you.

Sincerely,

Melissa Dolgos, LAC
Senior Clinician
973-794-3281 X222
melissad@njpsychcenter.com

**I.C.C.P.C. – Immediate Care Children's Psychiatric Center**

EXHIBIT D



**Alexander Road Associates**

IN PSYCHIATRY, PSYCHOLOGY & COUNSELING, P.C

**ASSOCIATES:**
WILLIAM P. HAYES, M.D., FAACAP

ASMA MIAN, M.D., M.S.

MICHAEL CHEN, M.D.

SARA E. POPKIN, M.D.

MATTHEW J. BRIGHTMAN, PSY.D.

NATALIE SCHUBERTH, PSY.D., BCBA-D

PASQUALE SARGIOTTO, M.ED., LPC, LCADC

FOUNDER: CHARLES F. MARTINSON, J.D., M.D.

WWW.ARAPRINCETON.COM
PHONE: (609) 419-0400
FAX: (609) 419-8200

**SERVICES PROVIDED**
CHILD, ADOLESCENT AND ADULT
PSYCHIATRY & PSYCHOLOGY
ADDICTIONS ASSESSMENT & COUNSELING
LEARNING DISABILITIES EVALUATIONS
COGNITIVE BEHAVIORAL THERAPY
DIALECTIC BEHAVIORAL THERAPY
MEDICATION MANAGEMENT
PSYCHOLOGICAL TESTING
FORENSIC EVALUATIONS
SCHOOL EVALUATIONS
ADD/ADHD EVALUATIONS
PSYCHOGENOMIC TESTING

## PSYCHOEDUCATIONAL TESTING REPORT

**PATIENT NAME:**
**DATE OF BIRTH:**
**AGE:**
**REFERRED BY:**         School district and family attorney
**EXAMINER:**            Natalie Schuberth, Psy.D., BCBA-D, Licensed Psychologist (#5563)

--------------------------------------------------------------------
**DATES OF EVALUATION:** 7/31, 08/02, 08/03/17

**REASON FOR REFERRAL:** ▮▮▮▮ is a 16-year-old female referred by her school district and her attorney (Ms. Julie Warshaw) for a private psychoeducational evaluation to guide school placement decisions and academic recommendations. ▮▮▮ is diagnosed with depression and anxiety, which have made it difficult for her to attend her high school and resulted in being homeschooled for much of the year, despite ▮▮▮'s work and desire to attend school. Background information was provided by ▮▮▮ her mother (Mrs. ▮▮▮▮▮▮▮▮▮▮), and a review of records.

**DEVELOPMENTAL AND MEDICAL HISTORY:** Mrs. ▮▮▮▮▮▮▮▮ and Mr. ▮▮▮ were 40-years-old when ▮▮▮ was born. ▮▮▮ is the result of a healthy pregnancy and delivery born on time weighing 8 pounds. She met her language and motor milestones early. She is right-hand dominant for writing. When she was 11-years-old, she broke her wrist during basketball. She denied frequent ear infections but did report strep throat multiple times, particularly in middle school. She is currently prescribed Wellbutrin (150mg) and Prozac (15mg) by Ms. Evelyn Kaminski (licensed psychiatric nurse practitioner) under the supervision of Dr. Srinivasan. She also takes Vitamin D (2000 IU) daily. ▮▮▮ wears contact lenses. Sleep was reported within normal limits. Appetite can be affected by medications.

**FAMILY HISTORY:** ▮▮▮ lives at home with her parents. She has three older brothers who she is close with (▮▮▮▮▮▮ years old). Mrs. ▮▮▮ earned her Bachelor's degree and works as a teacher. Mr. ▮▮▮ earned his Master's Degree and works as an engineer. Family history is significant for high-functioning Asperger's disorder and high blood pressure.

PATIENT NAME: ███████████
DATE OF BIRTH: ███████████                                    **2**
PSYCHOEDUCATIONAL EVALUATION

**ACADEMIC HISTORY:** ███ recently completed tenth grade at West Morris Central High School in Chester, New Jersey. She has never been held back or repeated a grade. She earns mostly A's and B's. According to her ninth grade report card, she missed six or less days and earned A's in Biology, Band, and French and B's in History, Health, English, and Algebra. Her best subject is English and her most difficult subject is Chemistry.

Mrs. Huencke stated that ████ has difficulties with memory that impact her learning and testing. ████ explained that she is "just gonna do bad on" tests so she does not study because it "won't make a difference." She does not feel comfortable participating in class (anxiety). Mrs. █████ explained that ████ writes well but struggles with spelling.

████ and her mother reported that █████ turned assignments in on time, does not lose things, and is good with organization, following instructions, and adapting to change. She can procrastinate with projects, explaining that she "works best under pressure." █████ stated that group projects have not been an issue for her.

████ has been receiving home instruction since 10/24/16 and a 504 plan was implemented for her effective 12/7/16.

████ stated that she wants to resume school. When asked what makes a good school for her, █████ stated that she would like a small school that does not have too many people and where the teachers care about her. ████ plans to go to college after high school; she does not know what she wants to specialize in yet.

**SOCIAL, EMOTIONAL, BEHAVIORAL HISTORY:** When asked about █████'s strengths, Mrs. █████ replied, "███ is sensitive, thoughtful and loving person. She is musically talented and very perceptive." ███ enjoys listening to music and playing music (guitar and piano). ███ is on course to complete her gold award. No behavioral problems have been reported at home or at school (other than anxiety preventing her from going/staying in school).

████ explained that she did not have friends in school with the exception of elementary school. She did, however, have acquaintances in order to avoid being alone during times such as lunch. She had one close friend for one year but that ended. █████ would like to have more friends.

████ experienced panic attacks in middle school when she felt teased by her Spanish teacher. ████ explained that she has always had some anxiety but it did not keep her from doing things until this past schoolyear. She tended to feel sick in the morning before school. Mrs. █████ explained that ███ is very hard on herself and typically thinks that her efforts are "not good enough."

In the Fall of 2016, █████ experienced suicidal ideation (September through December 2016). In hindsight, Mrs. █████ explained that █████ was spending a lot of time in her room before October 2016 but she was unsure if this was typical teenage behavior or something more concerning at the time. She completed a day program at Immediate Care Children's Psychiatric Center (ICCPC) where she learned coping skills and communication and also received tutoring. According to a January psychological evaluation, █████'s diagnoses at discharge were Major Depressive Disorder, recurrent, severe, without

PATIENT NAME: ███████████

DATE OF BIRTH: ███████████                                                     3

PSYCHOEDUCATIONAL EVALUATION

psychotic features as well as Generalized Anxiety Disorder. She tried to return to school multiple times but it triggered her anxiety too intensely and she returned to home instruction.

███████ was evaluated by Ms. Sherry Wilk (Certified School Psychologist) in January 2017. The evaluation found her overall intelligence to be in the Average range (Full Scale IQ = 104, 61st percentile). Her Verbal Comprehension placed her in the High Average range (VCI = 116, 86th percentile), her Perceptual Reasoning and Processing Speed placed her in the Average range (PRI = 107, 68th percentile; PSI = 94, 34th percentile), and her Working Memory was measured in the Low Average range (WMI = 86, 18th percentile).

Due to increased anxiety and depression, she was readmitted to ICCPC partial hospital program in early 2017; March 2017 ICCPC records list her diagnoses as Major depression recurrent and Panic disorder and recommend an out of district school placement.

███████ continues group therapy on an outpatient basis for anxiety, depression, and social skills. ████'s therapist explained that ████ has a fear of being judged by others and ruminates on this, which impacts her academic performance. The therapist reported that ████ has become more assertive and opinionated which has been great, but she still needs help wording her thoughts and feelings in an interpersonally effective way. She also explained that ████ "hates routine"; she becomes bored with routine which leads to anxiety. A combination of therapy and medication has improved her mood.

**MENTAL STATUS EXAMINATION AND BEHAVIORAL OBSERVATIONS:** ████ was evaluated over one intake session and two testing sessions. She did wear her contact lenses for testing. ████ presented as a 16-year-old female who appeared her stated age. She was alert and oriented in all spheres. Mood was euthymic and affect was congruent. Speech tone and volume were within normal limits. Eye contact was within normal limits. There is no evidence or report of substance abuse. She denied current self-injury and suicidal ideation/plan/intent. There is no evidence or report of abuse or neglect. No pain was reported.

████ established rapport appropriately and answered the examiner's questions but was reserved and did not initiate or elaborate on conversation spontaneously. ████ requested that some items be repeated. She worked slowly and carefully, taking time to think before and while responding. During several subtests, ████ answered correctly just as time elapsed or after time elapsed (no credit in the latter scenario). Given the overall good effort and cooperation, the assessment is believed to be a valid estimate of ████'s current functioning.

**EVALUATION PROCEDURES**

Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV)
Wechsler Individual Achievement Test – Third Edition (WIAT-III)
Nelson-Denny Reading Test, Form G
Wechsler Intelligence Scale for Children – Fifth Edition (WISC-V), Symbol Translation
Wide Range Assessment of Memory and Learning, Second Edition (WRAML2)
Delis Kaplan Executive Function System (D-KEFS)
Conners Continuous Performance Test 3rd Edition (CPT3)
Conners Continuous Auditory Test of Attention (CATA)
Behavior Rating Inventory of Executive Function, Second Edition (BRIEF2) – Self, Parent, Teacher

PATIENT NAME: ███████████████

DATE OF BIRTH: ██████████████████

PSYCHOEDUCATIONAL EVALUATION

4

Behavior Assessment System for Children, Third Edition (BASC-3) – Self, Parent, Teacher Forms
Revised Children's Manifest Anxiety Scale, Second Edition (RCMAS-2)
Clinical Interview
Review of Records (Report Card, Ninth Grade; Psychological Evaluation, 1/19/17; Social History; ICCPC Psychiatric Evaluation, 3/15/17)
Behavioral observations

## TEST RESULTS

### Assessment of Intellectual Functioning

████'s intellectual ability was assessed using the Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV). This test yields a Full Scale IQ, which is an overall measure of cognitive functioning, as well as four index scores which tap more specific domains such as verbal ability, analytical reasoning, visual-spatial skills, and problem solving. ████ achieved a Full Scale IQ score of 99, placing her overall cognitive functioning in the Average range (47th percentile). However, for individuals with neuropsychological issues such as learning disorders, Attention-Deficit/Hyperactivity Disorder, and other similar issues, difficulties with working memory and processing speed may result in lower FSIQ scores (Wechsler, 2003). Therefore, the General Ability Index (GAI) was calculated. GAI is a summary score that is less sensitive to the influence of working memory and processing speed and may be a better representation of ████'s intelligence than the FSIQ. ████ achieved a GAI score of 108, estimating her cognitive functioning to be in the Average range (70th percentile), consistent with her FSIQ.

████ achieved a Verbal Comprehension Index score of 108, placing her ability in the Average range (70th percentile). Her ability to answer knowledge-based questions (Information) placed her in the Very High range. Her ability to identify commonalities between objects and concepts (Similarities) placed her in the High Average range. Her ability to articulate word definitions (Vocabulary) placed her in the Average range of functioning.

████ achieved a Perceptual Reasoning Index score of 107, placing her within the Average range of functioning (68th percentile). This index assesses nonverbal and visual-spatial reasoning ability. Her ability to recognize and complete visual patterns (Matrix Reasoning) and her ability to mentally manipulate shapes to match a model (Visual Puzzles) were evenly developed and placed her in the High Average range of functioning. Her ability to replicate geometric designs using blocks (Block Design) placed her in the Average range of functioning; she completed some of the items correctly just as time was running out.

The Working Memory Index assesses the ability to hold information in mind and perform some kind of operation or manipulation with it. ████ achieved a score of 80 on this index, placing her within the Low Average range (9th percentile), representing an area of relative weakness. ████'s ability to repeat increasingly long series of digits in both forward and reverse order (Digit Span) and her ability to solve math word problems in her head within a time limit (Arithmetic) were evenly developed and placed her in the Low Average range of functioning.

Finally, ████ achieved a score of 92 on the Processing Speed Index, placing her in the Average range of ability (30th percentile), representing an area of relative weakness. This index assesses the ability to quickly and efficiently process visual information while under pressure to maintain focused attention. Her ability to quickly copy symbols matched with shapes according to a key (Coding) was better developed

PATIENT NAME: ███████
DATE OF BIRTH: ███████                                    5
PSYCHOEDUCATIONAL EVALUATION

than her ability to identify the presence or absence of a target symbol in an array (Symbol Search), placing her in the Average and Low Average ranges, respectively. She worked accurately (she did not make any errors on these two tasks).

Assessment of Academic Functioning
To assess ████'s academic skills, she was administered the Wechsler Individual Achievement Test – Third Edition (WIAT-III) and the Nelson-Denny Reading Test. All WIAT-III scores are derived by comparing ████ to same-aged peers; Nelson-Denny Reading Test scores are derived by comparing ████ against other second semester sophomores.

████'s oral language skills were evaluated using the Oral Language Composite of the WIAT-III. She earned a composite score of 104, which fell in the Average range of functioning and placed her in the 61st percentile. Her listening comprehension placed her in the High Average range of functioning and above a twelfth grade level. Within Listening Comprehension, she performed in the High Average range on a test of receptive vocabulary and in the Average range on a test of oral discourse comprehension. ████ performed in the Average range and a seventh grade level on a subtest that measured her speaking vocabulary, word retrieval, flexibility of thought processes, oral syntactic knowledge and short-term memory (Oral Expression). Within this subtest, her expressive vocabulary and sentence repetition were measured in the Average range, while her oral word fluency placed her in the Low Average range.

████ achieved a Reading Composite of 103 on the WIAT-III, placing her in the 58th percentile and in the Average range of functioning. Her phonological awareness (or knowledge of letter sounds) placed her in the Average range of functioning and above high school level. Her single word reading abilities placed her in the High Average range of functioning and above high school level. Her oral reading fluency placed her in the Average range of functioning and at a twelfth grade level; specifically, both her oral reading accuracy and her oral reading rate were measured in the Average range (she answered 1 of 2 comprehension questions correctly). Her reading comprehension placed her in the Average range of functioning and at a fifth grade level. This untimed reading task was comprised of open-ended questions (as opposed to multiple choice) with access to the passage when answering questions.

