## WARSHAW LAW FIRM, LLC

266 King George Road, Suite C2
Warren, New Jersey 07059
Phone: (973) 433-2121
Fax: (973) 439-1047
jwarshaw@warshawlawfirm.com
clientservices@warshawlawfirm.com
www.warshawlawfirm.com

Julie M.W. Warshaw, Esq. *~^
Caryn Fitzgerald, Esq. *~

Of Counsel
David B. Warshaw, Esq. *~^

Licensed in New Jersey *
Licensed in New York ~
Licensed in Massachusetts ^
Licensed in Pennsylvania '

October 18, 2017

Via Priority Mail
Honorable Thomas Betancourt, A.L.J.
Office of Administrative Law
State of New Jersey
33 Washington Street, 7th Floor
Newark, New Jersey 07102

*Motion to Amend Petition*

Re: F.H. and M.H. o/b/o J.H. v. West Morris Regional High School District Board of
Education
OAL Docket No.: EDS 10706-2017
Agency Ref. No.: 2017 26311

Dear Judge Betancourt:

This office represents the Petitioners in the above referenced matter. As per Your
Honor's request during our conference call on October 13, 2017, enclosed please find an
original and two (2) copies of Petitioners' Motion to Amend, supporting Brief, Certification
of Counsel, Certification of Service, proposed Amended Request for Due Process, and
Proposed Amended Petition for Due Process.

Thank you for your time and consideration.

Respectfully Submitted,

Julie Warshaw, Esq.

*Filed 10/23/17*
*Response due 11/2/17*
*Sur-reply 11/7/17*

*GRANTED*
*11/14/17*

JW/

cc:     Jodi Howlett, Esq. (Via Priority Mail)
        F.H. an M.H. (Via Email)

**WARSHAW LAW FIRM, LLC**
Julie Warshaw, Esq. (ID# 027931993)
266 King George Road, Suite C2
Warren, New Jersey 07059
Phone (973) 433-2121
Fax (973) 439-1047
jwarshaw@warshawlawfirm.com
Attorneys for Petitioners

| | |
|---|---|
| **F.H. AND M.H. o/b/o J.H.,** : | OFFICE OF ADMINISTRATIVE LAW |
| **Minor Child,** : | OAL DOCKET NO.: EDS 10706 2017 |
| : | AGENCY REFERENCE NO.: 2017- 26311 |
| Petitioners : | |
| : | |
| v. : | |
| : | CIVIL ACTION |
| **WEST MORRIS REGIONAL** : | |
| **HIGH SCHOOL DISTRICT** : | |
| **BOARD OF EDUCATION** : | |
| : | **CERTIFICATION OF COUNSEL** |
| Respondent : | |
| : | |

I, Julie Warshaw, do hereby certify as follows:

1. I am an attorney at law in the State of New Jersey and owner of the Warshaw Law Firm, LLC, attorneys for Petitioners. As such, I am fully familiar with the facts of this matter.

2. Petitioners filed for due process on May 30, 2017.

3. New facts, evaluations, and violations have occurred since that time. Respondent's counsel would not consent to an amendment of the first due process action. As a result, Petitioners filed a second due process action, which was to be consolidated with the first due process action as they stem from the same initial fact pattern and the parties are the same.

4. As per Judge Betancourt's request, Petitioners have filed this motion to amend and have agreed to voluntarily dismiss their second due process action if said motion is granted.

5. Attached as **Exhibit A** is a copy of Petitioners' amended due process action.

## CERTIFICATION

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

WARSHAW LAW FIRM, LLC
Attorneys for Petitioners

By: _____
Julie Warshaw, Esq.

October 18, 2017

# EXHIBIT A

## PARENTAL AMENDED REQUEST FOR MEDIATION/DUE PROCESS HEARING/EXPEDITED DUE PROCESS HEARING

*Please note: In accordance with IDEA 2004, you must complete all the information requested as fully and accurately as possible. Also, you must identify the specific reasons for the disagreement with the identification, evaluation, eligibility, classification, placement or provision of programs or related services for your child. If the information is incomplete or the reasons for your disagreement are vague or unclear, the district may challenge the sufficiency of your request for a due process hearing. Requests for mediation only are not subject to a sufficiency challenge.*

*TWO copies of the entire petition must be filed with the Office of Special Education (OSE) and one copy of the entire petition must be filed with the district.*

**Date**: October 18, 2017

**To:**   John Worthington, Interim Director
         Office of Special Education
         New Jersey Department of Education
         P. O. Box 500
         Trenton, New Jersey 08625-0500

**From**:
**Address**:

**County**:
**Home Phone**:
**Cell Phone**:

*Please check whether you will be represented by __X__ an attorney or assisted by ____ an advocate.*

**Name of Attorney or advocate**:   Julie Warshaw, Esq.
**Address**:                        **Warshaw Law Firm, LLC**
                                    266 King George Road, Suite C2
                                    Warren, New Jersey 07059
**Phone**:                          (973) 433-2121
**Fax**:                            (973) 439-1047
                                    jwarshaw@warshawlawfirm.com

**Child's Name**:
**Date of Birth**:
**Child's Address** (if different from parent's address): Same

*In the case of a homeless child, please provide contact information.*

**District of Residence (District in which parent resides):** West Morris Public School District

**School the student attends:** Purnell School

**District where the school is located:** Private school in Pottersville, NJ and on the West Morris Board of Education approved list of schools

**Disability category:** The district found her eligible for special services and in May 2017 attempted to classify her as Emotionally Disturbed and the parents disputed the classification and proposed placement in a behavioral program and filed a Due Process action. In September, after the school year began, the district informed the Petitioners that if J.H. returned to school she would be considered a general education student with a 504 Plan from December 2016.