The Nelson-Denny Reading Test was administered to further evaluate her reading speed and comprehension. The Nelson-Denny includes two multiple-choice subtests, Vocabulary and Comprehension. Standard scores were calculated based on ████'s performance within the standard-time and extended-time limit conditions. Within the 15-minute standard time limit on the Vocabulary subtest, ████ performed in the High Average range of functioning and at a college sophomore level (86th percentile); similarly, in the extended-time condition (████ used 18 of 24 minutes allotted), ████'s performance placed her in the High Average range of functioning and at a college sophomore level (85th percentile). Within the 20-minute standard time limit on the Comprehension subtest, ████ performed in the High Average range of functioning at a college sophomore level (78th percentile); on the extended time condition of the Comprehension subtest (Jenna used 23 of 32 minutes allotted), ████'s performance placed her in the Average range of functioning and twelfth grade level. A total reading score is derived by summing the Vocabulary score with the Comprehension score. Her total reading score placed her in the High Average range for both the standard and extended time conditions (83rd and 77th percentiles, respectively). Part way through the first passage in the Comprehension subtest, reading rate is also assessed; ████'s reading rate (reading silently to herself) placed her in the High Average range of functioning (84th percentile).

PATIENT NAME: ██████
DATE OF BIRTH: ██████                                           6
PSYCHOEDUCATIONAL EVALUATION

████'s written language abilities were assessed by the Written Language Composite of the WIAT-III, which measures her spelling and her ability to write complex sentences and an organized essay. ████ obtained a composite score of 108, which fell in the Average range and placed her in the 70th percentile. Her spelling ability placed her in the Average range of functioning and at a twelfth grade level (errors included "acievement," "obsurd,". "flurtacious"). Her ability to write grammatically correct, meaningful sentences placed her within the High Average range of functioning and above high school level. Anecdotally, ████ took time to think before and while writing and the task was not completed quickly; she also made some spelling errors, including of a target word which was written in the prompt (e.g., "prefor" for "prefer"; "vegitables"; "could'nt"; "untill"). Her ability to write a well-organized and persuasive essay within a time restriction placed her in the Average range of functioning and at a ninth grade level. Her essay length and her theme development and text organization fell in the Average range. She used all of the time allotted; she did not use the blank space provided to plan what she would write. The essay task is scored based on content and organization and not on semantics, grammar, or mechanics, but she did make multiple spelling errors (e.g., "amoung"; "injoys").

████'s mathematic skills were evaluated using the Mathematics Composite of the WIAT-III, which consists of two untimed tasks that assess mathematical abilities. She earned a composite score of 113, which fell in the High Average range of functioning and placed her in the 81st percentile. ████'s math reasoning (Math Problem Solving) placed her in the High Average range of functioning and above high school level; anecdotally, individual items and the entire section took ████ a long time to complete but she persisted and performed well. Her computational skills (Numerical Operations) placed her in the Average range of functioning and above high school level. ████ earned a math fluency composite, which consists of three timed math tasks that assess math fluency, of 89, which fell in the Low Average range of functioning and at the 23rd percentile; she made a couple of calculation errors. Specifically, ████ performed in the Average range on fluency tests of addition (eighth grade equivalence) and multiplication (seventh grade equivalency), and in the Low Average range on a fluency test of subtraction (sixth grade equivalence). There was a statistically significant different between her (untimed) Mathematics Composite and her (timed) Math Fluency Composite. Furthermore, her Math Fluency Composite was significantly lower ($\geq$ 2 standard deviations) than predicted by her GAI.

Executive Functioning, Memory, and Learning
In order to assess ████'s memory, learning, attention, concentration, and other areas of executive functioning, Wechsler Intelligence Scale for Children – Fifth Edition (WISC-V) selective subtests, the Wide Range Assessment of Memory and Learning – Second Edition (WRAML2), the Delis-Kaplan Executive Function System (D-KEFS), the Conners CPT, and the Conners CATA were administered. In addition, ████ and Mrs. ████ each completed the Behavior Rating Inventory of Executive Function Second Edition (BRIEF-2) and the Behavior Assessment System for Children, Third Edition (BASC-3). Teacher forms were not completed because ████ was out of school for most of tenth grade.

████ completed the WISC-V optional subtests (which do not contribute to the FSIQ) of symbol translation. These tasks measure verbal-visual associative memory or paired associates learning, storage and retrieval fluency and accuracy, and immediate recall; these abilities are closely associated with reading decoding skills, reading comprehension, and math calculation and reasoning. ████'s ability to learn visual-verbal pairs and then translate symbol strings into phrases or sentences was measured in the

PATIENT NAME: ███████████

DATE OF BIRTH: ███████████                                      7

PSYCHOEDUCATIONAL EVALUATION

Average range (Immediate Symbol Translation). Similarly, her ability to translate the symbol strings into phrases or sentences after a delay was in the Average range (Delayed Symbol Translation).

█████'s ability to encode and recall orally and visually presented material was evaluated with the Wide Range Assessment of Memory and Learning – Second Edition (WRAML2). Her overall immediate memory and delayed recognition memory were measured in the Very Low and Low Average ranges, respectively (Screening Memory = 76, 5th percentile; General Recognition Memory = 87, 19th percentile).

Her immediate recall and delayed recognition verbal memory both fell in the Low Average range (Verbal Memory Immediate Recall = 85, 16th percentile; Verbal Memory Recognition = 88, 21st percentile). Her performance on a task which required her to recall contextual information presented in a story form (Story Memory) placed her in the Low Average range on the immediate recall, delayed recall, and delayed recognition (she had to choose the correct answer from a set of options, a form of cuing) conditions. Her performance on a task which required her to retain non-contextual, non-meaningful information presented over multiple trials (Verbal Learning) placed her immediate free recall, delayed free recall, and delayed recognition memory in the Average range of functioning.

█████'s immediate and delayed visual memory fell in the Very Low and Average ranges, respectively (Visual Memory Immediate = 73, 4th percentile; Visual Memory Recognition = 90, 25th percentile). On a visual memory task which incorporated visual-motor abilities (Design Memory), █████ performed in the Low Average range on the immediate recall and delayed recognition conditions. On a task which required her to memorize complex scenes and identify altered elements between scenes (Picture Memory), █████ performed in the Very Low range on the immediate recall condition and in the Average range on the corresponding recognition condition.

The D-KEFS is comprised of multiple tests that assess various aspects of executive functioning. The Trail Making Test consists of a visual cancellation task and a series of connect-the-circle tasks. █████ performed in the High Average range of functioning on a test of visual scanning and visual attention (Visual Scanning). █████ performed in the High Average range on a task which required her to sequence numbers within the format of a visual-motor task (Number Sequencing) and in the Very High range on a task which required her to sequence letters within the format of a visual-motor task (Letter Sequencing). She performed in the Average range on a measure of motor speed (Motor Speed). All of these tasks serve to establish baseline levels of visual scanning/attention and motor speed for the executive functioning task, Number-Letter Switching; Jenna performed in the Average range on this measure of cognitive flexibility, which is necessary for multitasking, simultaneous processing, and divided attention.

█████ performed in the Very Low range on two baseline conditions of the D-KEFS Verbal Fluency Test (Letter Fluency and Category Fluency). █████ performed in the Low Average (word retrieval) to Average (Category Switching) ranges on the third condition which required her to switch between two categories, evaluating cognitive flexibility and recall.

█████ performed in the Low Average (Color Naming) and Average (Word Reading) ranges on the two baseline conditions of the D-KEFS Color-Word Interference Test. █████ performed in the Average range on the third condition (Inhibition), for which the examinee must inhibit reading the words in order to name the dissonant ink colors in which those words are printed. Finally, █████ performed in the High Average range on the Inhibition/Switching condition, which requires the examinee to switch back and

PATIENT NAME: ███████████
DATE OF BIRTH: ███████████                                8
PSYCHOEDUCATIONAL EVALUATION

forth between naming the dissonant ink colors and reading the words, evaluating both inhibition and cognitive flexibility.

The D-KEFS Sorting Test isolates and measures multiple components of concept-formation and problem-solving abilities. On the Free Sorting condition, ████'s correct categorizations and her ability to describe her reasoning placed her in the Average and High Average ranges, respectively.

████ performed in the High Average range on the D-KEFS Twenty Questions Test, a measure of efficiency of problem solving and thinking ability, including the abilities to categorize and incorporate feedback into the examinee's mental schema of the problem. ████ performed in the Low Average range on a measure of spatial planning, rule learning, inhibition of impulsive and perseverative responding, and the ability to establish and maintain the instructional set (the D-KEFS Tower Test).

The D-KEFS Proverb Test consists of eight sayings that are presented in two formats for the examinee to interpret abstract principles and concepts: Free Inquiry and Multiple Choice. ████ performed in the High Average range of functioning on the Free Inquiry condition. Jenna performed at 100% accuracy on the Multiple Choice condition.

The Conners Continuous Performance Test 3rd Edition (Conners CPT 3) assesses (visual) attention-related problems. She made a noise like a gasp during the test and explained that the test did "stress me out!" ████ demonstrated some difficulty differentiating targets from non-targets (Detectability = 55). She demonstrated a very high rate of missed targets compared to her peers (Omissions = 90). She demonstrated a below average rate of incorrect responses to non-targets, demonstrating good performance (Commissions = 34). She had an average rate of random, repetitive, or anticipatory responses (Perseverations = 46). She demonstrated a slightly slow mean response speed and above average consistency in reaction times (HRT = 58; HRT SD = 41). Reaction time consistency and ability to sustain response speed in later blocks could not be calculated due to too few hits. She showed a good ability to sustain or increase response speed at longer intervals (HRT ISI Change = 42). In summary, relative to the normative sample, ████ made more omission errors, demonstrating some indication of issues related to inattentiveness, sustained attention, and vigilance.

The Conners Continuous Auditory Test of Attention (Conners CATA) assesses auditory processing and attention-related problems. She stood during this test (by choice). She also turned the volume down, explaining that she has been told that she is sensitive to sound. ████ demonstrated an Average ability to differentiate targets from non-targets (Detectability = 49). She had a below average rate of missed targets, indicating good performance (Omissions = 44). She demonstrated an Average rate of incorrect responses to non-targets (Commissions = 48). She demonstrated an Average rate of incorrectly responding before the target (Perseverative Commissions = 46). She had a Slightly Fast mean response speed (HRT = 40). She demonstrated Average consistency in reaction time (HRT SD = 50) and a Substantial reduction in response speed in later blocks (HRT Block Change = 64). Relative to the normative sample, ████ responded faster and displayed more of a reduction in response speed in later blocks. Overall, Jenna has a total of 2 atypical T-scores, which is associated with a moderate likelihood of having a disorder characterized by attention deficits, such as ADHD. ████'s response pattern does indicate a possible issue with sustained attention (some indication).

PATIENT NAME: ███████████
DATE OF BIRTH: ███████████

PSYCHOEDUCATIONAL EVALUATION

9

████ and Mrs. █████ completed the Behavior Rating Inventory of Executive Function Second Edition (BRIEF-2), which assesses everyday behavior associated with specific domains of executive functions. Executive functions are a collection of behaviors and skills that are responsible for guiding, directing, and managing cognitive, emotional, and behavioral functioning. They include controlling impulses, initiating new behaviors, selecting relevant task goals, planning and organizing, shifting problem solving strategies when necessary, and monitoring and evaluating behavior. ████ endorsed *at-risk* levels of difficulty with *shifting* (e.g., often – I have trouble getting used to new situations, I have trouble thinking of a different way to solve a problem when I get stuck), *working memory* (e.g., often – I have trouble remembering things even for a few minutes, I forget instructions easily; never – I forget to hand in my homework, even when it's completed), and *task-completion* (e.g., often – I have trouble finishing tasks; sometimes – I am slower than others when completing my work). Mrs. █████ reported all scales within normal limits.

In order to assess █████'s attention and concentration, the Behavior Assessment System for Children – Third Edition (BASC-3) was administered to ████ and Mrs. █████. Both raters ranked Attention, Hyperactivity, Aggression, and Conduct Problems within normal limits.

**Social-Emotional and Adaptive Functioning**
Social-emotional and adaptive functioning were evaluated through the BASC-3 and the Revised Children's Manifest Anxiety Scale, Second Edition (RCMAS-2).

████'s BASC-3 results should be interpreted with caution due to an elevated F Index, indicating a negative overall view of her thoughts, feelings, and behaviors. Scale scores in the clinically significant range suggest a high level of maladjustment; scores in the *at-risk* range may identify a significant problem that may not be severe enough to require formal treatment or may identify the potential of developing a problem that needs careful monitoring. On the BASC-3, ████ endorsed clinically significant levels of difficulty with *depression* (e.g., true – I used to be happier, I don't seem to do anything right, nothing about me is right; almost always – I feel like I have no friends, no one understands me; often – I feel lonely), *interpersonal relations* (e.g., true – I have a hard time making friends, my classmates don't like me; almost always – other kids hate to be with me; often – I feel that nobody likes me), and *self-esteem* (e.g., false – I like who I am, I feel good about myself; never – I'm happy with who I am, I have confidence in myself; true – I wish I were different; almost always – my looks bother me). ████ also endorsed *at-risk* levels of difficulty with *attitude to school* (e.g., true – I don't like thinking about school; false – I don't care about school; never – my school feels good to me; almost always – school is boring), *attitude to teachers* (e.g., false – my teacher understands me, my teacher cares about me; never – my teacher is proud of me, my teacher gets mad at me for no good reason, teachers look for the bad things that you do; almost always – I get along with my teacher), *social stress* (e.g., true – my friends have more fun than I do, other children are happier than I am; almost always – I feel out of place around people, I feel that others do not like the way I do things; often – I am lonely), *sense of inadequacy* (e.g., true – I never seem to get anything right; almost always – when I take tests I can't think, I want to do better but I can't; often – I fail at things, even when I try hard I fail), *somatization* (e.g., true – often I feel sick in my stomach, I get sick more than others), and *self-reliance* (e.g., false – if I have a problem I can usually work it out; never – my friends come to me for help; sometimes – I can solve difficult problems by myself, I am good at making decisions). Mrs. █████ endorsed an *at-risk* level of difficulty with *anxiety* (e.g., almost always – says "tests make me nervous"; often – worries, is easily stressed, worries about making mistakes). In the narrative portion of the BASC-3, Mrs. Humcke wrote that "████ is an affectionate, smart, thoughtful girl. She is very passionate about things that she feels are important. ████"

WM 078

PATIENT NAME: ████████
DATE OF BIRTH: ████████                                    10
PSYCHOEDUCATIONAL EVALUATION

loves her family and she will always have a strong bond with her brothers." Regarding concerns, Mrs.
████████ explained, "I'm concerned about ████████ spending too much time thinking/worry about things.
Although things have improved, ████████ still spends too much time alone. She needs a friend she can rely
on, spend time with and with whom she can confide in. She is very opinionated which can be good but
also sometimes difficult."