*Please check ONE of the following boxes:*

_____ *Mediation Only- Please complete items 2 through 5 below*
__X__ *Due Process Hearing-Please complete items 1 through 5 below*
_____ *Expedited Due Process Hearing for discipline matters only. Please complete items 1 through 5 below*

1. *Required Steps for a Due Process Hearing or an Expedited Due Process Hearing (discipline matters only)-When a parent request a hearing, the district is given an opportunity to resolve the matter before the hearing is scheduled. The district is required to conduct a resolution session (within 15 days for a due process hearing and 7 days for an expedited due process hearing) and you are required to participate. You and the district may choose to participate in mediation conducted by the OSEP in place of a resolution session, or both parties can agree to waive the resolution session and proceed directly to a hearing.*

   **Upon receipt of this notice, a representative of the school district must contact you to arrange a resolution session. If you would like to have the district consider other options, please check ONE of the following:**

   ___ *I am requesting a mediation conference conducted by the OSE in place of a resolution session.* **If the district agrees to mediation in place of a resolution session, a representative of the district must contact the OSE at (609) 984-1286 to facilitate the scheduling of the mediation conference.**

   ___ *I want to waive the resolution conference and proceed directly to a due process hearing.* **The parties have attempted to settle this matter with no success.**

   **By signing below, I am waiving the resolution session and mediation. An authorized representative of the district must also agree in writing to waive the resolution period.**

**Signature:** _____

**Print Name:** _____

**Dated:** _____

2.  *Please provide a description of the nature of the problem and any facts related to the problem. Attach additional sheets as needed:*

   1.  There is currently a due process action pending before Judge Betancourt under OAL Docket No.: EDS 10706-2017 N, Agency Ref. No. 2017-26311. Petitioners respectfully request that this amended due process action be consolidated with the first due process action and that the motion for summary decision filed September 19, 2017 apply to both due process actions.

   2.  Since the filing of Petitioners' first due process action, reports from two (2) independent evaluations conducted by Dr. Natalie Schuberth and Dr. Ellen Platt have been received and they support Petitioners' original request to have J.H. classified as Other Health Impaired and to be placed out of district.

   3.  Petitioners request that the district draft an IEP that reflects a classification of Other Health Impaired and for the district to place J.H. at the Purnell School as an out of district placement, which is where she is currently attending school. J.H. has been successful at her unilateral placement at the Purnell School. If the district will not place J.H. at the Purnell School for the 2017-2018 and 2018-2019 school years through an IEP, Petitioners seek reimbursement for the unilateral placement of all costs and tuition and fees including attorney's fees as well as any and all costs to date Petitioners have incurred as a result of having to unilaterally place J.H. at the Purnell School.

The district received their 10-day unilateral placement notice at the IEP meeting and mediation as well as through correspondence between counsel and at all times Petitioners have acted in good faith.

4. J.H. is currently in the 11th grade and she is suffering from school related anxiety and school phobia and was recently discovered by Dr. Natalie Schuberth, through an independent evaluation to also have a specific learning disorder and deficit in processing information.

5. She had been enrolled in a therapeutic day program for a few months at the beginning of the 2016-2017 school year. She currently attends therapeutic sessions with a counselor at the Immediate Care Psychiatric Center ("ICPC") in Parsippany on a regular basis after school.

6. J.H. attempted to return to high school in December 2016 but that was not successful due to her school related anxiety and school phobia.

7. The school district provided her with home instruction since that time and she did very well academically.

8. J.H. had been receiving home instruction without any IEP or Section 504 Plan.

9. Petitioners sought an IEP for J.H. and for an out of district placement.

10. ICPC recommended that she attend an out of district placement but not a therapeutic out of district placement as the school district insists.

11. Since J.H. continues to receive therapeutic services on a regular and on-going basis, she is not in need of a therapeutic school setting.

12. In May 2017, the school district finally proposed an IEP but it classified J.H. as "Emotionally Disturbed." J.H. is not emotionally disturbed, as she does not meet the criteria for said classification.

13. The report from ICPC indicates that her diagnosis is "Major depression recurrent, Panic Disorder and School issues." Nowhere was she ever diagnosed as being emotionally disturbed. Petitioners seek an appropriate classification of "Other Health Impaired."

14. J.H. meets the criteria under the Individuals with Disabilities Education Act ("IDEA") as a person with a disability and is entitled to special education, related services, accommodations, and an appropriate placement under the classification of Other Health Impaired, although the school district to date has failed to classify her appropriately or offer her an appropriate educational placement that meets her unique academic, social, emotional, and physical needs.

15. At the initial IEP meeting, which took place on May 16, 2017, the school district proposed the Behavioral Supports Program ("BSP") in the Mendham High School.

16. The attorney for the district in her letter dated September 20, 2017, has suddenly referred to the BSP program as the "Being Successful Program" rather than its correct title of Behavioral Supports Program, as stated in the proposed IEP. Further, in the event that this program has been retitled, September 20, 2017 was the first time Petitioners or their attorney have heard of this. The Being Successful Program was not the program offered at any

time to Petitioners. Therefore, whatever the name of that program is now, since it was never offered to J.H., it cannot be considered.

17. The BSP program that was offered to J.H. in the proposed IEP from May 2017, is a behavioral program with an alleged therapeutic component. This program is a contained classroom with multi-levels of academics being taught at once throughout the classroom. If J.H. had an issue during the school day, they would attempt to find a counselor available if that person was in the school at that time to assist. However, there was one psychologist assigned to more than 1300 students at the Mendham High School. It is our understanding that the teachers in that program are not trained therapists or counselors.

18. The BSP program does not cater to students who are on a college track in that many classes are not offered all of the time and if those students want to be on a college bound track, they have to take classes in the larger general education setting and that is contrary to J.H.'s needs. The BSP program essentially is there to get students to attend school in any manner possible and they do not typically give any homework either. In addition, specials such as gym class are done on the computer rather than in gym classes.

19. In addition, upon an observation of the BSP program by Petitioner and J.H., they determined that the students in that isolated program are not her social peers and she was uncomfortable with the students as they were not academically oriented or involved in challenging academic subjects and they were not socially appropriate peers for J.H., as there were other issues that

these students were dealing with such as but not limited to issues with the criminal justice system, truancy, substance abuse, etc.

20. J.H. succeeded academically on home instruction as she works well in a one to one or small classroom setting. J.H. is academically oriented and does plan to attend college after graduating high school. At no time was J.H.'s school related anxiety cured but rather, J.H.'s therapists determined that she was ready to go from home instruction to a lesser restrictive out of district educational setting but not to go back to the high school setting, as that would exacerbate her anxiety.

21. At the May 16, 2017 IEP meeting, counsel for the Petitioners and David Leigh, the Director of Special Services at that time, he has since retired, had a conversation regarding out of district placements, including the Purnell School. He explained that the district's reasoning for not considering a Flex school or a school with a one to one academic setting with some socialization with other students for group activities or specials is that J.H. needs to be in a public school setting, even though she would be in a self-contained isolated classroom, because she needs to learn for college to function in a larger environment. That is nonsensical and the atmosphere at a college of her choosing would meet her needs academically and socially.