████████ completed the RCMAS-2, a standardized self-report measure, which assesses worry, stress, and fear
that can lead to academic difficulties and other problems. She endorsed an *at-risk* level of *overall anxiety*
(T = 62). This total score was made up of physiological anxiety (within normal limits), worry (within
normal limits), and *social anxiety* (*at-risk*; e.g., I fear other kids will laugh at me in class, I feel someone
will tell me I do things the wrong way, others seem to do things easier than I can, I feel alone even when
there are people with me, I am afraid to speak up in a group, I worry about being called on in class).

## CLINICAL IMPRESSIONS

████████ is a 16-year-old female referred by her school district and her attorney (Ms. Julie
Warshaw) for a private psychoeducational evaluation to guide school placement decisions and academic
recommendations. ████████ is a rising eleventh grader. She earns mostly A's and B's. No behavioral
problems have been reported at home or at school (other than anxiety preventing her from going/staying
in school). ████████ is socially isolated and does not have friends. In September 2016, ████████ was admitted to
ICCPC's partial hospital program after presenting with suicidal ideation. Mrs. ████████ explained that
████████ is very hard on herself and typically thinks that her efforts are "not good enough" which negatively
impacts her social and academic success. ████████ has been receiving home instruction since 10/24/16 and a
504 plan was implemented for her effective 12/7/16. She has attempted to return to school several times
but her anxiety has impeded her doing so. She has been diagnosed with Depression and Anxiety. ████████ is
currently prescribed Wellbutrin (150mg) and Prozac (15mg) and undergoes weekly outpatient group
therapy for anxiety, depression, and social skills. ████████ stated that she wants to resume school. When
asked what makes a good school for her, ████████ stated that she would like a small school that does not
have too many people and where the teachers care about her.

████████ achieved a Full Scale IQ score of 99 (Average range, 47th percentile); ████████ achieved a General
Ability Index (GAI) score of 108, estimating her overall cognitive functioning to be in the Average range
(70th percentile). GAI is a summary score that is less sensitive to the influence of working memory and
processing speed and may be a better representation of Jenna's intelligence than the FSIQ. Her Verbal
Comprehension, Perceptual Reasoning, and Processing Speed were each measured in the Average range
of functioning. Her Working Memory was measured in the Low Average range of functioning,
representing an area of relative weakness. Processing Speed also represented an area of relative weakness
(PSI was statistically significantly lower than VCI and PRI). This was consistent with relatively weaker
performance on timed tasks across the various evaluation instruments, particularly in math and oral
fluency or retrieving and expressing ideas quickly (e.g., WIAT-III oral word fluency and math fluency; D-
KEFS letter fluency, category fluency, color naming). Anecdotally, she also worked slowly and
thoughtfully during testing; on timed tasks, she sometimes gave her answer just as time expired or after
time already expired. Therefore, ████████ would benefit from extended time on tests and other tasks across
subjects.

Of note, the WAIS-IV was administered 6.5 months after ████████'s last administration of the same
intelligence test. Practice guidelines suggest waiting at least six months between administrations. One

PATIENT NAME: █████████
DATE OF BIRTH: █████████
PSYCHOEDUCATIONAL EVALUATION

11

particular study in which the researchers administered the WAIS-IV to the same participants 3 and 6 months apart indicates that "prior exposure to the WAIS-IV results in significant score increments. These gains reflect practice effects instead of genuine intellectual changes" (Estevis, Basso, and Combs, 2012). However, █████'s performance on the most recent WAIS-IV was consistent with or slightly lower than her January performance and thus is believed to be a valid estimate of █████'s current functioning. Please see table below for comparative scores.

| | Standard Score | Standard Score |
|---|---|---|
| Full Scale (FSIQ) | (104) | (99) |
| General Ability Index (GAI) | | 105 |
| Verbal Comprehension (VCI) | 116 | 108 |
| Similarities | 11 | 12 |
| Vocabulary | 13 | 9 |
| Information | 15 | 14 |
| Perceptual Reasoning (PRI) | 107 | 107 |
| Block Design | 9 | 10 |
| Matrix Reasoning | 11 | 12 |
| Visual Puzzles | 14 | 12 |
| Working Memory (WMI) | (86) | (80) |
| Digit Span | 6 | 7 |
| Arithmetic | 9 | 6 |
| Processing Speed (PSI) | (94) | (92) |
| Symbol Search | 5 | 8 |
| Coding | 13 | 11 |

█████'s academic achievement was generally consistent with, or surpassed, her age, education, and GAI, with the exception of Math Fluency.

Her overall oral language skills placed her in the Average range. Her expressive and receptive language placed her in the Average and High Average ranges, respectively.

█████'s overall reading skills placed her in the Average range. Her phonological awareness and single word reading were measured in the Average and High Average ranges, respectively. Her reading comprehension was measured in the Average (open-ended) to High Average (multiple choice) ranges, which represented fifth grade and college sophomore equivalence, respectively, demonstrating great variability. Her oral reading fluency was measured in the Average range while her silent reading rate was measured in the High Average range.

Her written expression placed her in the Average range. Her spelling was measured in the Average range. Her sentence and essay composition placed her in the High Average and Average ranges, respectively.

█████'s untimed math achievement placed her in the High Average range (81st percentile) while her timed math skills placed her in the Low Average range of functioning (23rd percentile), representing a statistically significant difference, and demonstrating that she benefits from extended time in order to demonstrate her full (advanced) mathematics knowledge. Furthermore, her math fluency performance was

PATIENT NAME: ██████████
DATE OF BIRTH: ██████████
PSYCHOEDUCATIONAL EVALUATION

12

significantly lower (≥ 2 standard deviations) than predicted by her GAI. Therefore, ████ meets criteria for a diagnosis of Specific Learning Disorder with impairment in mathematics, specifically with fluent calculation, Moderate. Of note, her (untimed) math skills surpassed scores predicted by her GAI; therefore, on this evaluation, ████ is excelling in (untimed) math.

████'s memory performance was variable and inconsistent within and between measures. As discussed above, her WMI was an area of relative weakness (WMI = 80, 9th percentile). ████'s immediate recall and delayed recognition verbal memory placed her in the Low Average range. Contrary to intuition, she performed better on a memory task which required her to retain non-contextual, non-meaningful information presented over multiple trials (Verbal Learning) than on a task which required her to remember contextual information presented in a story form; she may have benefitted from multiple trials (being exposed to the information multiple times) and/or the story format had too much information and made it more difficult for ████ to pick out and remember the most salient parts. ████'s immediate and delayed visual memory placed her in the Very Low and Average ranges, respectively. Her immediate and delayed memory for paired associates learning (verbal-visual associate memory or pairing a word with a symbol) was measured in the Average range. She appeared to benefit from having verbal and pictorial information paired together and possibly also from multiple exposures to the information.

On standardized assessment (D-KEFS), ████'s executive functioning skills fell in the Low Average to High Average ranges. On a test of sustained visual attention (CPT3), relative to the normative sample, ████ made more omission errors, demonstrating some indication of issues related to inattentiveness, sustained attention, and vigilance. On a test of sustained auditory attention (CATA), relative to the normative sample, ████ responded faster and displayed more of a reduction in response speed in later blocks, indicating some issues with sustained attention. On standardized report measures, ████ endorsed elevated levels of difficulty with shifting, working memory, task-completion, attitude to school, and attitude to teachers. Mrs. ████ did not endorse any difficulties with executive functioning on standardized report measures. During the background interview, ████ and her mother denied difficulties with careless errors, sustained attention, distraction, follow-through, organization, losing things, hyperactivity, or impulsivity.

On a standardized report measure, ████ endorsed an elevated level of difficulty with somatization, social stress, interpersonal relations, depression, self-esteem, self-reliance, and sense of inadequacy Mrs. ████ endorsed an elevated level of anxiety. Mrs. ████ explained that ████ is very hard on herself and typically thinks that her efforts are "not good enough" which negatively impacts her social and academic success. These automatic negative thoughts seem to be feeding depression and anxiety. ████ continues to meet criteria for Major Depressive Disorder, Recurrent Episode, Moderate and Generalized Anxiety Disorder. Of note, depression and anxiety can negatively impact memory and processing speed (████'s relative weaknesses according to two evaluations, both conducted during active depressive episodes with anxiety).

████ turned the volume down significantly during the CATA, explaining that she has been told that she is sensitive to sound. It is possible that this hypersensitivity to noise is contributing to feeling overwhelmed and anxious in school, which tends to be a noisy environment. Please see recommendations for suggestions for how to accommodate ████ here to optimize her functioning.

WM 081

PATIENT NAME: ███████████

DATE OF BIRTH: ███████████                                          13

PSYCHOEDUCATIONAL EVALUATION

████ is a kind, intelligent, articulate, thoughtful young woman. Please see recommendations below to help her achieve her fullest, and great, potential.

## DIAGNOSIS

F81.2    Specific Learning Disorder with impairment in mathematics, specifically with fluent calculation, Moderate

F33.1    Major Depressive Disorder, Recurrent Episode, Moderate

F41.1    Generalized Anxiety Disorder

## RECOMMENDATIONS

1. It is recommended that this report be shared with ████'s school and treatment providers and standardized testing agencies.

2. ████ would benefit from a small school and small classroom environment where she can get extra support for her emotional and academic needs. This classroom should still be academically vigorous as ████'s ability and achievement scores are generally at or above normal limits. In light of relative weakness in PSI, math fluency, oral fluency, anxiety, and depression, ████ may need some extra time to process information and formulate and express an answer. It is important to give her this time and give her opportunities to seek clarification; to start, this may include writing her question on a post-it note on her desk that a teacher's assistant walks around and sees and addresses so she does not need to raise her hand and speak in front of the class which causes her too much anxiety at this time. Similarly, do not call on ████ if she is not raising her hand or require her to speak in front of the class; work with her therapist to gradually expose her to these fears and build her competency. To support her relative weaknesses, ████ can benefit from the following supports.

3. ████ is reportedly (and noticeably) hypersensitive to noise. Therefore, she would benefit from the following recommendations:

   a. A thorough Central Auditory Processing Disorder (CAPD) evaluation. These are typically conducted by an audiologist in private practice or in a hospital with an audiology department (such as Children's Specialized Hospital or CHOP).

   b. ████ may benefit from access to noise-cancelling headphones and/or headphones with music as needed in order to cope with loud and overwhelming settings and situations.

   c. ████ would benefit from being able to take breaks when needed and go to a designated quiet space when she is overwhelmed (e.g., guidance department office even if she does not want to talk). Gradually decrease how often she can use this, in conjunction with her therapist.

   d. Similarly, because cafeterias can be very noisy, she may benefit from a quiet setting with a small group of students to eat her lunch. This will help with becoming over-stimulated but also with social skills and social anxiety and feeling like she has a group in the school.

4. Testing accommodations:

   a. In light of a relative weakness in Processing Speed and math fluency (clinically significant discrepancy between timed and untimed math), anxiety, and depression, ████ would benefit from extended time on tests (at least time-and-a-half) in all subjects.

   b. A separate, distraction-free testing room so she is not bothered by noises and other extraneous stimuli (hypersensitive). This will also allow her from becoming agitated when others turn in their tests before she does.

   c. Breaks if she gets anxious or overwhelmed.

WM 082

PATIENT NAME: ███████████
DATE OF BIRTH: ███████████                                    14
PSYCHOEDUCATIONAL EVALUATION

   d. Instructions should be presented in writing and should be available for ████ to refer back to in light of variable memory.

5. ████ meet criteria for a diagnosis of **Specific Learning Disorder with impairment in mathematics, specifically fluent calculation, Moderate.** Therefore, she would benefit from the following accommodations:

   a. Because ████ has difficulties with math fluency, allow her to complete every other math problem for homework/classwork in order to check for understanding while decreasing unnecessary frustration.

   b. Allow extra time (time-and-a-half) for math tests.

6. In regards to memory, ████ appeared to benefit from having verbal and pictorial information paired together and possibly also from multiple exposures to the information. Do not include too much extraneous information because ████ has some difficulties picking out the most salient points.

7. ████ would benefit from counseling/support as needed in school. It would be helpful to have someone check in on her adjustment regularly and assist in connecting her with peers that she may connect with. To this end, she would benefit from a social skills group (like a "lunch bunch") to help make and maintain friendships in school.

8. In light of background information and current testing results, ████ would benefit from the following academic accommodations:

   a. Preferential classroom seating (front of class away from anything noisy such as a heating system).

   b. Reduce the assignment length and strive for quality (rather than quantity) when applicable).

      i. In math, this may mean doing only every other problem in order to demonstrate mastery of the concept, without causing unnecessary frustration and while leaving time and energy for other tasks.

      ii. For writing assignments, consider modifying page requirements.

      iii. *Do not grade her or penalize her based on completion time!*

   c. Due to variable processing speed and accuracy, ████ would benefit from receiving an outline or complete copy of class notes ahead of time so that she can simply fill in a few details during the lecture and stay engaged. Similarly, minimize unnecessary copying from the board. In college, she would benefit from a note taker. Also, allow her to use assistive technology such as a tablet or laptop to complete work and to take notes in class.

   d. Unfamiliar information and materials should be presented in small, manageable "chunks" and at a controlled rate. Similarly, unfamiliar skills should be taught through demonstration and guided practice, which are only then followed by independent practice or review.

   e. Give clear, concise directions. Provide a model. Post the model and refer to it often.

   f. Instructions should be written down in light of ████'s memory inconsistencies.

   g. Tasks should also be paced according to ████'s level of mastery to guarantee a high rate of success.

   h. ████ will benefit from highly structured, explicit, step-by-step strategies when learning new academic procedures. The last step of any such strategy should always include some method of checking the result. In addition, frequent repetition and rehearsal of to-be-learned material will be important.

WM 083

PATIENT NAME: █████████
DATE OF BIRTH: █████████                                                    15
PSYCHOEDUCATIONAL EVALUATION

   i. When necessary, help ████ break longer tasks into shorter segments. Plan on providing extra support and guidance for long-term, multi-step assignments requiring organization. Teach ████ to set clear timelines of what she needs to do to accomplish each step (monitor her progress frequently).

   j. Coach ████ in monitoring her own behavior (e.g., making checklists and writing reminders for herself, setting alarms on her phone).

   k. Increase the frequency of positive reinforcement at home and school (catch ████ doing something right and let her know it). Reinforce effort and not final outcome/grades.

9. Individuals with depression and anxiety symptoms often benefit from behavioral and psychopharmacology interventions. Therefore, it is recommended that ████ continue psychotherapy and medication management.