22. Dr. Leigh also indicated that the Purnell School was not a therapeutic school so the district would not consider it. However, there is more of a therapeutic component at the Purnell School than there is at the BSP program offered by the district. The counselors at Purnell are available at any time for the students

7

and students can also make regular appointments as well. J.H.'s advisor with a degree in special education, has a very small caseload comprised of three (3) students. There is also a psychologist at the school three (3) times per week, who will create an individualize learning plan for J.H. The Purnell School incorporates many therapeutic components in their program.

23. An out of district placement at a Flex School or a one to one learning environment with a social component or a private school such as the Purnell School, with small classes and an appropriate peer group, where J.H. could develop friendships, would meet J.H.'s needs academically and socially and she would continue with her therapeutic component at ICPC where she has a trusted therapist and appropriate services.

24. The school district has indicated that such an out of district placement would be more restrictive than to be isolated in a classroom at the BSP program, being exposed to inappropriate peers, and then being placed in the larger general education classes for academics, exactly what she cannot do, because it happens to be located in the public high school.

25. Petitioners' counsel reached out by email on a few occasions and left messages for the attorney for the district since the May 16, 2017 IEP meeting. Petitioners' counsel attempted to toll the 15-day period of time in order for the parties to attempt to come to some amicable resolution. Having not received any response, Petitioners had no choice but to file for Due Process on May 30, 2017 to preserve their rights. Without consent to file an Amended Due Process to include all that has transpired since Petitioners' initial due process

action. Petitioners had no choice but to file a second due process action. As per Judge Betancourt's request on October 13, 2017, Petitioners are filing this motion to amend their first due process action to include events, new information, and new violations that have occurred since the filing of the first due process action on May 30, 2017.

26. Petitioners seek an appropriate classification of "Other Health Impaired," and an out of district placement at the Purnell School, which is meeting J.H.'s unique academic, social, emotional, and physical needs and for the district to provide transportation to and from said private school placement. Said private school placement should not be a strictly therapeutic setting as proposed by the school district as that would not meet her needs. In the event that the district will not classify J.H. as "Other Health Impaired" and place her at the Purnell School, Petitioners seek reimbursement for tuition, fees, costs, uniforms, transportation, and attorney's fees and expert fees if needed, for having to unilaterally place J.H. at the Purnell School due to the district's failure to provide her with a free and appropriate public education in the least restrictive environment.

27. The school district rejected placement at an out of district school such as the Purnell School because it was not a therapeutic placement and because it was not on the approved list. However, the Purnell School offers a full-time advisor with a caseload of only three (3) students, a full-time counselor with a caseload of only sixty (60) students, and a psychologist three (3) days per week. West Morris Board of Education has placed students at the Purnell

School in the past and upon information and belief, it is on the Board of Education's approved list.

28. Petitioners asserted that the "stay put" placement was home instruction and said home instruction should have continued to be provided by the school district until such time as the parties could agree to an appropriate classification and out of district placement that met J.H.'s individual needs. The school district refused to recognize home instruction as the stay put placement and ultimately, with the advice of J.H.'s medical providers, it was determined that she needed a less restrictive educational placement.

29. Since the Petitioners' first due process action was filed on May 30, 2017, the school district approved two independent evaluations. Dr. Natalie Schuberth from Alexander Road Associates conducted the Psychoeducational testing and issued a report dated August 21, 2017. On July 31, 2017, August 2, 2017 and August 3, 2017, J.H. was evaluated by Dr. Schuberth, Psy.D, BCBA-D.

30. Dr. Schuberth indicated in her independent evaluation report that JH met the criteria for the diagnosis of Specific Learning Disorder with impairment in mathematics, specifically with fluent calculation and she had issues with processing speed.   J.H. also met the criteria for Major Depressive Disorder, Recurrent Episode, and Generalized Anxiety Disorder.

31. Dr. Ellen Platt performed the independent psychiatric evaluation and concluded that J.H. "remains exceedingly emotionally fragile and the probability of her attending her school is extremely low at this time. She requires an academic environment with the capacity of a great deal of

10

emotional awareness and intervention." Nowhere does Dr. Schuberth or Dr.
Platt indicate that J.H. needed a therapeutic school environment.  Despite
these independent evaluations, the school district never reconvened to discuss
the them or the effect they might have on J.H.'s IEP.

32. In addition, a report dated August 17, 2017 from J.H.'s therapist, Melissa
Dolgos at Immediate Care Children's Psychiatric Center ("ICCPC") noted
that, J.H. in the school district setting, "was unable to complete her academic
assignments due to the anxiety causing her confusion and delaying her ability
to function in school. While in smaller group settings, I have noticed that
[J.H.] was able to progress in managing her anxiety." Ms. Dolgos also noted,
"She excels better when people around her are mature and college bound
rather than peers who have behavioral issues. Throughout my time with her,
[J.H.] has never demonstrated any negative behaviors or came to program due
to behavioral issues. She also does not respond well when others around her
have behavioral issues as it distracts her and causes her to become anxious
again. She also will be continuing treatment here at ICCPC throughout the
school year and will not be in need of therapy while in school." Ms. Dolgos
also noted, "She will need a structured but non-strict educational environment
as she functions better with more flexible schedules. It is highly recommended
that she be placed in a school that can meet these needs in order for [J.H.] to
function academically and succeed."

33. At the mediation on July 27, 2017, the Petitioners indicated that they wanted
the district to pay for J.H. to attend the Purnell School. Petitioners indicated

that they would likely unilaterally place their daughter out of district at the Purnell School and seek reimbursement, if the matter could not be resolved.

34. Thereafter, J.H. applied to the Purnell School and was accepted. Petitioners' counsel also sent several 10-day notices to the attorney for the school district regarding their intent to unilaterally place the student at the Purnell School, without receiving any response or communication from the district or from their counsel.

35. Petitioners and their counsel have at all times acted in good faith and have tried on multiple occasions to resolve this matter with the district.

36. Petitioners recently unilaterally placed J.H. at the Purnell School and are seeking reimbursement of costs, tuition, and transportation from the district along with compensatory damages and attorney's fees and costs and any and all other damages the Court deems fair and just.