Individuals with her profile tend to benefit from a Cognitive Behavioral Therapy (CBT) approach, with special attention to:

   a. Distress tolerance and coping with anxiety and depression
   b. Building positive self-image
   c. Noticing and challenging automatic negative thoughts
   d. Emotion regulation
   e. Interpersonal effectiveness
   f. Social skills training

10. ████ may benefit from a re-evaluation in 2-3 years to evaluate treatment progress and determine updated recommendations for college.

11. ████'s parents are referred to the following resources to provide additional information about her diagnoses. In addition, we recommend that the family rely on their own support systems as much as possible, as raising a child with depression, anxiety, and learning difficulties can be very challenging for parents.

   a. The Statewide Parent Advocacy Network (SPAN) can be helpful a source of information and support: 1-800-654-SPAN; www.spannj.org

   b. National Alliance for Mental Illness (NAMI) Mercer provides education and support for individuals and families affected by mental illness – www.namimercer.org

   c. Mom 2 Mom Helpline (a division of Rutgers UBHC) 1-877-914-6662, http://www.mom2mom.us.com/

   d. New Jersey Children's System of Care, managed by Perform care. If eligible, you may receive Family Supports such as respite care or assistance with camp. (1-877-652-7264; www.performcare.org)

It was a pleasure working with ████ and her family. If there are further questions or the need for consultation regarding the findings of this evaluation, please do not hesitate to call us at (609) 419-0400.

_____, Psy.D., BCBA-D          8/21/17
Natalie Schuberth, Psy.D., BCBA-D     Date
Licensed Psychologist, License #5563

WM 084

PATIENT NAME: ████████████
DATE OF BIRTH: ████████████
PSYCHOEDUCATIONAL EVALUATION

16

### Scoring Appendix

| Classification Level | Percentile Rank | Standard Score | Scaled Score | T-Score |
|---|---|---|---|---|
| Extremely High | ≥ 98 | ≥ 130 | ≥ 16 | ≥70 |
| Very High | 91-97 | 120-129 | 14-15 | 63-69 |
| High Average | 75-90 | 110-119 | 12-13 | 57-62 |
| Average | 25-74 | 90-109 | 8-11 | 43-56 |
| Low Average | 9-24 | 80-89 | 6-7 | 37-42 |
| Very Low | 2-8 | 70-79 | 4-5 | 30-36 |
| Extremely Low | <2 | <70 | 1-3 | <30 |

### *Intellectual Functioning*

#### Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV)

| | | | |
|---|---|---|---|
| Full Scale (FSIQ) | 99 | 47 | Average |
| General Ability Index (GAI) | 108 | 70 | Average |
| Verbal Comprehension (VCI) | 108 | 70 | Average |
| Similarities | 12 | | High Average |
| Vocabulary | 9 | | Average |
| Information | 14 | | Very High |
| Perceptual Reasoning (PRI) | 107 | 68 | Average |
| Block Design | 10 | | Average |
| Matrix Reasoning | 12 | | High Average |
| Visual Puzzles | 12 | | High Average |
| Working Memory (WMI) | 80 | 9 | Low Average |
| Digit Span | 7 | | Low Average |
| Arithmetic | 6 | | Low Average |
| Processing Speed (PSI) | 92 | 30 | Average |
| Symbol Search | 6 | | Low Average |
| Coding | 11 | | Average |

WM 085

PATIENT NAME: ███████████

DATE OF BIRTH: ███████████                                    17

PSYCHOEDUCATIONAL EVALUATION

*Academic Functioning*

### Wechsler Individual Achievement Test – Third Edition (WIAT-III)

| Composite/Subtest | Standard Score | Percentile Rank | Grade Equivalent | Age Equivalent | Qualitative Description |
|---|---|---|---|---|---|
| Oral Language Composite | 104 | 61 | | | Average |
| Listening Comprehension | 114 | 82 | >12.9 | >19:11 | High Average |
| *Receptive Vocabulary* | *118* | *88* | | | *High Average* |
| *Oral Discourse Comprehension* | *104* | *61* | | | *Average* |
| Oral Expression | 93 | 32 | 7.8 | 13:1 | Average |
| *Expressive Vocabulary* | *99* | *47* | | | *Average* |
| *Oral Word Fluency* | *87* | *19* | | | *Low Average* |
| *Sentence Repetition* | *98* | *45* | | | *Average* |
| Total Reading Composite | 103 | 58 | | | Average |
| Basic Reading | 108 | 70 | | | Average |
| Reading Comprehension and Fluency | 98 | 45 | | | Average |
| Word Reading | 113 | 81 | >12.9 | >19:11 | High Average |
| Pseudoword Decoding | 105 | 63 | >12.9 | >19:11 | Average |
| Reading Comprehension | 92 | 30 | 5.7 | 11:4 | Average |
| Oral Reading Fluency | 106 | 66 | 12.9 | >19:11 | Average |
| *Oral Reading Accuracy* | *97* | *42* | *10.2* | *15:0* | *Average* |
| *Oral Reading Rate* | *105* | *63* | *12.7* | *>19:11* | *Average* |
| Written Expression Composite | 108 | 70 | | | Average |
| Sentence Composition | 115 | 84 | >12.9 | >19:11 | High Average |
| *Sentence Combining* | *120* | *91* | | | *Very High* |
| *Sentence Building* | *107* | *68* | | | *Average* |
| Spelling | 105 | 63 | 12.4 | >19:11 | Average |
| Essay Composition | 101 | 53 | 9.8 | 16:0 | Average |
| *Word Count* | *107* | *68* | | | *Average* |
| *Theme Development and Text Organization* | *94* | *34* | | | *Average* |
| Mathematics Composite | 113 | 81 | | | High Average |
| *Math Fluency | 89 | 23 | | | Low Average |
| Math Problem Solving | 117 | 87 | >12.9 | >19:11 | High Average |
| Numerical Operations | 107 | 68 | >12.9 | >19:11 | Average |
| Math Fluency—Addition | 92 | 30 | 8.4 | 13:4 | Average |
| *Math Fluency—Subtraction | 86 | 18 | 6.1 | 11:4 | Low Average |
| Math Fluency—Multiplication | 92 | 30 | 7.2 | 13:0 | Average |

*Norms based on age*

**Indicates score that is significantly (≥ 2 standard deviations) different from GAI*

not recognized by code. 6A:14-3.5(c)(12)(i)(5)-(6)

WM 086

PATIENT NAME: 
DATE OF BIRTH:
PSYCHOEDUCATIONAL EVALUATION

18

### Nelson-Denny Reading Test

| Combined Subtests | Standard Scores (Standard Deviation) | Grade Equivalent | Range of Functioning |
|---|---|---|---|
| **Vocabulary** | | | |
| Standard Time | 86 | 14.6 | High Average |
| Extended Time | 85 | 14.5 | High Average |
| **Comprehension** | | | |
| Standard Time | 78 | 14.4 | High Average |
| Extended Time | 59 | 12.4 | Average |
| **Total** | | | |
| Standard Time | 83 | 14.6 | High Average |
| Extended Time | 77 | 13.9 | High Average |
| **Reading Rate** | 84 | | High Average |

PATIENT NAME: ███████████
DATE OF BIRTH: ███████████                                            19
PSYCHOEDUCATIONAL EVALUATION

*__Executive Functioning/Learning/Memory__*

## Wechsler Intelligence Scale for Children – Fifth Edition (WISC-V)

| Index/Subtests | Standard Score | Range of Functioning |
|---|---|---|
| *Optional Subtests* | | |
| Immediate Symbol Translation | 95 | Average |
| Delayed Symbol Translation | 108 | Average |

## Wide Range Assessment of Memory and Learning, Second Edition (WRAML2)

| Index/Subtests | Standard Score | Percentile | Range of Functioning |
|---|---|---|---|
| Screening Memory | 76 | 5 | Very Low |
| General Recognition Memory | 87 | 19 | Low Average |
| Verbal Memory - Immediate Recall Total | 85 | 16 | Low Average |
| Verbal Memory – Recognition Total | 88 | 21 | Low Average |
| Story Memory | | | |
|    Immediate Recall | 7 | | Low Average |
|    Delayed Recall | 7 | | Low Average |
|    Recognition | 6 | | Low Average |
| Verbal Learning | | | |
|    Immediate Recall | 8 | | Average |
|    Delayed Recall | 10 | | Average |
|    Recognition | 10 | | Average |
| Visual Memory – Immediate Total | 73 | 4 | Very Low |
| Visual Memory – Recognition Total | 90 | 25 | Average |
| Design Memory | | | |
|    Immediate | 6 | | Low Average |
|    Recognition | 6 | | Low Average |
| Picture Memory | | | |
|    Immediate | 5 | | Very Low |
|    Recognition | 11 | | Average |

PATIENT NAME: 
DATE OF BIRTH:
PSYCHOEDUCATIONAL EVALUATION

20

### Delis-Kaplan Executive Function System (D-KEFS)

| Index/Subtest | Standard Score | Category |
|---|---|---|
| **Trail Making** | | |
| Visual Scanning | 12 | High Average |
| Number Sequencing | 13 | High Average |
| Letter Sequencing | 14 | Very High |
| Number-Letter Switching | 11 | Average |
| Motor Speed | 11 | Average |
| **Verbal Fluency** | | |
| Letter Fluency | 4 | Very Low |
| Category Fluency (Alternate Form) | 5 | Very Low |
| Category Switching: Correct Responses | 6 | Low Average |
| Switching Accuracy | 8 | Average |
| **Color-Word Interference** | | |
| Color Naming | 7 | Low Average |
| Word Reading | 11 | Average |
| Inhibition | 8 | Average |
| Inhibition/Switching | 13 | High Average |
| **Sorting Test** | | |
| Free Sorting – Description Score | 10 | Average |
| Correct Sorts | 13 | High Average |
| **Twenty Questions** | | |
| Total Weighted Achievement | 12 | High Average |
| **Word Context** | | |
| Total Achievement Score | 7 | Low Average |
| **Tower** | | |
| Free Inquiry | 13 | High Average |

WM 089

PATIENT NAME:
DATE OF BIRTH:
PSYCHOEDUCATIONAL EVALUATION

21

## Conners Continuous Performance Test 3rd Edition (CPT3)

| | | | |
|---|---|---|---|
| Detectability | d' | 55 | High Average |
| Error Type | Omissions | 90 | Very Elevated |
| | Commissions | 34 | Low |
| | Perseverations | 46 | Average |
| Reaction Time Statistics | Hit Reaction Time (HRT) | 58 | A Little Slow |
| | HRT Standard Deviation | 41 | Low |
| | Variability | ? | ? |
| | HRT Block Change | ? | ? |
| | HRT ISI Change | 42 | Low |

## Conners Continuous Auditory Test of Attention (CATA)

| | | | |
|---|---|---|---|
| Detectability | d' | 49 | Average |
| Error Type | Omissions | 44 | Low |
| | Commissions | 48 | Average |
| | Perseverative Commissions | 46 | Average |
| Reaction Time Statistics | Hit Reaction Time (HRT) | 40 | A Little Fast |
| | HRT Standard Deviation | 50 | Average |
| | HRT Block Change | 64 | Elevated |

## Behavior Rating Inventory of Executive Functioning, Second Edition (BRIEF2)

| | | | |
|---|---|---|---|
| Global Executive Composite (GEC) | 56 | | 50 |
| Behavioral Regulation Index (BRI) | 47 | | 44 |
| Inhibit | 45 | | 44 |
| Self-Monitor | 51 | | 45 |
| Emotion Regulation Index (ERI) | 57 | | 57 |
| Shift | 64 | * | 58 |
| Emotional Control | 47 | | 56 |
| Cognitive Regulation Index (CRI) | 60 | * | 49 |
| Initiate | - | | 57 |
| Working Memory | 65 | * | 47 |
| Plan/Organize | 50 | | 56 |
| Task-Monitor | - | | 44 |
| Organization of Materials | - | | 39 |
| Task-Completion | 65 | * | - |

* at-risk / ** clinically significant

PATIENT NAME: ███████
DATE OF BIRTH: ███████
PSYCHOEDUCATIONAL EVALUATION

22

### Social, Emotional, and Behavioral Functioning

Behavior Assessment System for Children, Second Edition (BASC-3)

| | | | | |
|---|---|---|---|---|
| Attitude to School | 66 | * | - | |
| Attitude to Teachers | 63 | * | - | |
| Sensation Seeking | 45 | | - | |
| Atypicality | 52 | | 44 | |
| Withdrawal | - | | 48 | |
| Locus of Control | 51 | | - | |
| Social Stress | 64 | * | - | |
| Anxiety | 46 | | 62 | * |
| Depression | 71 | ** | 58 | |
| Sense of Inadequacy | 64 | * | - | |
| Somatization | 69 | * | 56 | |
| Attention Problems | 45 | | 42 | |
| Hyperactivity | 38 | | 39 | |
| Aggression | - | | 47 | |
| Conduct Problems | - | | 41 | |
| Relations with Parents | 54 | | - | |
| Interpersonal Relations | 13 | ** | - | |
| Self-Esteem | 18 | ** | - | |
| Self-Reliance | 39 | * | - | |
| Adaptability | - | | 38 | |
| Social Skills | - | | 39 | |
| Leadership | - | | 39 | |
| Activities of Daily Living | - | | 57 | |
| Functional Communication | - | | 49 | |
| School Problems | 61 | * | - | |
| Externalizing Problems | - | | 42 | |
| Internalizing Problems | 62 | * | 60 | * |
| Inattention/Hyperactivity | 41 | | - | |
| Emotional Symptoms Index | 69 | * | - | |
| Behavioral Symptoms Index | - | | 53 | |
| Personal Adjustment | 26 | ** | - | |
| Adaptive Skills | - | | 44 | |

⁺elevated F Index; interpret with caution
* at-risk / ** clinically significant
For clinical scales, higher scores indicate areas of difficulty
For adaptive scales, lower scores are indicative of concern

WM 091

PATIENT NAME: ███████████
DATE OF BIRTH: ███████████
PSYCHOEDUCATIONAL EVALUATION

23

### Revised Children's Manifest Anxiety Scale, Second Edition (RCMAS-2)

| | | |
|---|---|---|
| Defensiveness | 48 | |
| Total | 62 | * |
| Physiological Anxiety | 56 | |
| Worry | 56 | |
| Social Anxiety | 68 | * |

* at-risk / ** clinically significant

EXHIBIT E

**From:** Julie MW Warshaw jwarshaw@warshawlawfirm.com  &
**Subject:** Re: JH v. West Morris
**Date:** August 18, 2017 at 2:26 PM
**To:** Howlett Jodi jhowlett@cgajlaw.com
**Bcc:** Warshaw Law Firm LLC jwarshaw@warshawlawfirm.com