37. On September 11, 2017, after school had already started, the school district, sent Petitioners an email that the district, on their own without any consultation, knowledge or consent by the Petitioners, de-classified J.H. by now considering her a general education student with a 504 Plan that was drafted in December 2016, which was not complete or up to date. This is in direct violation of the provisions of the IDEA which provide that notice shall be provided to the parents of a child with a disability before any evaluation procedures, including a change in eligibility. See 20 U.S.C. §§ 1414(b)(1) through 1414(c)(5).

38. Further, the District did not reconvene to consider the independent evaluations of Dr. Schuberth or Dr. Platt before declassifying J.H. The failure to consider the independent evaluations denied Petitioners their right to participate in the process and resulted in a denial of FAPE to J.H. See Dallas Indep. Sch. Dist. v. Woody, 865 F.3d 303, 316 (5th Cir. 2017).

39. In May 2017, Respondents found that J.H. was entitled to receive special education services. Despite the fact that the parties now differ over which particular classification is appropriate for J.H., she is entitled to receive special education services from the moment she is found eligible. Once a school accepts that one of its students is eligible under the IDEA, the school must develop an IEP for that student. See Dallas Indep. Sch. Dist., 865 F.3d at 309. The district cannot attempt to circumvent its ongoing responsibility to J.H. by now attempting to declassify her. The IDEA, as well as the Child Find mandate, requires the district to identify, locate, and evaluate all children with disabilities, regardless of the severity of their disabilities. See 34 C.F.R. 300.111. This obligation to identify all children who may need special education services exists even if the school is not providing special education services to the child. Respondent must provide services to J.H. for the 2017-18 school year.

40. Petitioners assert that the school district has violated the following laws: IDEA, 20 U.S.C.A. 1400-1487, N.J.S.A. 18A: 46-1 to 46 et seq., N.J.A.C. 6A: 14-1.1 to 10.2 et seq., N.J.A.C. 6A: 14-4.8 (a) (4), Stay Put provisions, N.J. Law Against Discrimination, Section 504 of the Rehabilitation Act,

Americans with Disability Act and Amendment Act, New Jersey Civil Rights
Act, Child Find, and other such applicable laws and statutes.

41. The school district also violated N.J.S.A. 6A: 7-1.1 et seq., by denying J.H.
her right to access appropriate educational programs and services and a
meaningful education whereby she would gain educational benefits.
Petitioners reserve their rights to add further claims and violations, as they
become known. The school district knew or should have known that they have
been and continue to violate J.H.'s rights.

42. The school district failed to consider the unique needs of J.H. and attempted to
fit her into the program that they have available, despite the fact that it is
contrary to her actual needs.

43. The school district, by not recognizing J.H.'s unique needs, as a student
suffering from school related anxiety, they violated J.H.'s rights and interfered
with her educational, social, emotional, and physical development.

44. The school district also failed under Child Find to recognize that she had a
specific learning disorder in mathematics and issues with processing
information.

45. The school district de-classified J.H. after having found her eligible for special
education services without any notice to or input from Petitioners. The lack of
communication from Respondent's counsel from mid-August 2017 through
mid-September 2017 hindered any settlement efforts. As of the first day of
school, J.H. did not have any IEP, special education services, or any
appropriate placement in the district. Respondent's position that since J.H.

was seeking a lesser restrictive learning environment, she no longer required

special education services is not supported by the evidence and even if that

had been true, the district failed to properly change her eligibility status,

thereby violating Petitioners' and J.H.'s rights.

46. Petitioners were forced to place J.H. unilaterally and seek reimbursement.


*3. Please provide a description of how this problem could be resolved. Attach additional sheets as needed:*

1. Petitioners respectfully request that Petitioners be allowed to file this Amended Due Process action as OAL Docket No.: EDS 10706-2017 N, Agency Ref. No. 2017-26311 as this Amended Due Process action is an updated version of events and violations, which have transpired since the prior Due Process filing. Petitioners respectfully request that this action and the prior action be considered for their motion for summary decision.

2. Petitioners respectfully request that the school district reimburse Petitioners for their costs and expenses for tuition and fees and transportation for their daughter to attend the Purnell School for the school years 2017-2018 and 2018-2019, when it is anticipated she will graduate from high school.

3. Petitioners respectfully request that based on the new independent evaluations and therapist reports, the district draft an IEP which reflects a classification of Other Health Impaired and places J.H. at the Purnell School as an out of district placement paid for by the school district including transportation for the next two (2) years and that the district reimburse Petitioners any and all costs and fees including attorney's fees associated with the first and this Amended due process action and unilateral placement incurred to date and throughout the entire unilateral placement.

4. Petitioners respectfully request compensatory education, compensatory damages, damages for violating the IDEA, Section 504, Child Find, and the Law Against Discrimination, and reimbursement for any and all out of pocket expenses, including counseling at the Purnell School, costs, attorney's fees, and any other fees, as well as any and all expert fees and litigation costs as a result of the school district's failures and for having to bring this and the prior action.

5. Petitioners respectfully request that the school district immediately accept Dr. Shankar Srinivasan's report from ICPC, which recommends an out of district placement but not a therapeutic out of district placement.

6. Petitioners respectfully request that the school district immediately accept Dr. Ellen Platt's independent psychiatric evaluation report.

7. Petitioners respectfully request that the school district immediately accept Dr. Natalie Schuberth's independent psychoeducational evaluation report.

8. Petitioners respectfully request that the school district pay for transportation to and from the private school and counseling fees.

9. Petitioners respectfully request compensatory damages for violation of J.H.'s rights under the various theories of law as set forth herein.

10. Petitioners respectfully request that they be declared the prevailing party.

11. Petitioners respectfully request the forgoing relief and attorney's fees as well as any and all other damages, compensatory education, compensatory damages, punitive and other damages, and/or other relief this Court deems just and fair.

*4. A copy of this petition must be provided to the other party. Please check to verify.*

*X__ A copy of this request was sent to the superintendent of the school district.*

*Name of the Superintendent:* Mr. Michael Ben-David, Superintendent
*Address:*                                10 South Four Bridges Road
                                                 Chester, New Jersey 07930

*5. Parent's signature:*

_____

*Parent's signature:*

_____

*Note to parent(s) requesting a due process hearing: The IDEA Amendments of 2004 provide that attorneys' fees may be reduced if the parent or parent's attorney unreasonably protracted the final resolution of the controversy or the attorney representing the parent did not provide to the district the appropriate information in the due process request.*

16

6. Petitioners respectfully request that the school district immediately accept Dr. Ellen Platt's independent psychiatric evaluation report.