Jodi, Attached please find a letter from JH's therapist again reiterating that she needs an out of district placement but does not need a therapeutic school setting. My client is willing to do a cost sharing arrangement but they do not agree with the $25,000 offer. If your client wants to reconsider their offer and increase it, then my clients will consider settling this matter. Otherwise, they will proceed with their unilateral placement at the Purnell School, as stated in one of my prior emails giving the district 10 days notice of such a unilateral placement) and seek full reimbursement from the school district. In addition, please provide us with a copy of Dr. Schubert''s independent evaluation report as she sent it to the district directly. Please advise as to your client's position. Thank you. Julie

# ĪCCPC

**Immediate Care
Children's
Psychiatric Center**
28 B Hill Road, Parsippany, NJ 07054
TEL (973) 794-3281 FAX (973) 794-3284
www.NJPsychCenter.com

8.17.17

RE: J████ H██████:

To whom it may concern,

I am the clinician working with J████ H██████ here at ICCPC. I am writing this letter on behalf of J████'s anxiety and how it affects her education. Throughout her time here, J████ struggled with anxiety in social situations and when under pressure. She has struggled in large with engaging in large group settings due to feeling overwhelmed and having thoughts that others were going to judge her for what she says. I was able to encourage J████ to try and attend school again for approximately two days last year. She continued to report anxiety due to the large population of students and the size of her classes. She was unable to complete her academic assignments due to the anxiety causing her confusion and delaying her ability to function in school. While in smaller group settings, I have noticed that J████ was able to progress in managing her anxiety. She became more open and engaged and identified that her anxiety lessened throughout time. I have worked with J████ for almost one full year and throughout that time, have seen her progress when she is in smaller settings where she can get more attention and feel less anxious. J████ is a very mature and bright person. She excels better when people around her are mature and college bound rather than peers who have behavioral issues. Throughout my time with her, J████ has never demonstrated any negative behaviors or came to program due to behavioral issues. She also does not respond well when others around her have behavioral issues as it distracts her and causes her to become anxious again. She also will be continuing treatment here at ICCPC throughout the school year and will not be in need of therapy while in school. She will need a structured but non – strict educational environment as she functions better with more flexible schedules. It is highly recommended that she be placed in a school that can meet these needs in order for J████ to function academically and succeed. If there are any further questions, please feel free to contact me. Thank you.

Sincerely,

Melissa Dolgos, LAC
Senior Clinician
973-794-3281 X222

melissad@njpsychcenter.com

**I.C.C.P.C. – Immediate Care Children's Psychiatric Center**

Julie Warshaw, Esq.
WARSHAW LAW FIRM, LLC
266 King George Road, Suite C2
Warren, NJ 07059
(973) 433-2121, Fax (973) 439-1047
jwarshaw@warshawlawfirm.com
www.warshawlawfirm.com

The information contained in this e-mail message is intended only for the confidential use of the recipient(s) named above. This message is privileged and confidential. If the receiver of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message. The sender confirms that Warshaw Law Firm, LLC shall not be responsible if this e-mail message is used for any indecent, unsolicited or illegal purposes, which is in violation of any existing law and the same shall solely be the responsibility of the sender and that Warshaw Law Firm, LLC shall at all times be indemnified of any civil and/or criminal liabilities or consequences therefrom.

From: **Julie Warshaw** jwarshaw@warshawlawfirm.com
Subject: Re: ▮▮▮▮▮▮
Date: August 24, 2017 at 10:37 AM
To: Howlett Jodi jhowlett@cgajlaw.com

Jodi, Could you please call me today? School starts on Monday and we need to resolve placement. Thank you. Julie Warshaw

Sent from my iPhone

From: **Julie MW Warshaw** jwarshaw@warshawlawfirm.com 
Subject: Re: JH v. West Morris
Date: August 26, 2017 at 8:54 PM
To: Jodi Howlett jhowlett@cgajlaw.com



███████letterto
advers...17.doc

Julie Warshaw, Esq.
WARSHAW LAW FIRM, LLC
266 King George Road, Suite C2
Warren, NJ 07059
(973) 433-2121, Fax (973) 439-1047
jwarshaw@warshawlawfirm.com
www.warshawlawfirm.com

The information contained in this e-mail message is intended only for the confidential use of the recipient(s) named above. This message is privileged and confidential. If the receiver of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message. The sender confirms that Warshaw Law Firm, LLC shall not be responsible if this e-mail message is used for any indecent, unsolicited or illegal purposes, which is in violation of any existing law and the same shall solely be the responsibility of the sender and that Warshaw Law Firm, LLC shall at all times be indemnified of any civil and/or criminal liabilities or consequences therefrom.

## WARSHAW LAW FIRM, LLC
266 King George Road, Suite C2
Warren, New Jersey 07059
Phone: (973) 433-2121
Fax: (973) 439-1047
jwarshaw@warshawlawfirm.com
clientservices@warshawlawfirm.com
www.warshawlawfirm.com

Julie M.W. Warshaw, Esq. *~^
Caryn Fitzgerald, Esq. *~

Of Counsel:
David B. Warshaw, Esq. *~^

-------------------------------
Licensed in New Jersey *
Licensed in New York ~
Licensed in Massachusetts ^
Licensed in Pennsylvania `

August 26, 2017

Via email at jhowlett@cgajlaw.com
Jodi Howlett, Esq.
Cleary, Giacobbe, Alfieri & Jacobs, LLC
5 Ravine Drive
P.O. Box 533
Matawan, New Jersey 07747

Re: JH v. West Morris BOE

Dear Jodi:

I received and reviewed the independent evaluation report from Dr. Schuberth. It took several phone calls to your office without the courtesy of a response. My clients also reached out to the school psychologist as per the new director's email. However, he indicated in his email that the school psychologist would review the evaluation with my clients but the school psychologist did not actually conduct the evaluation and should not be the one to interpret the evaluation report. My client finally received a call back from Kendra and Joe and they indicated that the evaluation report was being mailed to her. Further, Kendra and Joe indicated to my client that JH was being considered a general education student with a 504 Plan. That makes no sense and is a violation of my clients' rights since the school district already found her eligible for special education services in April 2017. The district cannot find a child eligible for special education services and then just unilaterally decide to find her ineligible, especially since the reason she was found eligible has not changed. My clients already agreed that JH needs to be classified but they disagreed on the placement for school. It is imperative that this student has an appropriate placement with an appropriate IEP as soon as possible where her individual needs can be met in the least restrictive environment for her, where she will receive a meaningful education.

As you are aware, you represented to Judge Moscowitz that this student was classified as Emotionally Disturbed and the district sent the draft IEP stating this classification to the Purnell School, without any basis for either of these to occur. You are also aware that my clients did not agree with the proposed draft IEP or proposed placement in the Behavioral Services Program at Mendham High School and we filed for Due Process, so it is not correct that JH was classified as ED. In addition, you then contradicted yourself and represented to Judge McGill that since we had requested a

placement in a private school but not in a therapeutic placement that automatically meant that she was a general education student. That is also not correct.

If my clients sent their daughter back to the district on Monday, there is no placement ready for her that is appropriate. The only placement proposed was the BSP program, which is a behavioral based self-contained program with students of all levels and with all types of behaviors. JH does not have behavior issues. She needs appropriate female peers her own age and to be on a college track in a supportive learning environment. The BSP program is not appropriate for her. In addition, I have indicated from the beginning and it is in our request for Due Process that we believe that the district missed an underlying disability, which would qualify her for special education services without the label of Emotionally Disturbed, as we do not believe that she even meets the criteria for such a classification. This was confirmed by Dr. Schuberth in her independent evaluation report where she indicated that JH met the criteria for the diagnosis of Specific Learning Disorder with impairment in mathematics, specifically with fluent calculation. She also met the criteria for Major Depressive Disorder, Recurrent Episode, and Generalized Anxiety Disorder. Therefore, for the district to find her eligible for special education services in April 2017 and now to tell my client that their attorney and the Superintendent were considering JH a general education student with a 504 Plan is contradictory and a violation of JH's rights under the IDEA. The district had an obligation under Child Find to recognize JH's disabilities and needs and they failed to do so. As of Monday, there is no proposed special education placement, you have informed the district to consider JH a general education student with a 504 Plan, despite having the benefit of Dr. Schuberth's independent evaluation report and a copy of JH's therapist's report, and you have denied JH her rights under the law.

I am again requesting that based on the findings of Dr. Schuberth as well as the report from JH's therapist that the district reconsider placing JH at the Purnell School for the next two years at their cost and draft an appropriate IEP for JH, as the district has failed to offer an appropriate placement for JH and has unilaterally denied her special education services, without any basis or meeting and without any consultation with Petitioners, who are equal members of the child study team. My clients remain willing to try to resolve this matter amicably.

Thank you for your immediate attention to this matter as time is of the essence.

Very truly yours,

By: /s/ Julie Warshaw
Julie Warshaw, Esq.

JW/
cc:    FH and MH (Via Email)

**From: Julie MW Warshaw** jwarshaw@warshawlawfirm.com
Subject: Re: JH c. West Morris
Date: August 29, 2017 at 5:12 PM
To: Jodi Howlett jhowlett@cgajlaw.com

Jodi, I have left several messages for you and sent you a letter on Saturday, August 27. To date, I have not received the courtesy of a return call. As you are aware, Dr. Schuberth diagnosed JH with a learning disability, which the district failed to recognize. In addition, you cannot claim that JH is classified as ED and then tell another judge that she is now a general education student with a 504 Plan after she has been found eligible for classification. To date, the district is in violation of her rights under the IDEA because school has already started and there is no appropriate placement proposed for her in district and there is no valid IEP. The district has forced my clients to seek an appropriate alternative placement for JH and they will seek reimbursement from the district for the full amount plus all costs and attorney's fees if the district refuses to resolve this matter amicably. It is imperative that you respond to my letter and calls as time is of the essence. Please note that the district cannot initiate any truancy action against my clients as they have been put on notice several times of an intention to unilaterally place JH due to the district's failures. Please advise. Thank you. Julie

Julie Warshaw, Esq.
WARSHAW LAW FIRM, LLC
266 King George Road, Suite C2
Warren, NJ 07059
(973) 433-2121, Fax (973) 439-1047
jwarshaw@warshawlawfirm.com
www.warshawlawfirm.com

The Information contained in this e-mail message is intended only for the confidential use of the recipient(s) named above. This message is privileged and confidential. If the receiver of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message. The sender confirms that Warshaw Law Firm, LLC shall not be responsible if this e-mail message is used for any indecent, unsolicited or illegal purposes, which is in violation of any existing law and the same shall solely be the responsibility of the sender and that Warshaw Law Firm, LLC shall at all times be indemnified of any civil and/or criminal liabilities or consequences therefrom.

# WARSHAW LAW FIRM, LLC

266 King George Road, Suite C2
Warren, New Jersey 07059
Phone: (973) 433-2121
Fax: (973) 439-1047
jwarshaw@warshawlawfirm.com
clientservices@warshawlawfirm.com
www.warshawlawfirm.com

Julie M.W. Warshaw, Esq. *~^
Caryn Fitzgerald, Esq. *~

Of Counsel:
David B. Warshaw, Esq. *~^

Licensed in New Jersey *
Licensed in New York ~
Licensed in Massachusetts ^
Licensed in Pennsylvania '

September 16, 2017

Via email at jhowlett@cgajlaw.com and Priority Mail
Jodi Howlett, Esq.
Cleary, Giacobbe, Alfieri & Jacobs, LLC
5 Ravine Drive
P.O. Box 533
Matawan, New Jersey 07747

Re: JH v. West Morris BOE

Dear Jodi:

I have made numerous attempts to reach you to try to resolve this matter without any response from you. As you know, there is no viable placement at all at the district as the district first tried to classify JH as emotionally disturbed and to place her in a self-contained behavioral program and now, the district is considering JH a general education student with a 504 Plan, despite having already found her eligible for special education services. As you are aware, Dr. Schuberth also identified a specific learning disability, which the district failed to find, and that JH qualified for special education services.

As you are aware, on August 18, 2017 and even prior to that time, I sent you written notification that my clients had no choice but to unilaterally place their daughter in an out of district placement. To date, I have not received any acknowledgement from you that you have received said notice and the ten days have long passed. I am again informing you as the representative of the West Morris School District that my clients are unilaterally placing their daughter in an out of district placement. Please acknowledge receipt of my multiple correspondences to you as the attorney for this school district. In addition, please inform your client that my client is not truant and no truancy actions should be initiated.

In addition, please forward to me and to my clients a copy of Dr. Ellen Platt's independent Psychiatric evaluation report. My clients remain willing to discuss an amicable resolution to this matter. Thank you for your time and attention.

Very truly yours,

By:_____

Julie Warshaw, Esq.

cc:    F.H. an M.H. (Via Email only)

# EXHIBIT F

From: ████████████████ 🖉
Subject: Fwd: Re: ████████
Date: September 11, 2017 at 3:24 PM
To: Julie MW Warshaw jwarshaw@warshawlawfirm.com

████

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: Joseph Cusack <jcusack@wmrhsd.org>
Date: 9/11/17 2:24 PM (GMT-05:00)
To: ████████████████
Subject: Re: ████████

Hello Mr. and Mrs. ██████ - I am not sure if you are referring to the proposed IEP or the 504 plan. If you need a copy of any IEP proposal, Kendra would have that documentation. I have attached a copy of the 504 plan that we developed last December when ████ was returning to school. This plan would still be in effect for the 2017-18 school year here at WMC.
Also, I have contacted educere and asked them to re-start ████'s Driver Education class. You and ████ should be receiving notification in the next day or so indicating when she can log back in to complete the course. I believe the new end date will be November 17th - I will confirm that date and get back to you.

Regards,
Joe Cusack

On Fri, Sep 8, 2017 at 2:58 PM, ██████████████████████ wrote:

Hi Joe,


In the phone conversation I had with you and Kendra back on August 25th, you indicated that ██████ would be coming back to West Morris as a General Education student with a 504. We were confused at the time since she was already determined to be eligible for special services with a previously proposed IEP.   Since then I have spoken to Kendra and she indicated that the team is waiting for results from Dr. Platt's office to schedule a new IEP.  Can you please supply us with the proposed plan for ██████ in writing?  Thank you.


Regards,

██████ and ████████████

CONFIDENTIALITY NOTICE: This message is from the West Morris Regional High School District. This message and any attachments may be confidential and/or privileged and are intended only for the individual(s) or group(s) identified as the addressee. If the message addressee is in error, or you are not authorized to read, copy, or distribute this message or attachments, please delete this message and attachments and notify the sender by return email at the address listed above.