7. Petitioners respectfully request that the school district immediately accept Dr. Natalie Schuberth's independent psychoeducational evaluation report.

8. Petitioners respectfully request that the school district pay for transportation to and from the private school and counseling fees.

9. Petitioners respectfully request compensatory damages for violation of J.H.'s rights under the various theories of law as set forth herein.

10. Petitioners respectfully request that they be declared the prevailing party.

11. Petitioners respectfully request the forgoing relief and attorney's fees as well as any and all other damages, compensatory education, compensatory damages, punitive and other damages, and/or other relief this Court deems just and fair.

*4. A copy of this petition must be provided to the other party. Please check to verify.*

*X__ A copy of this request was sent to the superintendent of the school district.*

*Name of the Superintendent:* Mr. Michael Ben-David, Superintendent
*Address:*                        10 South Four Bridges Road
                                       Chester, New Jersey 07930

*5. Parent's signature:*



*Note to parent(s) requesting a due process hearing: The IDEA Amendments of 2004 provide that attorneys' fees may be reduced if the parent or parent's attorney unreasonably protracted the final resolution of the controversy or the attorney representing the parent did not provide to the district the appropriate information in the due process request.*

16

**WARSHAW LAW FIRM, LLC**
Julie Warshaw, Esq. (ID# 027931993)
266 King George Road, Suite C2
Warren, New Jersey 07059
Phone (973) 433-2121
Fax (973) 439-1047
jwarshaw@warshawlawfirm.com
Attorneys for Petitioners

|  |  |
|---|---|
| **F.H. AND M.H. o/b/o J.H.,** | **:** |
| **Minor Child,** | **:** |
|  | **:** |
| Petitioners | **:** |
|  | **:** |
| v. | **:** |
|  | **:** |
| **WEST MORRIS REGIONAL** | **:** |
| **HIGH SCHOOL DISTRICT** | **:** |
| **BOARD OF EDUCATION** | **:** |
|  | **:** |
| Respondent | **:** |
|  | **:** |

OFFICE OF ADMINISTRATIVE LAW
OAL DOCKET NO.: EDS 10706 2017
AGENCY REFERENCE NO.: 2017- 26311

CIVIL ACTION

**NOTICE OF MOTION**

To:     Jodi Howlett, Esq.
        Cleary Giacobbe Alfieri Jacobs, LLC
        955 State Route 34, Suite 200
        Matawan, New Jersey 07747

     **PLEASE TAKE NOTICE** that the undersigned, Julie Warshaw, Esq., on behalf

of Petitioners, shall move before the Honorable Thomas Betancourt, A.L.J. for an Order

granting permission to amend their initial request for due process, pursuant to said Order.

     **PLEASE TAKE NOTICE** that the undersigned will rely on the attached brief in

support of the motion.

     A proposed form of Order is attached hereto.

                                        Warshaw Law Firm, LLC
                                        Attorneys for Petitioners

                                        By: _____
                                              Julie Warshaw, Esq.

October 18, 2017

**WARSHAW LAW FIRM, LLC**
Julie Warshaw, Esq. (ID# 027931993)
266 King George Road, Suite C2
Warren, New Jersey 07059
Phone (973) 433-2121
Fax (973) 439-1047
jwarshaw@warshawlawfirm.com
Attorneys for Petitioners

| | |
|---|---|
| **F.H. AND M.H. o/b/o J.H.,** : | OFFICE OF ADMINISTRATIVE LAW |
| **Minor Child,** : | OAL DOCKET NO.: EDS 10706 2017 |
| : | AGENCY REFERENCE NO.: 2017- 26311 |
| Petitioners : | |
| : | |
| v. : | |
| : | CIVIL ACTION |
| **WEST MORRIS REGIONAL** : | |
| **HIGH SCHOOL DISTRICT** : | |
| **BOARD OF EDUCATION** : | |
| : | **ORDER** |
| Respondent : | |
| : | |

To:    Jodi Howlett, Esq.
        Cleary Giacobbe Alfieri Jacobs, LLC
        955 State Route 34, Suite 200
        Matawan, New Jersey 07747

**THIS MATTER** having come before the Court on a Motion to Amend filed on

behalf of Plaintiffs; and upon consideration of the moving papers and any response

thereto:

**IT IS** on this _____ day of October 2017,

**ORDERED** that Petitioners' Motion to Amend is hereby granted; and it is

**FURTHER ORDERED** that a copy of said Order shall be served upon counsel

within _____ days from the date hereof.

_____
Thomas Betancourt, A.L.J.

**WARSHAW LAW FIRM, LLC**
Julie Warshaw, Esq. (ID# 027931993)
266 King George Road, Suite C2
Warren, New Jersey 07059
Phone (973) 433-2121
Fax (973) 439-1047
jwarshaw@warshawlawfirm.com
Attorneys for Petitioners

| | |
|---|---|
| **F.H. AND M.H. o/b/o J.H.,** : | OFFICE OF ADMINISTRATIVE LAW |
| **Minor Child,** : | OAL DOCKET NO.: EDS 10706 2017 |
| : | AGENCY REFERENCE NO.: 2017- 26311 |
| Petitioners : | |
| : | |
| v. : | |
| : | CIVIL ACTION |
| **WEST MORRIS REGIONAL** : | |
| **HIGH SCHOOL DISTRICT** : | |
| **BOARD OF EDUCATION** : | |
| : | |
| Respondent : | |

**BRIEF IN SUPPORT OF PETITIONERS' MOTION TO AMEND
THEIR FIRST DUE PROCESS COMPLAINT**

On the Brief:

Julie Warshaw, Esq.
Dated: October 18, 2017

## TABLE OF CONTENTS

Table of Authorities                                    3

Background                                              4

Legal Argument                                          13

Conclusion                                              15

## TABLE OF AUTHORITIES

**CASES:**

Dallas Indep. Sch. Dist. v. Woody, 865 F.3d 303, 316 (5th Cir. 2017)          12, 13

Dole v. Arco Chemical Co., 921 F.2d 484 (3rd Cir. 1990).                     14

Harter v. GAF Corp., 150 F.R.D. 502 (D.N.J. 1993).                          14

In re Bristol Myers Squibb Sec. Litig., 228 F.R.D. 221 (D.N.J. 2005).       14

In re Complaint of Five Mile Beach Electric Railway, Co., Inc. v. Delaware River     13
and Bay Authority, 775 A.2d 708 (N.J. Super. Ct. App. Div. 2001).