📄

504.docx.pdf

Intervention & Referral Services

# WEST MORRIS CENTRAL HIGH SCHOOL
### Four Bridges Road
### Chester, New Jersey

## 504 Student Accommodation Plan

**Name:** ███████        **Birth Date:** ███████

**Grade:** 10        **Guidance Counselor:** Cusack

**Date of Meeting:** 12-07-2016

**Nature of Concern:**

- ███ was diagnosed with Depression on 10-17-16 and has been in an Partial Care program at Immediate Care Children's Psychiatric Center since that date. She is now ready to gradually return to West Morris Central and will need 504 accommodations to assist with this transition.

**Determination of Handicap:**

- Depression as diagnosed by Dr. Srinivasan.

**How Handicap Affects a Major Life Activity:**

- Depression has negatively impacted her attendance and her ability to complete assignments and tasks necessary for the basic life function of learning.
- Missed days due to her depression has now caused anxiety during the school day and at home.

**Reasonable Accommodations:**

- Extended time on quizzes and tests.
- ███ may take assessments sin a private setting.
- ███ will be issued a "walking pass" to take breaks from class when she is feeling a high level of anxiety.

**WM 001**

3

- ███ may utilize the Zen Zone when it is available for meditation, deep breathing, and mindfulness exercises to help ease her anxiety.
- ███ may access an counselor when necessary.

**Review Date:** September 2017

| Participants: | | Signatures: |
|---|---|---|
| ███████████████ | | |
| ███████████████ | | |
| I&RS Member: | | |
| Counselor: | | |
| Administrator:  Anne P. Meagher | | |
| Director of Special Services: David Leigh | | |
| Other | | |

**Please sign included Parental Rights Notice**

CC:   Parent
       I&RS Monitor
       Principal/Assistant Principal
       Guidance Counselor
       Director of Special Services

**Parental Rights Under Section 504:**

**Parental Rights Under Section 504:**

1. Section 504 of the Rehabilitation Act is a nondiscrimination statute barring discrimination on the basis of one's disability.

2. It is the policy of the school district not to discriminate on the basis of disability in its educational programs, activities or employment policies as required by the Act.

3. The Act requires the school district to locate, evaluate and determine if the student is a qualified individual requiring accommodation necessary to provide access to educational programs.

4. Parents are entitled to have the opportunity to review relevant educational records under the Family Education Rights and Privacy Act (FERPA).

5. Parents or guardians disagreeing with the decisions reached by school personnel for accommodations necessary for access to educational programming and/or facilities may request a hearing before an impartial hearing officer by notifying the school principal.

6. The designated school district Section 504 Coordinator is:
   Dr. David Leigh
   West Morris Admin Bldg
   4 Bridges Road
   Chester, NJ 07930
   Phone: (908) 879-6404  x1477

7. Building Principal is:
   Mr. Steve Ryan
   West Morris Central High School
   259 Bartley Road
   Chester, NJ 07930
   Phone: (908) 879-5212  x3320

cc: WMC or WMM Building Administrators

The above information has been explained and a copy given to me.

Signature of Parent or Guardian:

███████████████████████████

Signature of Case Monitor:

Date: 12/7/16

**WM 003**

EXHIBIT G

# West Morris Regional High School District
## Department of Special Education

**10 South Four Bridges Road**
**Chester, New Jersey 07930**
**908-879-6404**

## Individualized Education Program (IEP)

| | | | |
|---|---|---|---|
| **State ID:** | | **Grade:** | Tenth grade |
| **ID:** | | **Birth Date:** | |
| **Parent/Guardian:** | | **Gender:** | Female |
| **Parent/Guardian:** | | **Ethnic:** | White |
| **Address:** | | **Primary Location:** | West Morris Mendham High School |
| **City:** | | **IEP Type:** | Initial IEP |
| **State:** | | **IEP Meeting Date:** | 04/06/2017 |
| **Zip Code:** | | **IEP Start Date:** | 04/06/2017 |
| **Home Phone:** | | **Annual Review Due Date:** | 04/05/2018 |
| **Emergency Phone:** | | **Reevaluation Due Date:** | 04/05/2020 |
| **Eligibility Category:** | Emotionally Disturbed | | |
| **Case Manager:** | Sherry Wilk | | |
| **Case Manager Phone:** | 908-879-6404 x3530 | | |
| **Limited English Proficient:** | ☐ Yes ☑ No | | |
| **Parent Consent to Implement Initial IEP:** | 04/06/2017 | | |

**Related Services**
Transportation
Counseling
Extended School Year

5/16/2017    Individualized Education Program (NJIEP) for [ redacted ]

Name: [ redacted ]    Birth Date: [ redacted ]

## IEP Meeting Participants

Please sign in the appropriate space. A signature in this section of the IEP documents participation in the meeting and does not indicate agreement with the IEP. If a required member of the IEP team has been excused from participating in the meeting with parental consent, note the excusal in the required team member's space.

| Participants | Name | Signature | Date |
|---|---|---|---|
| Student, if appropriate or required: | | | |
| Parent: | [ redacted ] | | |
| Parent: | [ redacted ] | | |
| General Education Teacher: | Tamara Wubbenhorst | | |
| Special Education Teacher: | David Ehasz | | |
| Child Study Team Member: | Sherry Wilk | | |
| Case Manager (may be the CST member above): | Sherry Wilk | | |
| School Representative (may be the CST member or other appropriate school personnel): | Betina Goldberg-Rappoport | | |
| Specialist: | | | |
| Specialist: | | | |
| Guidance Counselor: | Joseph Cusack | | |

Name: ▮▮▮▮▮▮                                                                Birth Date: ▮▮▮▮

# Present Levels of Academic Achievement and Functional Performance

**Consider relevant data. List the sources used to develop this IEP.**

| | |
|---|---|
| Report Cards | Standardized Test |
| Teacher Feedback | Tracking Sheets |
| Parent Report | Progress Reports |
| Recent Evaluation | Results HSPA Scores |

**Describe the concerns of the parent:**

Mr. and Mrs. ▮▮▮▮ have expressed concern about the need to provide ▮▮▮▮ an adequate level of social and emotional support while ensuring that she is receiving academic instruction at a level that is commensurate with her potential.

**Describe the present levels of academic achievement and functional performance including how the student's disability affects his or her involvement and progress in the general education curriculum. For preschool children, as appropriate, describe how the disability affects the child's participation in appropriate activities [N.J.A.C. 6A:14-3.7(e)1].**

**4-6-17 Initial IEP Meeting**

▮▮▮▮ and her mother and father participated in the development of the IEP. This IEP meeting was held in order to discuss her current academic progress, and develop her educational program for the remainder of this school year and for the next school year.

▮▮▮▮ is currently a 10th grade student in a general education program at West Morris Central High School. She is taking French 2, Geometry, US History 2, English 2, and Chemistry, all at the Advanced level. Last year in 9th grade, ▮▮▮▮'s core academic classes were at the Advanced level, and her grades ranged from "A" to "B-." In 8th grade, she was absent 19 times, with grades in core subjects ranging from "B" to "C+." She has been receiving Home Instruction since 10/24/16, per recommendation from her psychiatrist. A 504 plan was implemented for her effective 12/7/16.

▮▮▮▮ was hospitalized on 9/22/16 at Immediate Care Children's Psychiatric Center, for depression and anxiety. She subsequently attended the partial care program, where she received counseling and academic tutoring. It was reported that she improved in the small, therapeutic school environment, where she received individualized attention. On 10/17/16, she was released from the program and cleared to return to school. After attending WMCHS for two days, she refused to go back to school.

▮▮▮▮ has been diagnosed by the Immediate Care Children's Psychiatric Center as having Major Depressive Disorder, recurrent, severe, without psychotic features, as well as with Generalized Anxiety Disorder. She is currently taking Prozac and Wellbutrin. The Center is recommending that she be educated in a smaller and more therapeutic environment so that she could continue progressing with her anxiety, depression, and school functioning.

**PSYCHIATRIC EVALUATION SUMMARY: Immediate Care Psychiatric Center (3/15/17)**

▮▮▮▮'s psychiatric issues specifically, pervasive mood disturbances, avoidance behaviors even when not under stress, along with irrational fears and anxiety secondary to school issues, all collectively at this time are directly impacting learning and ability to maintain and build satisfactory interpersonal relationships.

**PSYCHOLOGICAL EVALUATION SUMMARY:** Sherry J. Wilk, MA (1/19/17):

Relative to children of comparable age, ▮▮▮▮'s current general level of cognitive ability is estimated to be within the average range of intellectual functioning on a standardized measure of intellectual functioning. Her overall thinking and reasoning abilities exceed those of approximately 61% of individuals her age (FSIQ = 104; 95% confidence interval = 100-108). Her general verbal comprehension abilities were in the high average range (VCI = 116), and her general perceptual reasoning abilities were in the average range (PRI = 107). ▮▮▮▮'s ability to sustain attention, concentrate, and exert mental control is in the low average range (WMI = 86). ▮▮▮▮'s ability in processing simple or routine visual material without making errors is in the average range when compared to her peers (PSI = 94). She performed slightly better on verbal than on nonverbal reasoning tasks, but there is no meaningful difference between ▮▮▮▮'s ability to reason with and without the use of words. Also, as she performed much better on some verbal tasks than others. Furthermore, due to variability between the two subtests that compose the PSI, caution is warranted when interpreting this index score. Significant specific strengths include orally defining vocabulary words, knowledge of isolated facts/information, and analysis and synthesis of abstract visual stimuli and nonverbal reasoning. A significantly weaker specific skill involves the interplay of visual memory and discrimination, attentiveness to visual tasks, processing speed, visual-motor organization, and cognitive adaptability. Moreover, another significant weakness involves her auditory short-term memory. The latter specific skills score at a Borderline level.

▮▮▮▮ struggles with anxiety and depression, and has a fear of academic failure. She has limited insight into her difficulties, feels helpless, and likely has limited problem-solving abilities. She does feel her family is supportive of her. As compared to her peers, ▮▮▮▮ rates herself as not having any noteworthy difficulties in a number of areas including sensation seeking, atypicality, locus of control, attention problems, hyperactivity, relations with parents, self-reliance, test anxiety, anger control, and mania. However, ▮▮▮▮ rates herself within the At-Risk range in attitude to school, social stress, anxiety, depression, sense of inadequacy, somatization, self-esteem, and ego strength. Furthermore, ▮▮▮▮ rates herself in the clinically Significant range in attitude to teachers, interpersonal relations.

As compared to her peers, ▮▮▮▮ is rated by her parent as having typical adolescent behaviors in a number of areas, including: hyperactivity, aggression, conduct problems, somatization, atypicality, attention problems, and social skills, activities of daily living, anger control, bullying, emotional self-control, and executive functioning. However, ▮▮▮▮'s parent rates her within the At-Risk range in anxiety, adaptability, leadership, functional communication, social development, and negative emotionality. Furthermore, ▮▮▮▮'s parent rates her in the Clinically Significant range

in depression, withdrawal, and resiliency.

**SOCIAL HISTORY SUMMARY:** Betina Goldberg-Rappoport, LCSW,MSW (1/18/17)

██████, a 10th grader, is the youngest and only daughter of four born to an intact family. ████ senses that she began feeling loneliness in 6th grade and by September of 10th grade was depressed, anxious and suicidal. Her parents put her into a therapeutic program immediately and this appeared to help ████ a great deal. She was in a full time day program at Immediate Care Children's Psychiatric Center until right before winter break. She had no intervention for a few weeks during the holiday and family visits and she decompensated some. Currently she is on home-bound instruction after returning to school proved too stressful and has tutors coming to the home along with afterschool programs twice a week at ICCPC.

**ELIGIBILITY:   4/6/17        CLASSIFICATION: ED**

| |
|---|
| For preschool students, review the preschool day to determine what accommodations and modifications may be required to allow the child to participate in the general education classroom and activities [N.J.A.C. 6A:14-3.7(c)11]. |
| N/A |
| Include other educational needs that result from the student's disability [N.J.A.C. 6A:14-3.7(e)3II]. |
| Due to ████'s disability and difficulties this school year, she has taken a reduced course load during her sophomore year. ████ will still need to complete Driver's Theory and an alternative assignment for 10th grade Physical Education prior to graduation. |
| In addition, consider each special factor identified in N.J.A.C. 6A: 14-3.7(c). (The Need for consultation; Behavioral needs; Language needs; Communication needs; Auditory needs; Need for assistive technology devices and services; and visual needs.). If in considering the special factors, the IEP team determines that the student needs a particular device or service (including an intervention, accommodation or other program modification) to receive a free, appropriate public education, the IEP must include a statement to that effect in the appropriate section. If a factor is not applicable, note as such. |
| In developing this program, consideration has been given to the need for consultation, language, communication, auditory, assistive technology devices/services, and visual needs. They are not applicable at this time. |

5/16/2017                                 Individualized Education Program (NJIEP) for ▉▉▉▉

Name: ▉▉▉▉                                                                        **Birth Date:** ▉▉▉

## Statement of Transition Planning

*Beginning with the IEP in place for the school year when the student will turn age 14, or younger, if appropriate, develop the long-range educational plan for the student's future. Review annually.*

### Statement of the student's strengths, interests and preferences

▉▉ is an intelligent, articulate young lady. She is interested in attending college after high school.

### Appropriate Measurable Postsecondary Goals

**Post-Secondary Education:**

*Including, but not limited to, college, vocational training and continuing and adult education.*

▉▉ is interested in attending college after High School.

**Employment/Career:**

Undecided

**Community Participation:**

*Including, but not limited to, recreation and leisure activities, and participation in community organizations.*

**Independent Living:**

Anticipated

### Courses of Study:

*Considering the student's interests, preferences, and desired post secondary goals, list the specific courses of study for the period of time covered by this IEP. Include both general education and special education courses. When appropriate, identify the courses of study projected for future years.*

**Grade 9    Completed Courses of Study (List Course Names):**

English 1 (AV)
US History 1 (AV)
French 1 (AV)
Algebra 1 (AV)
Biology (AV)
Band (AC)
Phys Ed 9
Health 9

**Grade 10    Current Courses of Study (List Course Names):**

▉▉ is currently working on the following courses with home instructors:

English 2 (AV)
Chemistry (AV)
US History 2 (AV)
Geometry (AV)
French 2 (AV)

At this time, it is being proposed that ▉▉ begin to gradually transition to a less restrictive placement within the Mendham Behavioral Support Program for a half day, afternoons only. ▉▉ will continue to work towards completion of the courses she is currently working on, however, attempts will be made to conduct the tutoring sessions within the school environment. Also, it is being recommended that ▉▉ should transition to taking English with her peers in a small class setting within the behavioral support program. French and Chemistry will continue to be delivered through home instruction.