**STATUTES:**

20 U.S.C. §§ 1414                                                           12

N.J.A.C. 1:1-6.2(a)                                                         13

34 C.F.R. 300.111                                                          13

## BACKGROUND

1.  On May 30, 2017, Petitioners filed a due process action which is currently pending before Judge Betancourt under OAL Docket No.: EDS 10706-2017 N, Agency Ref. No. 2017-26311.

2.  Since the filing of Petitioners' first due process action, reports from two (2) independent evaluations conducted by Dr. Natalie Schuberth and Dr. Ellen Platt have been received and they support Petitioners' original request to have J.H. classified as Other Health Impaired and to be placed out of district.

3.  Petitioners request that the district draft an IEP that reflects a classification of Other Health Impaired and for the district to place J.H. at the Purnell School as an out of district placement, which is where she is currently attending school.

4.  J.H. has been successful at her unilateral placement at the Purnell School. If the district will not place J.H. at the Purnell School for the 2017-2018 and 2018-2019 school years through an IEP, Petitioners seek reimbursement for the unilateral placement of all costs and tuition and fees including attorney's fees as well as any and all costs to date Petitioners have incurred as a result of having to unilaterally place J.H. at the Purnell School. The district received their 10-day unilateral placement notice at the IEP meeting and mediation as well as through correspondence between counsel and at all times Petitioners have acted in good faith.

5.  J.H. is currently in the 11th grade and she is suffering from school related anxiety and school phobia and was recently discovered by Dr. Natalie Schuberth, through an

independent evaluation to also have a specific learning disorder and deficit in processing information.

6.     She had been enrolled in a therapeutic day program for a few months at the beginning of the 2016-2017 school year. She currently attends therapeutic sessions with a counselor at the Immediate Care Psychiatric Center ("ICPC") in Parsippany on a regular basis after school.

7.     J.H. attempted to return to high school in December 2016 but that was not successful due to her school related anxiety and school phobia.

8.     The school district provided her with home instruction since that time and she did very well academically.

9.     J.H. had been receiving home instruction without any IEP or Section 504 Plan.

10.    Petitioners sought an IEP for J.H. and for an out of district placement.

11.    ICPC recommended that she attend an out of district placement but not a therapeutic out of district placement as the school district insisted.

12.    Since J.H. continues to receive therapeutic services on a regular and on-going basis, she is not in need of a therapeutic school setting.

13.    In May 2017, the school district finally proposed an IEP but it classified J.H. as "Emotionally Disturbed." J.H. is not emotionally disturbed, as she does not meet the criteria for said classification.

14.    The report from ICPC indicates that her diagnosis is "Major depression recurrent, Panic Disorder and School issues." Nowhere was she ever diagnosed as being emotionally disturbed. Petitioners seek an appropriate classification of "Other Health Impaired."

15.     J.H. meets the criteria under the Individuals with Disabilities Education Act ("IDEA") as a person with a disability and is entitled to special education, related services, accommodations, and an appropriate placement under the classification of Other Health Impaired, although the school district to date has failed to classify her appropriately or offer her an appropriate educational placement that meets her unique academic, social, emotional, and physical needs.

16.     At the initial IEP meeting, which took place on May 16, 2017, the school district proposed the Behavioral Supports Program ("BSP") in the Mendham High School.

17.     The attorney for the district in her letter dated September 20, 2017, suddenly referred to the BSP program as the "Being Successful Program" rather than its correct title of "Behavioral Supports Program," as stated in the proposed IEP. Further, in the event that this program has been retitled, September 20, 2017 was the first time Petitioners or their attorney ever heard of this. The Being Successful Program was not the program offered at any time to Petitioners. Therefore, whatever the name of that program is now, since it was never offered to J.H., it cannot be considered.

18.     The Behavioral Supports Program ("BSP") that was offered to J.H. in the proposed IEP from May 2017, is a behavioral program with an alleged therapeutic component. This program is a contained classroom with multi-levels of academics being taught at once throughout the classroom. If J.H. had an issue during the school day, they would attempt to find a counselor available if that person was in the school at that time to assist. However, there is one psychologist assigned to more than 1300 students at the Mendham High School. It is our understanding that the teachers in that program are not trained therapists or counselors.

19.     The BSP program does not cater to students who are on a college track in that many college prep or Advanced Placement, or Honors classes are not offered all of the time and if students in that program want to be on a college bound track, they have to take classes in the larger general education setting and that is contrary to J.H.'s needs. The BSP program essentially is there to get students to attend school in any manner possible and they do not typically give any homework either. In addition, specials such as gym class are done on the computer rather than in gym classes.

20.     In addition, upon an observation of the BSP program by Petitioner and J.H., they determined that the students in that isolated program are not her social peers. J.H. was uncomfortable with the students as they were not academically oriented or involved in challenging academic subjects. The students in that program were not socially appropriate peers for J.H., as there were other issues that these students were dealing with such as but not limited to issues with the criminal justice system, truancy, substance abuse, etc.

21.     J.H. succeeded academically on home instruction as she works well in a one to one or small classroom setting. J.H. is academically oriented and does plan to attend college after graduating high school.

22.     At the May 16, 2017 IEP meeting, counsel for the Petitioners and David Leigh, the Director of Special Services at that time, (he has since retired), had a conversation regarding out of district placements, including the Purnell School. He explained that the district's reasoning for not considering a Flex school or a school with a one to one academic setting with some socialization with other students for group activities or specials is that J.H. needs to be in a public school setting, even though she would be in a

self-contained isolated classroom, because she needs to learn for college to function in a larger environment. That is nonsensical and the atmosphere at a college of her choosing would meet her needs academically and socially.

23.     Dr. Leigh also indicated that the Purnell School was not a therapeutic school so the district would not consider it. However, there is more of a therapeutic component at the Purnell School than there is at the BSP program offered by the district. The counselors at Purnell are available at any time for the students and students can also make regular appointments as well. J.H.'s advisor with a degree in special education, has a very small caseload comprised of three (3) students. There is also a psychologist at the school three (3) times per week, who created an individualize learning plan for J.H. The Purnell School incorporates many therapeutic components in their program.