**Grade 11    Completed Courses of Study (List Course Names):**

English 3 (AV) (BSP)
World History (AV) (BSP)
French 3 (AV)
Algebra 2 (AV)
Environmental Science (AC) (BSP)
Phys Ed 11
Health 11
Band (AC)
Out of Class Support (BSP)

Alternates:
Culinary Arts (AC)
World Cuisine (AC)

▉▉ still needs to complete, Driver's Theory, Physical Education 10, 5 Credits of Career Education and 2.5 Credits of Economic Literacy prior to graduation.

**Grade _____    Courses of Study (List Course Names):**

## Related Strategies and/or Activities:

*In addition to the courses listed above, list related strategies and/or activities that are consistent with the student's strengths, interests, and preferences, and are intended to assist the student in developing or attaining postsecondary goals related to training, education, employment and, if appropriate, independent living.*

5/16/2017                                Individualized Education Program (NJIEP) for ███████████

Name: ██████████                                                                    Birth Date: ████████

## Statement of Consultation

✓. Information/advice is needed from the Division of Vocational Rehabilitation Services or other agency or agencies. List the name of any agency from which consultation is needed:

It is anticipated that ██████ may benefit from DVRS upon her graduation from High School. This service will be considered closer to that time.

## Name of the school staff person(s) who will be the liaison to post-secondary resources:

Kendra Dickerson

## Statement of Needed Interagency Linkages and School District Responsibilities

*As appropriate to the anticipated needs of the student, list all agencies to which the student will be referred by the school district liaison to postsecondary resources in the spaces below. List the responsibility of the school district and/or student/parent(s) with respect to contacting each agency listed and providing needed information or documentation to each such agency.*

**Agency:**

DVRS

**School district responsibilities:**

Provide information for post-secondary planning.

**Student/parent responsibilities:**

If appropriate, register with DVR.

5/16/2017      Individualized Education Program (NJIEP) for

Name:            Birth Date:

# Statement of Transition Services Needed to Attain Measurable Postsecondary Goals:
## Coordinated Activities/Strategies

*Beginning with the IEP in place for the school year when the student will turn age 16 or younger, if appropriate, complete the following multi-year plan for promoting movement from school to the student's desired post-school goals. The student's needs, strengths, interests and preferences in each area (instruction, community experiences, etc.) must be considered, and responsibilities should be shared among participants (student, parent, school staff, outside agencies, employers, etc.).*

| Activities/Strategies Related to Measurable Post-Secondary Goals | Expected Date of Implementation | Person or Agency Arranging and/or Providing Services |
|---|---|---|
| **Instruction—Post-Secondary Education/Training** | | |
| �myk will continue to take courses at a college prep level in order to work towards completion of her graduation requirements and to develop college readiness. Many of these courses can be delivered within the Behavioral Support Program at Mendham High School in order to provide ▬▬ with a smaller classroom environment and more individualized instruction. | 04/24/2017 | Student Parent/Guardian CST Guidance |
| **Related Services** | | |
| School Based Counseling, 1x per week for 30 minutes. Additional school counseling may be provided at ▬▬'s request. | 04/24/2017 | Student CST |
| **Community Experiences** | | |
| ▬▬ is encouraged to participate in social and recreational events both at school and within her local community. She may wish to begin to visit college campuses and meet with student support services in preparation for after she has graduated from high school. | 04/24/2017 | Parent/Guardian Student WMRHSD |
| **Adult Living Objectives** | | |
| It is anticipated that ▬▬ will take the course Driver's Theory during her junior year in order to work towards obtaining her driver's license. | 04/24/2017 | Student Guidance |
| **Employment** | | |
| Service was considered, but is not needed | | |
| **Daily Living Skills** | | |
| Service was considered, but is not needed | | |
| **Functional Vocational Evaluation** | | |
| Service was considered, but is not needed | | |

5/16/2017                    Individualized Education Program (NJIEP) for ████████

Name: ████████                                                        Birth Date: ████████

## Transfer of Rights at Age of Majority

**OPTION I:**

At least three years before the student reaches age 18, a statement that the student and the parent(s) have been informed of the rights that will transfer to the student on reaching the age of majority, unless the parents obtain guardianship [N.J.A.C. 6A:14-3.7(e)14]. The district may use the following description to document that the student and parents have been informed of the rights that will transfer. The IEP team *may* include this statement at age 14 when transition planning begins.

On 01/03/2019, ████████ will turn 18 and become an adult student. The following rights will transfer to ████:

- The school district must receive written permission from ████ before it conducts any assessments as part of an evaluation or reevaluation and before implementing an IEP for the first time.

- The school must send a written notice to ████ whenever it wishes to change or refuses to change the evaluation, eligibility, individualized education program (IEP), placement, or the provision of a free, appropriate public education (FAPE).

- You, the parent(s), may not have access to ████'s educational records without her consent, unless she continues to be financially dependent on you.

- The district will continue to provide you, the parent(s), with notice of meetings and of any proposed changes to your adult child's program.

- Any time ████ disagrees with her special education program, she is the only one who can request mediation or a due process hearing to resolve any disputes arising in those areas.

If ████ wishes, she may write a letter to the school giving you, the parents, the right to continue to act on her behalf in these matters.

**OPTION II:**

At least three years before the student reaches age 18, a statement that the student and the parent(s) have been informed of the rights that will transfer to the student on reaching the age of majority unless the parent(s) obtain guardianship [N.J.A.C. 6A:14-3.7(e)14]. The district may inform the student and the parent(s) by letter of the rights that will transfer. If a letter is used, complete the following:

✓ ████████ was informed in writing on 04/06/2017 of the rights that will transfer to her at age eighteen.

✓ ████████ was informed in writing on 04/06/2017 of the rights that will transfer at age eighteen.

5/16/2017                          Individualized Education Program (NJIEP) for ▪▪▪▪▪▪▪

Name: ▪▪▪▪▪▪▪                                                          Birth Date: ▪▪▪▪▪▪▪

## Behavioral Interventions

*N.J.A.C. 6A:14-3.7(c)4 requires consideration of behavioral needs. If behavior impedes the student's learning or the learning of others, the IEP team must consider, when appropriate, strategies, including positive behavioral interventions and supports to address that behavior. When needed, a behavior intervention plan must be included in the IEP. The following are suggested topics:*

**Target behavior:**

School Attendance

**Documentation of prior interventions and student response:**

A 504 Plan had been previously developed in order to provide ▪▪▪▪ with accommodations. Despite this intervention, ▪▪▪▪ continued to have difficulties attending school.

**Description of the positive supports/interventions, including the conditions under which the supports/interventions will be implemented:**

It is being recommended that ▪▪▪▪ have classes within the Behavioral Support Program. A reward system is built into this program in which students can earn field trips for consistent attendance and completion of academic work.

**Procedures for data collection to evaluate the effectiveness of the interventions:**

Teacher and case manager will collect all data.

**Conditions under which the supports/interventions are changed:**

These supports will be reviewed and adjusted with the CST team once ▪▪▪▪ is demonstrating more consistent school attendance.

**Conditions under which the supports/interventions will be terminated:**

The interventions may be terminated if mutually agreed upon by the student, parents, teacher and case manager.

**Parental involvement:**

Parent/Teacher/Student Meeting as needed.
CST Meetings

5/16/2017                                    Individualized Education Program (NJIEP) for ███████

Name: ███████                                                                    Birth Date: ████

## Goals and Objectives

| ACADEMIC AND/OR FUNCTIONAL AREA: | | |
|---|---|---|
| ANNUAL MEASURABLE ACADEMIC AND/OR FUNCTIONAL GOAL: | | |
| **BENCHMARKS OR SHORT TERM OBJECTIVES:** | CRITERIA | EVALUATION PROCEDURES |
| Objective: | | |

| ACADEMIC AND/OR FUNCTIONAL AREA: | | |
|---|---|---|
| Social / Emotional | | |
| STANDARD: | | |
| Standard 9.2 (Consumer, Family and Life Skills) All students will demonstrate critical life skills in order to be functional members of society. | | |
| ANNUAL MEASURABLE ACADEMIC AND/OR FUNCTIONAL GOAL: | | |
| ███ will increase her ability to manage anxiety pertaining to school related functioning. | | |
| **BENCHMARKS OR SHORT TERM OBJECTIVES:** | CRITERIA | EVALUATION PROCEDURES |
| Objective: <br> ███ will be able to identify and articulate 2-3 triggers of anxiety. | 2-3 triggers of anxiety will be identified 80% of time when feeling anxious. | Clinical record from counseling sessions |
| Objective: <br> ███ will learn to use an anxiety scale to gauge and measure the strength of her emotional reactions to triggers. | Anxiety scale will be used 100% of time when feeling anxious. | Clinical record from counseling sessions |
| Objective: <br> ███ will identify up to 3 strategies (ie. Mindful Tool) that can be used to reduce anxiety. | Strategies will be identified and used 100% of instances when feeling anxious. | Clinical record from counseling sessions |
| Objective: <br> ███ will increase attend at school in accordance with her schedule. | Attend school with 80% frequency | Attendance record |
| Objective: <br> ███ will seek support when feeling anxious. | Support will be sought 100% of time when feeling overwhelmed by anxiety. | Student Interview |

5/16/2017  Individualized Education Program (NJIEP) for

Name: ████████  Birth Date: ████

## Modifications/Supports/Progress Reports

### MODIFICATIONS AND SUPPLEMENTARY AIDS AND SERVICES IN THE GENERAL EDUCATION CLASSROOM

State the modifications for the student to be involved and progress in the general education curriculum and be educated with nondisabled students. State the supplementary aids and services that will be provided to the student or on behalf of the student [N.J.A.C. 6A:14-3.7(e)4]. Identify any assistive technology devices and services to be provided. Attach additional pages as necessary.

| State the modifications to enable the student to participate in the general education curriculum. | State the supplementary aids and services. |
|---|---|
| Extended time on tests and quizzes.<br>Permit ████ to meet with the school counselor upon her request.<br>Allow frequent breaks<br>Provide structure and interim due dates for long term assignments.<br>Provide frequent feedback regarding ████'s academic work. | |

### MODIFICATIONS AND SUPPLEMENTARY AIDS AND SERVICES IN THE SPECIAL EDUCATION CLASSROOM

If the student will not be participating in the general education classroom, state the modifications and supplementary aids and services to enable the student to be involved and progress in the general education curriculum in the special education classroom. Identify any assistive technology devices and services to be provided. Attach additional pages as necessary.

| State the modifications to enable the student to participate in the general education curriculum. | State the supplementary aids and services. |
|---|---|
| Extended time on tests and quizzes.<br>Permit ████ to meet with the school counselor upon her request.<br>Allow frequent breaks<br>Provide structure and interim due dates for long term assignments.<br>Provide frequent feedback regarding ████'s academic work. | |

### Supports for School Personnel

State the supports for the school personnel that will be provided for the student [N.J.A.C. 6A:14-3.7(e)4].

Case Manager will monitor progress and communicate with parents as needed.
Parent/Teacher conferences as needed.
Staff receives in service training.
Staff receives ongoing opportunities for professional development.

### Progress Reporting

State how the parents will be regularly informed of their student's progress toward the annual goals [N.J.A.C. 6A:14-3.7(e)16].

| Method: | Schedule: |
|---|---|
| Annual Review<br>Individual student progress as reported by teacher, IEP meetings, tests and exams and informal conferences. | Annually<br>Parents will have access to ████'s grades on an ongoing basis via PowerSchool. |

5/16/2017                         Individualized Education Program (NJIEP) for ▆▆▆▆▆▆

Name: ▆▆▆▆▆▆                                                    Birth Date: ▆▆▆▆

## Special Education Determinations

| Document length of school day, if different from length of regular school day [N.J.A.C. 6A:14-4.1(c)]. | Statement of student's transition from elementary to secondary program [N.J.A.C. 6A:14-3.7(e)10]. |
|---|---|
| At this time, Jenna is receiving home instruction. It is recommended that ▆▆▆▆continue with home instruction in the morning and begin attending West Morris Mendham High School Behavioral Support Program in the afternoon. ▆▆▆▆ will have a shortened school day from 11:30am-2:35pm. | Transfer to high school program with same age peers. |

Determine whether the student needs an extended school year (ESY) program. An extended school year program is provided in accordance with the student's IEP when an interruption in educational programming causes the student's performance to revert to a lower level of functioning and recoupment cannot be expected in a reasonable length of time. [N.J.A.C. 6A:14-4.3(c)]. List relevant factors considered in determining whether the student needs an ESY program.

▆▆▆▆ is currently receiving home instruction and is scheduled to attend MHS from 11:30 to 2:35. It is recommended that ▆▆▆▆ participate in the ESY program at MHS on Tuesdays and Thursdays from 11:30-2:30 p.m. In order to receive instruction in core mathematics and English skills. This will allow ▆▆▆▆ to continue to receive academic instruction and counseling during the summer months.

If required, describe the ESY program:

▆▆▆▆ requires an extended school year program.

The ESY will consist of instruction in core language arts and math skills two days per week for a total of 3 hours per day. Counseling will be provided weekly during the duration of the 5 week program.