24.     An out of district placement at a Flex School or a one to one learning environment with a social component or a private school such as the Purnell School, with small classes and an appropriate peer group, where J.H. could develop friendships, would meet J.H.'s needs academically and socially. J.H. would continue with her therapeutic component at ICPC where she has a trusted therapist and appropriate services.

25.     The school district has indicated that such an out of district placement would be more restrictive than to be isolated in a classroom at the BSP program, being exposed to inappropriate peers, and then being placed in the larger general education classes for academics, exactly what she cannot do, because it happens to be located in the public high school.

26.     Petitioners' counsel reached out by email on a few occasions and left messages for the attorney for the district since the May 16, 2017 IEP meeting. Petitioners' counsel

attempted to toll the 15-day period of time in order for the parties to attempt to come to some amicable resolution. Having not received any response, Petitioners had no choice but to file for Due Process on May 30, 2017 to preserve their rights. Without consent to file an Amended Due Process to include all that has transpired since Petitioners' initial due process action, Petitioners had no choice but to file a second due process action. As per Judge Betancourt's request on October 13, 2017, Petitioners are filing this motion to amend their first due process action to include events, new information, and new violations that have occurred since the filing of the first due process action on May 30, 2017.

27.     Petitioners seek an appropriate classification of "Other Health Impaired," and an out of district placement at the Purnell School, which is meeting J.H.'s unique academic, social, emotional, and physical needs and for the district to provide transportation to and from said private school placement. Said private school placement should not be a strictly therapeutic setting as proposed by the school district as that would not meet her needs. In the event that the district will not classify J.H. as "Other Health Impaired" and place her at the Purnell School, Petitioners seek reimbursement for tuition, fees, costs, uniforms, transportation, and attorney's fees and expert fees if needed, for having to unilaterally place J.H. at the Purnell School due to the district's failure to provide her with a free and appropriate public education in the least restrictive environment.

28.     The school district rejected placement at an out of district school such as the Purnell School because it was not a therapeutic placement and because it was not on the approved list. However, the Purnell School offers a full-time advisor with a caseload of only three (3) students, a full-time counselor with a caseload of only sixty (60) students,

and a psychologist three (3) days per week. West Morris Board of Education has placed students at the Purnell School in the past and upon information and belief, it is on the Board of Education's approved list.

29.    Petitioners asserted that the "stay put" placement was home instruction and said home instruction should have continued to be provided by the school district until such time as the parties could agree to an appropriate classification and out of district placement that met J.H.'s individual needs. The school district refused to recognize home instruction as the stay put placement and ultimately, with the advice of J.H.'s medical providers, it was determined that she needed a less restrictive educational placement.

30.    Since the Petitioners' first due process action was filed on May 30, 2017, the school district approved two independent evaluations. Dr. Natalie Schuberth from Alexander Road Associates conducted the Psychoeducational testing and issued a report dated August 21, 2017. On July 31, 2017, August 2, 2017 and August 3, 2017, J.H. was evaluated by Dr. Schuberth, Psy.D, BCBA-D.

31.    Dr. Schuberth indicated in her independent evaluation report that JH met the criteria for the diagnosis of Specific Learning Disorder with impairment in mathematics, specifically with fluent calculation and she had issues with processing speed.   J.H. also met the criteria for Major Depressive Disorder, Recurrent Episode, and Generalized Anxiety Disorder.

32.    Dr. Ellen Platt performed the independent psychiatric evaluation and concluded that J.H. "remains exceedingly emotionally fragile and the probability of her attending her school is extremely low at this time. She requires an academic environment with the capacity of a great deal of emotional awareness and intervention." Nowhere does Dr.

Schuberth or Dr. Platt indicate that J.H. needed a therapeutic school environment. Despite these independent evaluations, the school district never reconvened to discuss the them or the effect they might have on J.H.'s IEP.

33.     In addition, a report dated August 17, 2017 from J.H.'s therapist, Melissa Dolgos at Immediate Care Children's Psychiatric Center ("ICCPC") noted that, J.H. in the school district setting, "was unable to complete her academic assignments due to the anxiety causing her confusion and delaying her ability to function in school. While in smaller group settings, I have noticed that [J.H.] was able to progress in managing her anxiety." Ms. Dolgos also noted, "She excels better when people around her are mature and college bound rather than peers who have behavioral issues. Throughout my time with her, [J.H.] has never demonstrated any negative behaviors or came to program due to behavioral issues. She also does not respond well when others around her have behavioral issues as it distracts her and causes her to become anxious again. She also will be continuing treatment here at ICCPC throughout the school year and will not be in need of therapy while in school." Ms. Dolgos also noted, "She will need a structured but non-strict educational environment as she functions better with more flexible schedules. It is highly recommended that she be placed in a school that can meet these needs in order for [J.H.] to function academically and succeed."

34.     At the mediation on July 27, 2017, the Petitioners indicated that they wanted the district to pay for J.H. to attend the Purnell School. Petitioners indicated that they would likely unilaterally place their daughter out of district at the Purnell School and seek reimbursement, if the matter could not be resolved.

35.     Thereafter, J.H. applied to the Purnell School and was accepted. Petitioners'
counsel also sent several 10-day notices to the attorney for the school district regarding
their intent to unilaterally place the student at the Purnell School, without receiving any
response or communication from the district or from their counsel.

36.     Petitioners and their counsel have at all times acted in good faith and have tried
on multiple occasions to resolve this matter with the district.

37.     Petitioners recently unilaterally placed J.H. at the Purnell School and are seeking
reimbursement of costs, tuition, and transportation from the district along with
compensatory damages and attorney's fees and costs and any and all other damages the
Court deems fair and just.

38.     On September 11, 2017, after school had already started, the school district, sent
Petitioners an email that the district, on their own without any consultation, knowledge or
consent by the Petitioners, de-classified J.H. by now considering her a general education
student with a 504 Plan that was drafted in December 2016, which was not complete or
up to date. This is in direct violation of the provisions of the IDEA which provide that
notice shall be provided to the parents of a child with a disability before any evaluation
procedures, including a change in eligibility. See 20 U.S.C. §§ 1414(b)(1) through
1414(c)(5).