## District and State Assessment

### Participation in District and State Assessment Program

| Assessment | Modifications / Accommodations [N.J.A.C. 6A:14-3.7(e)7] | If the student will not be participating in a subject area or areas of a districtwide or Statewide assessment, explain why that assessment is not appropriate [N.J.A.C. 6A:14-3.7(e)7]. | State how the student will be assessed if the student will not participate in Statewide or districtwide assessment. |
|---|---|---|---|
| **District Assessment:** | | | |
| District Assessments | Small group<br>Preferential Seating<br>Extended time<br>Frequent Breaks<br>Directions Clarified and Repeated | | |
| **State Assessments:** | | | |
| **HSPARCC**<br>☑ Language Arts<br>☐ Mathematics | **Accessibility Features**<br>• Frequent Breaks<br>• Small Testing Group<br>• General Administration Directions Clarified<br>• General Administration Directions Read Aloud and Repeated as Needed<br><br>**Timing and Scheduling**<br>• Extended Time (UAF- universal accessibility feature) | | **DLM**<br>☐ Language Arts<br>☐ Mathematics |
| **HSPARCC**<br>☐ Language Arts<br>☑ Mathematics | **Accessibility Features**<br>• Frequent Breaks<br>• Small Testing Group<br>• General Administration Directions Clarified<br>• General Administration Directions Read Aloud and Repeated as Needed<br><br>**Timing and Scheduling**<br>• Extended Time (UAF- universal accessibility feature) | | **DLM**<br>☐ Language Arts<br>☐ Mathematics |

5/18/2017                        Individualized Education Program (NJIEP) for ▬▬▬▬

Name: ▬▬▬▬                                                                Birth Date: ▬▬▬

## Graduation Requirements

*Beginning at age 14, identify the State and local graduation requirements that the student will be expected to meet. The statement must be reviewed annually. If the student is exempted from meeting any of the graduation requirements that all students are expected to meet or if any of the requirements are modified, provide a rationale below and list any alternate proficiencies the student is expected to achieve.*

| State the Graduation Requirement: | If the student is NOT exempt from the requirement, place a check in the box. | If the student is exempt from meeting the graduation requirement, provide a rationale for the exemption [N.J.A.C. 6A:14-3.7(e)9i]. |
|---|---|---|
| **Attendance:** | | |
| Due to her disability, ▬▬▬ may exceed the number of absences specified and will require an extension of the attendance policy. Medical documentation to be reviewed by the attendance committee. | ☐ | Due to chronic anxiety, depression and panic attacks, there have been times throughout the year in which ▬▬ has had difficulties attending school and/or has needed to miss school due to treatment. These absences, will be considered by the attendance committee and excused with proper medical documentation. Continued supplemental home instruction may be warranted in order to account for missed academic material. |
| **Credit Hours:** | | |
| 120 | ✔ | |
| **PARCC or Other NJDOE Approved Alternate Assessment:** | | |
| Student will be held to sit for the PARCC assessments in Language Arts and Math. | ✔ | |
| **Other (Local Graduation Requirements):** | | |
| | ☐ | |
| **Alternate Requirements(s):** | | |

*Provide a description of any alternate proficiencies to be achieved by the student to qualify for a State endorsed diploma [N.J.A.C. 6A:14-3.7(e)9i].*

5/18/2018  Case 2:19-cv-14465-SDW-LDW  Document 13-4  Filed 11... of 118 PageID: 373
Individualized Education Program (NJIEP) for

Name: ████████                                                                    Birth Date: ████████

## Program Description

| Name: | ████████ | Grade: | | Tenth grade |
|---|---|---|---|---|
| Primary Location: | West Morris Mendham High School | Primary Placement Time: | | Full time students |
| Secondary Location: | | Secondary Placement Time: | | |
| IEP Start Date: | 04/06/2017 | Program Type: | | Grade 10 |
| Next Year's Secondary Location: | West Morris Mendham High School | Next Year's Grade: | | Eleventh grade |

## Statement of Special Education and Related Services

*State the special education services by instructional area. For in-class programs also state the amount of time the resource or supplementary instruction teacher is present in the general education class [N.J.A.C. 6A:14-3.7(e)4 and N.J.A.C. 6A:14-3.7(3)8]. For pull-out replacement resource and special class programs, state the amount of instruction in each subject area, which must be equal to the amount of instructional time in general education for each subject area [N.J.A.C. 6A:14-4.1(i)]. All times are approximate within the context of the daily school schedule and will be consistent with the school year calendar unless otherwise noted.*

| Subject | Service Start Date | Service End Date | Frequency | Duration (minutes/session) | Type of Service |
|---|---|---|---|---|---|
| English 2 (AV) BSP | 04/06/2017 | 06/21/2017 | 3 times per cycle | 58 | Pull/out, Replacement |
| In/Out (BSP) Cls.Supp | 04/06/2017 | 06/21/2017 | 3 times per cycle | 58 | Pull/out, Support |
| Home Instruction (Geometry, AV) delivered at home or at MHS, BSP Classroom | 04/06/2017 | 06/21/2017 | 2 times per week | 60 | Pull/out, Replacement |
| Home Instruction (US History 2, AV) delivered at home or at MHS, BSP Classroom | 04/06/2017 | 06/21/2017 | 2 times per week | 60 | Pull/out, Replacement |
| Home Instruction (French 2, AV) | 04/06/2017 | 06/21/2017 | 2 times per week | 60 | Home Instruction |
| Home Instruction (Chemistry, AV) | 04/06/2017 | 06/21/2017 | 2 times per week | 60 | Home Instruction |
| English 3 (AV) (BSP) | 08/28/2017 | 04/05/2018 | 3 times per cycle | 58 | Pull/out, Replacement |
| World History (AV) (BSP) | 08/28/2017 | 04/05/2018 | 3 times per cycle | 58 | Pull/out, Replacement |
| Environmental Science (AC) (BSP) | 08/28/2017 | 04/05/2018 | 3 times per cycle | 58 | Pull/out, Replacement |
| In/Out (BSP) Cls.Supp | 08/28/2017 | 04/05/2018 | 3 times per cycle | 58 | Pull/out, Support |

### Additional Special Education Program Information:

It is proposed that ████ will continue to receive home instruction, with a gradual return to a less restrictive setting at Mendham High School, within the Behavioral Support Program. ████ will be expected to attend afternoons only for the remainder of the 2016-2017 school year. Transportation will be provided to bring ████ to Mendham High School. It is anticipated that ████ will attend a full day program for the 2017-2018 school year.

## Related Services

*State the related services [N.J.A.C 6A:14-3.7(e)4]. Include, as appropriate, a statement of integrated therapy services to be provided. Specify the amount of time the therapist will be in the classroom. If speech-language services are included, specify whether the services will be provided individually or in a group. Specify the group size. [N.J.A.C 6A:14-3.7(e)5, N.J.A.C. 6A:14-3.7(e)8 and 6A:14-4.4(a)1i].*

| Service | Start Date | End Date | Frequency | Duration (minutes/session) | Provider | Location |
|---|---|---|---|---|---|---|
| Individual Counseling services | 04/06/2017 | 08/03/2017 | 1 time per week | 30 | CST | Counseling Room |
| Transportation service | 04/06/2017 | 06/21/2017 | | | | PM only, to Mendham High School |
| Individual Counseling services | 08/28/2017 | 04/05/2018 | 1 time per week | 30 | CST | Counseling Room |

### Additional Related/Intensive Service Information:

Name: _____     Birth Date: _____

## Notice Requirements for the IEP and Placement

*This form describes the information required in each of the components of written notice for an IEP meeting. The written notice includes the IEP as a description of the proposed action and a description of the procedures and factors used in determining the proposed action.*

### Describe the proposed action [N.J.A.C. 6A:14-2.3(g)1] and explain why the district has taken such action [N.J.A.C. 6A:14-2.3(g)2].

The development of a new IEP is being proposed as mandated by state code.

### The attached IEP describes the proposed program and placement and was developed:

- [✓] **as a result of an initial evaluation and determination of eligibility.**
- [ ] as a result of an annual review.
- [ ] as a result of an amendment.
- [ ] as a result of a reevaluation.
- [ ] in response to a parental request.
- [ ] to propose a change in placement.
- [ ] to review the behavioral intervention plan.
- [ ] Other:

### Describe any options considered and the reasons those options were rejected [N.J.A.C. 6A:14-2.3(g)3].

Mr. and Mrs. _____ have requested that _____ be allowed to attend Fusion Academy, a private alternative high school for students that is not a New Jersey approved special education program. This option was rejected by the district as it offers students a 1:1 learning experience, which is highly restrictive. Additionally, this program does not offer therapeutic support on campus.

### Describe the procedures, tests, records or reports and factors used in determining the proposed action [N.J.A.C. 6A:14-2.3(g)4].

The sources of information used to develop the proposed IEP are listed in the present levels of performance.

### If applicable, describe any other factors that are relevant to the proposed action [N.J.A.C. 6A:14-2.3(g)5].

Name: ▓▓▓▓▓                                      Birth Date: ▓▓▓▓

## Rationale for Removal from General Education

*Decisions regarding placement are based on the individual needs of students and must begin with consideration of the general education setting. The purpose of this page is to document the discussions that have occurred with respect to accommodations, modifications, and supplementary aids and services in each academic or functional area that are necessary to educate the student in the general education setting.*

*If the student will be included in the general education setting for more than 80% of the time, no rationale is required. Items 1 through 3 of this section of the IEP need not be completed or included in the student's IEP.*

*If a student will not be included in the general education setting for more than 80% of the time, items 1 through 3 below MUST be completed for each CONTENT/SUBJECT AREA.*

**1. Identify the supplementary aids and services that were considered to implement the student's annual goals. [N.J.A.C. 6A:14-4.2(a)8I].**
    **Explain why they are not appropriate to meet the student's needs in the general education class:**

In order to determine an appropriate academic program for ▓▓▓, it is important to take into account her academic strengths, emotional difficulties and future goals. Given these factors, a continuum of services and supports have been considered in order to address her educational needs within the least restrictive environment. ▓▓▓ has tried returning to general education classes with supports such as extended time, frequent breaks, and opportunities to meet with her guidance counselor and/or the CST team. Despite these supports, consistent school attendance still proved difficult for ▓▓▓. The class size and school environment at West Morris Central High School has been challenging for her. Having a fresh start at Mendham High school with different peers is suggested at this time.

**2. Document the comparison of the benefits provided in the regular class and the benefits provided in the special education class [N.J.A.C. 6A:14-4.2(a)8II].**

Regular education classes would provide ▓▓▓ with maximum exposure to the general education curriculum and materials. This setting also allows for learning from peer models and increased opportunities for social interaction.

The benefit from working in the behavioral support program classes is that this setting provides a calmer environment, where student anxiety can be more quickly identified and addressed. In this setting, there is a low student to teacher ratio and the instruction and academic pace can be modified to meet ▓▓▓'s needs. A reward system, focusing on positive behavioral support is also used to help foster social connections and encourage academic motivation.

**3. Document the potentially beneficial or harmful effects which a placement (in the general education class) may have on the student with disabilities or the other students in the class [N.J.A.C. 6A:14-4.2(a)8III].**

If placed in a less restrictive, general education setting, ▓▓▓ may continue to experience a high level of anxiety leading to continued school absences. Without individualized strategies to provide her with academic and emotional support, ▓▓▓ may fall behind academically and may have difficulties maintaining social connections. These harmful effects outweigh the potential gains from being strictly within the general education environment. The potential benefits of the Behavioral Support Program and continued home instruction are described above.

## Modifications in Extracurricular and Nonacademic Activities

*State the modifications that will be provided to enable the student to participate in extracurricular and nonacademic activities [N.J.A.C. 6A:14-3.7(e)4I]. Explain the extent, if any, to which the student will not participate with nondisabled peers in extracurricular activities and nonacademic activities [N.J.A.C. 6A:14-3.7(e)6]. In addition, for students in an out-of-district placement, delineate how the student will participate with nondisabled peers in extracurricular and nonacademic activities including, if necessary, returning the student to the district in order to facilitate such participation [N.J.A.C. 6A:14-3.7(e)17].*

All extracurricular activities are available to ▓▓▓.

Name: �█████████                                                    Birth Date: ████████

## Document the Placement Decision According to the Following Categories (Check ONLY ONE box):

* **NOTE:** In accordance with federal data collection requirements, a student in an out-of-district segregated placement for 50% or more of the school day must be reported as being in that setting for the entire day, regardless of whether the student is in a general education setting for the remainder of the school day.

### Students with Disabilities Ages 6-21:

| | |
|---|---|
| ☐ | In the presence of General Education Students for 80% or more of the entire school day |
| ☐ | In the presence of General Education Students between 40% and 80% of the entire school day |
| ☑ | In the presence of General Education Students for less than 40% of the entire school day |
| ☐ | Public Separate School (in buildings with NO General Education Students)* |
| ☐ | Private School for the Disabled (Only day educational costs paid by the district)* |
| ☐ | Private Residential School for the Disabled (BOTH day and residential costs paid by the district) |
| ☐ | Home Instruction |
| ☐ | Public Residential Facility (For reporting by State Agencies ONLY – Department of Human Services, Department of Children and Families; Department of Corrections; Juvenile Justice Commission) |

### Transition Planning for Students in Separate Settings

*For students in a separate setting (for all or part of a school day), set forth activities necessary to move the student to a less restrictive placement. A separate setting is defined as a building without general education students.*

████ is currently receiving home instruction for all of her academic classes. In this restrictive environment ████ has limited exposure to same-age peers. At this time, it is being proposed that ████ meet with some of her tutors within the school environment of the behavioral support program at Mendham High School. In order to do so, school based counseling is being recommended. ████ will have the continuity of having the same tutors that she had been previously working with in order to minimize anxiety. In addition, it is being recommended that ████ take English and Out of Class Support within the BSP program. By having the tutoring take place within the school environment and English and Out of Class Support, ████ will have greater opportunities to meet with same age peers.

5/18/2017                                    Individualized Education Program (NJIEP) for ████████████

Name: ████████                                                                    Birth Date: ████████

## Procedural Safeguards Statement

As the parent of a student who is, or may be determined, eligible for special education services or as an adult student who is, or may be determined, eligible for special education, you have rights regarding identification, evaluation, classification, development of an IEP, placement and the provision of a free, appropriate public education under the New Jersey Administrative Code for Special Education, N.J.A.C. 6A:14. A description of these rights, which are called procedural safeguards, is contained in the document, *Parental Rights in Special Education (PRISE)*. This document is published by the New Jersey Department of Education.

A copy of PRISE is provided to you upon referral for an initial evaluation, when a disciplinary action that constitutes a change in placement is imposed by your school district, and the first time a due process hearing or complaint investigation is requested. In addition, a copy will be provided to you at your request.

| To obtain a copy of PRISE, please contact: | Phone # |
|---|---|
| **School District Office or Personnel:** <br><br> David Leigh, Director Special Services | 908 879-6404 ext. 1477 |

| For help in understanding your rights, you may contact any of the following: | |
|---|---|
| **School District Representative:** <br><br> David Leigh | 908 879-6404 ext. 1477 |
| Statewide Parent Advocacy Network (SPAN) | (800) 654-7726 |
| NJ Protection and Advocacy, Inc. | (800) 922-7233 |
| County Supervisor of Child Study: <br><br> Sandra Gogerty | 973-285-8336 |

Case 2:19-cv-14465-SDW-LDW   Document 13-4   Filed 11/26/19   Page 118 of 118 PageID: 378

Name: █████████                     Birth Date: █████████

## Consent for Initial IEP Implementation:

Your signature is required to give consent before the proposed IEP services can start.

[ ]   I, We have received a copy of the proposed IEP and give consent for the IEP services to start.

[ ]   I, We have received a copy of the proposed IEP and do not give consent for IEP services to start.

Signature _____

04/06/2017
Date