40.     Further, the District did not reconvene to consider the independent evaluations of
Dr. Schuberth or Dr. Platt before declassifying J.H. The failure to consider the
independent evaluations denied Petitioners their right to participate in the process and
resulted in a denial of FAPE to J.H. See Dallas Indep. Sch. Dist. v. Woody, 865 F.3d
303, 316 (5th Cir. 2017).

40.     In May 2017, Respondents found that J.H. was entitled to receive special

education services.  Despite the fact that the parties now differ over which particular

classification is appropriate for J.H., she is entitled to receive special education services

from the moment she is found eligible.  Once a school accepts that one of its students is

eligible under the IDEA, the school must develop an IEP for that student.  See Dallas

Indep. Sch. Dist., 865 F.3d at 309.  The district cannot attempt to circumvent its ongoing

responsibility to J.H. by now attempting to declassify her.  The IDEA, as well as the

Child Find mandate, requires the district to identify, locate, and evaluate all children with

disabilities, regardless of the severity of their disabilities.  See 34 C.F.R. 300.111.  This

obligation to identify all children who may need special education services exists even if

the school is not providing special education services to the child.  Respondent must

provide services to J.H. for the 2017-18 school year.

## LEGAL ARGUMENT

### THIS COURT SHOULD GRANT PETITIONERS LEAVE TO AMEND

Petitioners seek leave to amend their due process action pending before Judge Betancourt

under OAL Docket No.: EDS 10706-2017 N, Agency Ref. No. 2017-26311. Further, Petitioners

respectfully request that additionally, the motion for summary decision filed September 19, 2017

apply to the amended due process action.

Pursuant to N.J.A.C. 1:1-6.2(a), "pleadings may be freely amended, when, in the judge's

discretion, an amendment would be in the interest of efficiency, expediency and the avoidance of

over-technical pleading requirements and would not create undue prejudice."  See In re

Complaint of Five Mile Beach Electric Railway, Co., Inc., v. Delaware River and Bay Authority,

775 A.2d 708, 712 (N.J. Super. Ct. App. Div. 2001).

"Prejudice" involves a serious impairment of Respondent's ability to present its case. See Dole v. Arco Chemical Co., 921 F. 2d 484, 486-487 (3rd Cir. 1990). It is still very early in this matter and providing this opportunity for Petitioners would not in any manner prejudice Respondent's or their ability to defend this case. A motion to amend a Complaint may be denied properly as unduly prejudicial if it is made on the eve of trial or after the close of discovery. See Harter v. GAF Corp., 150 F.R.D. 502, 509 (D.N.J. 1993). The non-moving party has the burden of demonstrating that unfair disadvantage or deprivation will result if the amendment is allowed. See In re Bristol Myers Squibb Sec. Litig., 228 F.R.D. 221, 228 (D.N.J. 2005).

This Court should allow Petitioners to amend their complaint for due process because granting leave to do so would not result in undue prejudice to the Respondent. In fact, Petitioners filed their first request for due process on May 30, 2017. Due to the discovery of additional pertinent information and more violations of J.H.'s rights took place, Petitioners seek to amend the complaint less than five months after it was filed. This subsequent information, included (i) two independent evaluations supporting the classification of J.H; (ii) a report from J.H.'s therapist, (iii) the de-classification of J.H. without notice, consent or a meeting after having found her eligible for special education services, and (iv) that J.H. applied to and was accepted and now attends the Purnell School. All of this information will assist the Court to better understand the issues described in the first request for due process and it will help support Petitioners reasoning for the request for relief.

Further, the facts and issues in the proposed amended complaint stem from the same set of circumstances that were detailed in the first complaint. It would be efficient for this Court to hear all these facts together. Moreover, the parties are still in the early stages of responding to this Complaint and providing this opportunity for Petitioners would not in any manner prejudice

the Respondents or their ability to defend this case.   Discovery has not been propounded on either party.  Petitioners respectfully request that their motion for leave to amend the complaint be granted.  Attached hereto as exhibit A is a copy of Petitioners proposed amended due process complaint.

## CONCLUSION

For the foregoing reasons set forth above, since the original due process action is still only in its infancy stage, Respondent has not filed an Answer, and defendants will not be prejudiced in any manner by Petitioners' request for leave to amend their Complaint, Petitioners respectfully request that their motion to amend be granted.

Respectfully Submitted,

By: _____
Julie Warshaw (ID#027931993)
Warshaw Law Firm, LLC
266 King George Road. C2
Warren, New Jersey 07059
Phone (973) 433-2121
Fax (973) 439-1047
jwarshaw@warshawlawfirm.com

Dated: October 18, 2017

15

**WARSHAW LAW FIRM, LLC**
Julie Warshaw, Esq. (ID# 027931993)
266 King George Road, Suite C2
Warren, New Jersey 07059
Phone (973) 433-2121
Fax (973) 439-1047
jwarshaw@warshawlawfirm.com
Attorneys for Petitioners

| | |
|---|---|
| **F.H. AND M.H. o/b/o J.H.,** : | OFFICE OF ADMINISTRATIVE LAW |
| **Minor Child,** : | OAL DOCKET NO.: EDS 10706 2017 |
| : | AGENCY REFERENCE NO.: 2017- 26311 |
| Petitioners : | |
| : | |
| v. : | |
| : | CIVIL ACTION |
| **WEST MORRIS REGIONAL** : | |
| **HIGH SCHOOL DISTRICT** : | |
| **BOARD OF EDUCATION** : | |
| : | **CERTIFICATION OF SERVICE** |
| Respondent : | |
| : | |

To:     Jodi Howlett, Esq.
        Cleary Giacobbe Alfieri Jacobs, LLC
        955 State Route 34, Suite 200
        Matawan, New Jersey 07747

        I, Julie Warshaw, Esq., attorney for Petitioners, do hereby certify that on October

18, 2017, I sent by priority mail an original and two (2) copies of Petitioners' Motion to

Amend pursuant to the N.J.A.C. 1:1-6.2(a), brief in support of said motion, certification,

and a proposed form of Order to the Honorable Thomas Betancourt, A.L.J. and a copy to

Jodi Howlett, Esq.

        I hereby certify that the foregoing statements made by me are true. I am aware

that if any of the forgoing statements made by me are willfully false, I am subject to

punishment.

                                    Warshaw Law Firm, LLC

Attorneys for Petitioners

By: _____
          Julie Warshaw

Dated: October 18, 2017