**Warshaw Law Firm, LLC**
Julie Warshaw, Esq. (ID# 027931993)
266 King George Road, Suite C2
Warren, New Jersey 07059
Phone (973) 433-2121
Fax (973) 439-1047
Attorneys for Petitioner

| | |
|---|---|
| F.H. and M.M. o/b/o J.H., | : STATE OF NEW JERSEY |
| MINOR CHILD | : OFFICE OF ADMINISTRATIVE LAW |
| : | : |
| Petitioners | : |
| | : |
| v. | : AGENCY NO.: 2017-26311 |
| | : DOCKET NO.: EDS 10706-2017 N |
| WEST MORRIS REGIONAL | : |
| HIGH SCHOOL DISTRICT | : |
| BOARD OF EDUCATION | : |
| | : CERTIFICATION OF COUNSEL |
| Respondent | : |

I, Julie Warshaw, do hereby certify as follows:

1. I am an attorney at law in the State of New Jersey and the owner of the Warshaw Law Firm, LLC. I am the attorney for the Petitioners and as such, I am fully familiar with the facts of this matter.

2. To the best of my knowledge, Exhibit H is a true and accurate copy of the original documents.

3. To the best of my knowledge, Exhibit I is a true an accurate copy of the original documents.

4. To the best of my knowledge, Exhibit J is a true an accurate copy of the original documents.

5. Although Respondent's counsel claims Petitioners' counsel's previous certification is "self-serving" to date, she still has not addressed her complete lack of responsiveness to my efforts to amicably resolve this matter and to get a placement for J.H. by the start of the 2017-2018 school year, as she failed to respond to any of my inquiries through email, letters and phone calls for most of August 2017-September 2017. She cannot demonstrate that she made any efforts to reach out to Petitioners' counsel during that timeframe. That was a critical time in this case as it was the start of school. Her lack of response contributed to the decision to seek

1

alternate placement for J.H. as the school district had no appropriate IEP or placement was in place at the start of school.

## CERTIFICATION

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By: _____
        Julie Warshaw, Esq.

Dated: December 9, 2017

2

# EXHIBIT H

· Navigation
   **Welcome**
   **Action Plan**
   **Strategic Plan**
     Reflection
   **Board of Education Meeting 1: Woodland Park**
     Reflection
   **Board of Education Meeting 2: Wayne**
     Reflection
   **Board of Education Meeting 3: Clifton**
     Reflection
   **Board of Education Meeting 4: West Morris Regional HS**
     Reflection
   **Superintendent Interview**
     Reflection
   **Superintendent's Professional Development Plan**
     Reflection
   **Central Office Personnel**
     Reflection
   A Day with the Director of Student Support Services
     Reflection
   **Internship Log**
   **Sitemap**

# A Day with the Director of Student Support Services

Chronology of day with David Leigh, Director of Student Support Services

- Received letter this morning from attorney on a unilateral placement
    - Provided background information
        - Student was in Chester Public School district from K–6
        - Received an IEP in 6th grade
        - Went to Immaculata (private school) for 7th–9th grades
            - Middlesex Regional did ISP
        - Parent re-enrolled child 3 days ago into Mendham Township Regional Public Schools for 10th grade
    - Therapeutic Boarding School (Wilderness Program), Utah
        - Cost is approximately $90,000, broken down as follows:
            - $30,000 Room and Board (Parents pay)
            - $30,000 Clinical (School district pays 1/2)
            - $30,000 Educational (School district pays)
    - Called board attorney on conference to include me
        - Attorney: Required to schedule a meeting, nature & scope of re-eval and develop initial "comparable" IEP
        - David: Transfer student- always request records. Do we re-eval?

- Attorney: Always, we have the right to
- David: Mom said Psyc will be done through out-of-state Program child is currently in and child won't be back in NJ for awhile. Does a student have to be in available in NJ if evaluations need to be done?
- Attorney: We are not required to send CST to another state to do re-eval.
- David: Are we required to have a third party do re-eval?
- Attorney: Court may require us to use those re-evaluations by Program.
- David: Will create IEP for BSP (Behavioral Support Program) at Mendham High School
    - BSP is a self-contained class at the high school of approximately 20 students
    - This would be LRE for this student.
- Attorney: We have twenty days to hold the meeting. I will send letter to request dates and I will send a "request for records" for Nature & Scope meeting. Did you confirm residency?
- David: Yes, I did.
- Called parent of student to inform them they needed records of any testing & copy of ISP, also need to schedule a meeting
- HIB Situation (really a non-HIB situation)
    - Freshman student (female) was on the fencing team
    - Student's parents felt she should be captain of the fencing team
    - They filed an HIB complaint on tl fencing team (Junior, female, all-
        - Special Services said there w of HIB.

- Board said there was no evidence of HIB.
- Appellate Court said there was no evidence of HIB.
- Appeal said there was no evidence of HIB.
- Board again with new documentation, said there was still no evidence of HIB.
  - Parents unreasonable— no proof whatsoever of an HIB.
  - They only want their child to be captain.
- Training for Co-Teaching (see attached slides) Preparing to Train Teachers/ Collaborative
  - Provided for first year teachers or first year "working together" teachers.
- Policy on HIB— threshold assessment
  - Definition of bullying— if not, can discipline under the behavior policy.
- HIB— Training for coaches
  - "Finding the Line: Tough Coach or Bully?"
- IDEA Grant/ Funding
  - Show all revenue from each sending district, then have to spend it on special education
    - Nurse for paraplegic student $290,000
    - Behaviorist $35,000
    - Monthly trips for students in BSP program
    - Technology/ Computers $50,000
    - Out-of-District, Private Schools, Parochial Schools for students with ISP
- IDEA funds about $700/ classified student
  - Can spend it all on one student or divide it up between all
- Receives phone call from principal re: transfer student
  - Where is he going?
  - David: Makes call to confirm school of attendance, ECLC or Park Lake?
- New administrative assistant

**Subpages (1):** Reflection

Team Teaching– inte...Christina Cifalino, Jul 2    v.1    ⬇

## Comments

**You do** not have permission to add comments.

Sign in | Recent Site Activity | Report Abuse | Print Page | Powered By Google Sites

# EXHIBIT I

Earn a DSW Online at USC - Master's req. Earn a USC Doctor of Social Work online in as few as 24 mos.  Ad  ···

**Contact and Personal Info**

Janice's Profile

Show more ˅

Ad ▷

Law360 is hiring!

 LAW360

**Julie, grow your career today!**

Follow



## Janice Robbie

Special Education Science Teacher- Currently Looking for employment in the Wilmington/Carolina Beach Area

The Gramon Family of School... • Centenary College

Carolina Beach, North Carolina • 69 ☒

More •••

I describe myself as an accomplished, highly qualified, educator of customized science programs with a background in science instruction and special education. I have created hands-on laboratory learning environments for all acade...

See more ˅

### Highlights

**1 Mutual Group**

You and Janice are both in the Special Education Consultants - Law, Policy and Practice group

### Experience


GRAMON

**Special Education Science Teacher**
**The Gramon Family of Schools**
Aug 2012 – Jun 2016 • 3 yrs 11 mos
Fairfield, NJ

Creator, implementer and educator in a newly developed alternative science program with the vision of bringing science to life for those students that may have emotional disturbance, be classified on the autistic spectrum and/or have learning disabilities. Daily instruction with the focus of lessons being hands-on and group oriented were organized by team meetings, weekly lesson plans as well as unit based plans in accordance with NJCCCS. Out-of-district placed students were given the opportunity to complete the necessary science courses required for graduation as well as gain job experience in a sustainable learning environment caring for rescued animals and maintaining an organic vegetable garden.

Media (2)

### People Also Viewed

**Iman Shaban** • 3rd
biology teacher at lady of nazareth college

**bayan badran** • 3rd
Biology teacher at Bunat al ghad school

**Ellie Leamon**
Biology Student at University of Sussex

 **Pia Wrensted Jensen**
Looking for a job as a teacher in biology, chemistry and biotechnology

**Rowaa Alghazo** • 3rd
Biology teacher

**Miss Maha Al-Bahish** • 3rd
Advanced Biology Teacher at R.A.M.S.

**Rosemary Moore**
Biology teacher at Oxford Internationa College of Chengdu (CDOIC)

**William Magnusson**
Visionary Entrepreneur looking for a job..

**Allison Martinelli, PG**
Geologist at AECOM

**Nena Ceja**

### Learn the skills Janice has

**Quality Standards in Customer Service**

Viewers: 20,540

Teaching Techniques: Making
Accessible Learning
Viewers: 5,368

The Neuroscience of Learning
Viewers: 57,013

**Harvest Time**    Student Maintained Organic
Vegetable
Garden

See more course

## BSP Instructor / Special Education Science Teacher

West Morris Mendham Hs
Sep 2010 – Jun 2012 • 1 yr 10 mos
Mendham, NJ

Ads You May Be Interested In    ...

**Attorney Needed ASAP**
Crucial need for local attorney in your
area. View now new cases today.

**Leads for Attorneys**
Need New Legal Clients? Get New Leads
Sent Daily (Recommended)

**Headhunters are searching**
for executives with your skills. Join the
network and be found!

Designed and implemented an in-district behavioral support program with the goal of keeping
special needs students within the public school as to provide the least restrictive learning
environment based on the student's individual needs. Instructed science and math courses based
on NJCCCS with the vision of troubled students and/or those students with learning disabilities,
successfully completing academic courses necessary for graduation with an alternative hands-on
approach to learning. Head of program staff working with special education History and Language
Art teachers recruited into the program.

Media (4)    Next >

**Favorite Class Pets**    Life Sciences

## Special Education Science Teacher

Hackettstown School District
Sep 2009 – Jun 2010 • 10 mos
Hackettstown, NJ

Special Education Biology Teacher for those students most successful in a resource room
educational setting. Small group instruction with the aid of team teachers and support staff
provided the necessary parameters for students to obtain academic success. Position also
involved instructing in a team teaching environment as the in-class support math teacher for
students with an individualized Education Plan in mainstream academic classes.

## Special Education Science Teacher

The Children's Institute, NJ
Sep 2008 – Jun 2009 • 10 mos
Verona, NJ

Instructed science to students ages 14 to 21 in an out-of-district special education program for
students of the autistic spectrum. Lesson plans with records of necessary modifications for
student success were created and implemented in accordance with NJCCCS. Visual and tactile
approaches in teaching the enhancement of the sciences made for a successful academic
environment where students became self-motivated, inquisitive and independent. Student
progress was monitored, labs were developed and staff worked closely as a team to ensure the
safety of each student within a lab type setting.

## Science Teacher

Dover High School
Sep 2011 – Apr 2008 • 1 yr 8 mos

# EXHIBIT J

# Report Card Narratives
## NEW JERSEY DEPARTMENT OF EDUCATION

### WEST MORRIS REGIONAL (27-5660)

Established in 1958, the West Morris Regional High School District operates two schools, West Morris Central High School and West Morris Mendham High School. The district serves the students of five Morris County communities, Chester Borough, Chester Township, Mendham Borough, Mendham Township and Washington Township, in grades 9 through 12. Students from Washington Township attend West Morris Central High School, and students from the Chesters and the Mendhams attend West Morris Mendham High School. The regional district covers an area of just under 100 square miles.

The district's vision stresses the mission of providing students with "an intellectually stimulating experience in a safe environment" that promotes "a shared passion for learning, academic excellence, involved citizenship, personal responsibility and a respect for diversity." This mission has provided the cornerstone for district initiatives aimed at fulfilling the potential of our students as "creative, confident, compassionate and resilient individuals."

Curriculum: The district's curriculum reveals a wide range of offerings in a variety of disciplines. It is digitally organized through the use of Rubicon Atlas. The curriculum sequence allows students of varying ability levels to pursue a rich number of options in the arts, technology, and in the traditional academic areas. Twenty-one Advanced Placement courses are offered, and West Morris is one of only a small number of public high school districts in New Jersey that offer the International Baccalaureate (IB) diploma, a rigorous internationally recognized college preparatory program.

Additionally, West Morris Central and West Morris Mendham High Schools are also candidate schools for the IB Career-Related Certificate. Within this program students can focus on a career pathway of courses in which includes career ethics, community service within the career field, and an internationally externally assessed Senior Reflective Project. IB World Schools share a common philosophy – a commitment to high quality, challenging, international education – that we believe is important for our students. Only 86 schools in the United States and 55 schools world-wide offer this IB Career-Certificate program.

Finally, the West Morris Regional High School District offers Bartley Academy and the Behavioral Support Program to address the needs of disaffected and at-risk students.

West Morris Regional students have excelled academically in a variety of areas. These include consistently significant scores with a number of students becoming National Merit Finalists and Edward J. Bloustein Distinguished Scholars. International Baccalaureate diplomas have been

awarded to 88% of those students attempting the diploma, while Advanced Placement scores have remained consistently high with a majority of students earning a "3" or better on the AP exams. The district Special Education program has been awarded a number of grants and is widely recognized for creating innovative programs stressing inclusion and achievement.

**Professional Development:** The West Morris Regional High School District is committed to a professional development model that provides a continuum of learning opportunities focused on the knowledge, skills and attitudes essential to student learning. The capacity for professional growth, connected to individual, school, and district goals, has been created through systems such as a differentiated supervision evaluation approach and a standing staff development team. Professional development focuses on learning in school through the use of consultants, technology labs and workshops. Out of school professional development consists of specialized training, conferences, and discipline-specific workshops. The West Morris Regional High School District uses *MyLearningPlan* to organize professional development data.

**Grants and Partnerships:** West Morris Regional was the first district in New Jersey to receive a *Teaching American History* grant from the United States Department of Education. This grant totaled over half a million dollars and fostered the strengthening of history instruction throughout our curriculum. It has allowed the district to enter into partnerships with the National Council for History Education, the New York Historical Society, Princeton University, the Gilder Lehrman Institute of American History and the Smithsonian Institution. In addition, the district has enjoyed partnerships with the Frederick Douglass Academy in Harlem, NY and the History High School in Newark, NJ. Recently, the West Morris Regional High School District has partnered with Rutgers University to explore instructional strategies to improve student writing.

A commitment to technology in education has led the district to seek a federal grant that allowed it to purchase laptops for the entire faculty. A partnership with Dell Computers has strengthened this commitment. Teachers' web pages allow the faculty to provide information to their students and parents about the curriculum. The District Supervisor of Technology Integration fosters the experimentation and innovative use of technology relative to instructional strategies. Most recently, the district has acquired Google Apps for Education to promote digital tools in the collaborative learning process. In 2013, the district completed its Strategic Development and the creation of Strategic Objectives including a specific focus on technology infrastructure and training, technology skills and understanding, and programs designed to empower students in preparation for the new, knowledge-based global economy.

The West Morris Regional High School District enjoys a reputation for excellence and a commitment to its students. This begins at the district level and is reinforced in each school and strengthened in each individual class. For more information, you can access the individual high schools' web pages: West Morris Central High School at www.wmchs.org; and West Morris Mendham High School at

**www.wm**mhs.org.  You can also access the district website at www.wmrhsd.org.

**Mr. Mackey** Pendergrast
(908) 879-6404
**mpende**rgrast@wmrhsd.org
**www.wmrhsd.**org

NJ Department of Education | Informational Technology | Report Card Office

**WARSHAW LAW FIRM, LLC**
Julie Warshaw, Esq. (ID# 027931993)
266 King George Road, Suite C2
Warren, New Jersey 07059
Phone (973) 433-2121
Fax (973) 439-1047
jwarshaw@warshawlawfirm.com
Attorneys for Petitioners

| | | |
|---|---|---|
| **F.H. AND M.H. o/b/o J.H.,** | : | OFFICE OF ADMINISTRATIVE LAW |
| **Minor Child,** | : | OAL DOCKET NO.: EDS 10706 |
| | : | AGENCY REFERENCE NO.: 2017____631 |
| Petitioners | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION |
| **CHESTER TOWNSHIP SCHOOL** | : | |
| **DISTRICT BOARD OF** | : | |
| **EDUCATION** | : | **AFFIDAVIT OF PETITIONER, F.H.** |
| | : | |
| Respondent | : | |
| | : | |

RECEIVED

        I, F.H., being duly sworn, upon my oath, depose and say:

1. I am a Petitioner in the above referenced matter. As such, I am fully familiar with the facts of

this matter. I rely upon the recitation of facts set forth in our motion for summary judgment.

2. I wanted to correct some of the facts set forth in Respondent's Affidavit and brief. They are

misleading and not accurate.

3. In reference to paragraph number 9, my daughter did not receive home instruction from West

Morris Central High School ("WMCHS"). Instead, she was at the ICCPC program from October

to December 2016 and during that time she received instruction at the ICCPC center from tutors

provided by ICCPC. Those tutors coordinated with WMCHS.

4. In reference to paragraph number 10, my daughter was not receiving home instruction at that time so there was no plan to continue it. It was expected that her educational needs would be met by her attendance at WMCHS.

5. In reference to paragraph number 13, my daughter was unable to return to that school due to severe anxiety related issues caused by that school being too large a school setting for her.

6. In reference to paragraph number 22, the school district's psychological evaluation report had numerous factual errors that we wanted corrected before we would approve any IEP that was based on those errors. The school district refused to make those corrections. For example, the title page indicated, "Clifton Public Schools" and it referred to my daughter as being hospitalized when she was in an outpatient day program. There were other words that were inaccurate such as stating that my daughter "refused to go back to school" rather than she was unable to go back to school. The report said she had "school avoidance" rather than stating she has school related anxiety. It also stated that my daughter was aggressive and "sometimes threatens to hurt others, which is simply not true. Again, the school district refused to make these corrections.

7. The proposed IEP also contained factual errors as well and we objected to this IEP and wanted it corrected.

8. In reference to paragraph number 24, this is false, The term "Behavioral Support Program" is contained within the IEP and it was used to refer to the proposed placement at the Mendham High School. At no time was "Being Successful Program" ever used or written on any document.

9. Petitioners visited the Behavioral Support Program and did not feel that it was socially, academically, psychologically, or physically appropriate for J.H.

10. It is important to note that the school district listed five individuals who were supposed to have been in attendance at the eligibility meeting in April 2017 and only two (school

psychologist and guidance counselor) were present. We did not waive their attendance and this is against the Parental Rights in Special Education ("PRISE").

11. In reference to paragraph 23, Petitioners NEVER consented to the term "emotionally disturbed" as the classification for J.H. We objected to the language and the school psychologist told us that it was the only term she was permitted to use.

12. In reference to paragraph number 25, these statements are cruel and untrue. My daughter became upset and she began to cry when she was told in that April 2017 IEP meeting that she would have to enter a different large school setting and was being placed in the Behavioral Support Program. The school psychologist then told her over and over again that she should not be upset and that adults do not act like that. J.H. became very upset and Petitioner, M.H. took her out of the room for a break. When they had left, the school psychologist told me and the other child study team members that she thought my daughter was faking her anxiety reactions.

13. After J.H. and Petitioner, M.H. returned to the meeting shortly thereafter. The teacher who started the Behavioral Support Program came into the meeting to explain the program. She used the words "Behavioral Support Program."

14. J.H. and Petitioner, M.H. went to visit the Behavioral Support Program at the Mendham High School and it was determined that it was not appropriate for J.H.

15. In reference to paragraph number 28, at the May 16, 2017 IEP meeting, the Director of Special Services, Dr. David Leigh, himself suggested that we look into the Purnell School. Based on his recommendation, J.H. and Petitioners visited the school. After several more visits to the Purnell School and to other schools, J.H. decided that the Purnell School would be the best place for her.

16. In reference to paragraph number 33, Dr. Schuberth is the expert that was required and paid for by the district. The doctor diagnosed J.H. with a "Specific Learning Disorder...". Yet, later in the same paragraph, the Director of Special Services, although himself not an expert, overturns the diagnosis of the district's expert and says J.H. does not have a learning disability. It is important to note that this current director was not the director who has been involved with meetings with the child study team or eligibility or the independent evaluations. He is new to the district and has not been involved although we suspect that he renamed the Behavioral Support

Program to "Being Successful Program," but this was not the name of the program that was presented to us or included in the proposed IEP.

17. In reference to paragraph number 35, as of August 17, 2017, almost a year from when my daughter's issues developed, she had been attending therapy continuously during that time and progress had been made. The "unprompted" letter from J.H.'s therapist was intended to be an update on J.H.'s then current status relative to what it was the previous year.

18. In reference to paragraph number 41, again, the school district ignores Dr. Schuberth's professional diagnosis of "Specific Learning Disorder..."

19. Based on the astounding positive progress that my daughter has made at the Purnell School this year, academically and emotionally, we respectfully request that this Court grant our motion for summary judgment, Order that the school district reimburse us for the costs of the Purnell School, and to require the school district to place J.H. at the Purnell School as an out of district placement until such time as she is expected to graduate high school and to declare us the prevailing party.

On this 9th day of December 2017, I declare under penalty of perjury under the laws of the

United States of American that the foregoing information is true and correct.

By: _____

F.H., Petitioner

Dated: December 9, 2017

STATE OF NEW JERSEY:
         SS:
COUNTY OF _____:

      BE IT REMEMBERED, that on this ____ day of _____, 2017,

before me, the subscriber, personally appeared _____, who, I am satisfied, is

the person named in and who executed the within instrument, and thereupon she acknowledged

that she signed, sealed, and delivered the same as her own voluntary act and deed for the uses

and purposes therein expressed.      _____

NOTARY PUBLIC

On this 9th day of December 2017, I declare under penalty of perjury under the laws of the United States of American that the foregoing information is true and correct.

By: ███████████████████████

F.H., Petitioner

Dated: December 9, 2017

STATE OF NEW JERSEY:
    SS:
COUNTY OF Hunterdon

BE IT REMEMBERED, that on this _11_ day of _December_ 2017,

before me, the subscriber, personally appeared ███████████████ who, I am satisfied, is

the person named in and who executed the within instrument, and thereupon she acknowledged

that she signed, sealed, and delivered the same as her own voluntary act and deed for the uses

and purposes therein expressed.

NOTARY PUBLIC

**ANN M ANDERSON**
Notary Public
State of New Jersey
My Commission Expires April 30, 2018

**WARSHAW LAW FIRM, LLC**
Julie Warshaw, Esq. (ID# 027931993)
266 King George Road, Suite C2
Warren, New Jersey 07059
Phone (973) 433-2121
Fax (973) 439-1047
jwarshaw@warshawlawfirm.com
Attorneys for Petitioners

| | | |
|---|---|---|
| **F.H. AND M.H. o/b/o J.H.,** | : | OFFICE OF ADMINISTRATIVE LAW |
| **Minor Child,** | : | OAL DOCKET NO.: EDS 10706 2017 |
| | : | AGENCY REFERENCE NO.: 2017 2631 |
| Petitioners | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION |
| **CHESTER TOWNSHIP SCHOOL** | : | |
| **DISTRICT BOARD OF** | : | |
| **EDUCATION** | : | |
| | : | |
| Respondent | : | |
| | : | |

RECEIVED

STATE OF NEW JERSEY
OFFICE OF ADMIN. LAW
2017 DEC 14 P 1:50

**PETITIONERS' REPLY IN SUPPORT OF THE MOTION FOR SUMMARY DECISION**

On the Brief:

Julie Warshaw, Esq.
Dated: December 9, 2017

# TABLE OF CONTENTS

Table of Authorities     3

Statement of Facts     4

Legal Argument     4

1. Summary Decision is Appropriate     4

II. J.H. Should Not Be Classified As Emotionally Disturbed     4

     A. <u>J.H does not meet the criteria for classification of Emotionally Disturbed</u>    5

     B. <u>Petitioners did not consent to a classification of Emotionally Disturbed</u>    8

     C. <u>Respondent Offers No Proof to Dispute the Classification of Specific Learning Disability</u>    9

III. The Behavioral Support Program Is Not Appropriate For J.H.     10

IV. The Purnell School Was Not Predetermined By Petitioners     13

V. The School District Fialed To Provide J.H. With An IEP At The Beginning Of The Year     14

VI. Respondent Fails To Address The Other Issues Raised In Petitioners' Motion     17

Conclusion     17

## TABLE OF AUTHORITIES

Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186 (2nd Cir. 2005)    14

DM v. New Jersey Dept. of Educ., 801 F. 3d 205 (3d Cir 2015)    14

Drinker v. Colonial Sch. Dist., 78 F.3d 859 (3d Cir. 1996)    16, 17

FRY v. Napoleon Community Schs., 788 F.3d 622 (6th Cir. 2015)    14

G.R. o/b/o L.R. v. Tewksbury Town. Bd. of Educ., OAL DKT. No. EDS2189-02
(August 22, 2002)    5

Springer v. Fairfax County Schoolboard, 134 F.3d 659 (4th Cir. 1998)    5

Thomas v. Cincinnati Bd. of Educ, 918 F.2d 618 (6th Cir. 1990)    17

Valentino C. v. Sch. Dist of Phila., 2004 U.S. Dist Lexis 2114, *17
(E.D.Pa. January 30, 2004)    16

**CODES PROVISIONS**
N.J.A.C. 1:1-12.5    4

N.J.A.C. 6A:14-2.3    15

N.J.A.C. § 6A:14-3.5(c)(5)    5

N.J.A.C. § 6A:14-3.5(c)(12)(i)    9

20 U.S.C. §§ 1414(b)(1) through 1414(c)(5)    15

20 U.S.C. §§ 1412(a)(4)    14

20 U.S.C. Section 1414(d)(2)(A)    14

20 U.S.C.) § 1415(j)    16

20 U.S.C. § 1412(a)(1)(A)    14

34 CFR § 300.301    16

34 C.F.R. § 300.323    14

34 C.F.R. § 300.320    15

34 C.F.R. Section 300.7 (c)(9)    7

## STATEMENT OF FACTS

In an effort for judicial efficiency, Petitioners shall rely upon their extensive recitation of the facts and arguments in this case set forth in their original motion for summary judgment.

Petitioners hereby submit this Reply to Respondent's Opposition to Petitioners' Motion for Summary Decision and respectfully state that Respondent has failed to demonstrate (i) that a diagnosis of "Emotionally Disturbed" is appropriate for J.H.; (ii) that J.H. should not be classified as "Specific Learning Disability;" (iii) that the BSP is the appropriate placement for J.H and (iv) that Respondent did not violate the provisions of IDEA when they placed J.H. back into the general education setting beginning September 2017.  For the reasons discussed below as well as in Petitioner's and Petitioners' counsel's attached Affidavits, this Court should grant Petitioners Motion for Summary Decision.

## LEGAL ARGUMENT

### I.    SUMMARY DECISION IS APPROPRIATE

Summary Decision should be granted when the evidence demonstrates there is no issue of material fact, and the moving party is entitled to prevail as a matter of law. N.J.A.C. 1:1-12.5. In order to prevail in opposing a motion for summary decision, the non-moving party must demonstrate a genuine issue of material fact exists, of which can only be resolved in an evidentiary hearing.  Here, Respondent has failed to demonstrate that a genuine issue of material fact exists. As discussed below, they have offered no evidence to demonstrate that there are any facts in dispute except for the mere assertion that they disagree with the facts. Creative lawyering went so far as to portray outright falsehoods as facts to this Court. As such, Petitioners motion should be granted.

### II.    J.H. SHOULD NOT BE CLASSIFIED AS EMOTIONALLY DISTURBED

4

## A. **J.H does not meet the criteria for classification of Emotionally Disturbed**

Petitioners do not dispute that J.H. is eligible for special education and related services, and

that they agreed to her needing special education and related services. However, Petitioners did

not agree to the term "emotionally disturbed" and they did not agree to the placement proposed.

Petitioners argue that the School District incorrectly classified J.H. as emotionally disturbed in

its May 2017 IEP. A classification of emotionally disturbed means:

> A condition exhibiting one or more of the following characteristics over a long
> period of time and to a marked degree that adversely affects a student's
> educational performance due to:
> i. An inability to learn that cannot be explained by intellectual, sensory or health
> factors;
> ii. An inability to build or maintain satisfactory interpersonal relationships with
> peers and teachers;
> iii. Inappropriate types of behaviors or feelings under normal circumstances;
> iv. A general pervasive mood of unhappiness or depression; or
> v. A tendency to develop physical symptoms or fears associated with personal or
> school problems.

N.J.A.C. § 6A:14-3.5(c)(5). Thus, in order to qualify for special education services as

emotionally disturbed, a student must demonstrate (a) one of the five listed symptoms, (b) over a

long period of time, (c) to marked degree and (d) that this must adversely affect the student's

educational performance. See id; see also, Springer v. Fairfax County Schoolboard, 134 F.3d

659, 663 (4th Cir. 1998), G.R. o/b/o L.R. v. Tewksbury Town. Bd. of Educ., OAL DKT. No.

EDS2189-02 pg. 10 (August 22, 2002).

A review of the pertinent facts as well as the reports from ICPC, and independent

evaluators, Dr. Schuberth and Dr. Platt, support Petitioners' argument that J.H. does not meet the

criteria for a classification of emotionally disturbed. In particular, Dr. Schuberth indicated that

J.H. met the criteria for the diagnosis of Specific Learning Disorder as well as Major Depressive

Disorder, Recurrent Episode and Generalized Anxiety Disorder. See Schuberth Report dated

August 21, 2017.  J.H.'s therapist, Melissa Dolgos noted that in a small group setting, J.H. was

able to manage her anxiety and that she excels better when people around her are mature and

college bound.  See Dolgos Report dated August 17, 2017.

Further, J.H. does not exhibit one of the five marked symptoms contained in the

definition of Emotionally Disturbed.  Even, if for argument's sake, J.H. exhibits one of the five

marked symptoms, she does not meet the remaining requirements set forth in the definition: that

this behavior occurs over a long period of time, to marked degree and that this must adversely

affect the student's educational performance. J.H. had an undiagnosed learning disability in math

and an acute sensitivity to sounds, which the school district missed under their Child Find

obligations. (See Dr. Schuberth's report, pages 13-15) According to the definition of emotionally

disturbed, a person can only be diagnosed as such if they have "An inability to learn that cannot

be explained by intellectual, sensory or health factors." Here, there were intellectual and sensory

factors that were causing and significantly contributing to J.H.'s inability to learn in a large

school with large general education classes and noisy crowded hallways. This learning

environment that J.H. was in and the one that the district wanted to place her in in the Behavioral

Support Program at the West Morris Mendham High School, were both large schools, many

students, noisy hallways, with large general education classes. This type of learning environment

was not appropriate to meet J.H.'s needs and that is why she was not learning or would not have

been able to learn in the Behavioral Support Program, along with the other factors as to why this

program would not have been appropriate for J.H. Therefore, J.H. has never meet the criteria for

being classified as emotionally disturbed.

6

Further, J.H. did in fact meet the criteria of Other Health Impaired because she had an acute sensitivity to sounds, causing her to become anxious, which affected her ability to learn. The Individuals with Disabilities Education Act ("IDEA") defines Other Health Impaired as:

> Having limited strength, vitality, or alertness, **including a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment,** that— (a) is due to chronic or acute health problems such as asthma, attention deficit disorder or attention deficit hyperactivity disorder, diabetes, epilepsy, a heart condition, hemophilia, lead poisoning, leukemia, nephritis [a kidney disorder], rheumatic fever, sickle cell anemia, and Tourette syndrome; and (b) adversely affects a child's educational performance. (emphasis added) See 34 C.F.R. Section 300.7 (c)(9)

It is important to note that Dr. Schuberth's independent evaluation report specifically recommends that J.H. be further evaluated as to the underlying cause of her extreme sensitivity to sounds and noises.  (See Dr. Schuberth's report, page 13) Moreover, due to J.H.'s underlying generalized anxiety, she had a "heightened alertness to environmental stimuli that results in limited alertness with respect to the educational environment." Therefore, she met the definition of Other Health Impaired.

It is also important to note that Dr. Schuberth diagnosed J.H. with a Specific Learning Disability. Although the actual name is a Specific Learning Disorder, that is from the language set forth in the DSMIII under the definition of a Specific Learning Disability. The wording does not change the fact that it is a Specific Learning Disability as per the DSSMIII and the IDEA and therefore, once the district received Dr. Schuberth's independent report, the child study team should have considered the diagnosis and changed her classification to Specific Learning Disability or Other Health Impaired to encompass her extreme sensitivity to sound and noise and determined an appropriate placement for her based on one of these classifications. The district did not do that. Even after Dr. Schuberth's and Dr. Platt's independent evaluation reports were provided to the district, the district still failed to propose a different classification or placement

for J.H. Instead, the district sent an email to Petitioners, after the 2017-2018 school year started, that they were going to consider her a general education student with her old outdated Section 504 Plan, which called for home instruction, to be implemented in her school placement.

Petitioners placed J.H. at the Purnell School where she has been attending classes since September 2017. J.H. has been thriving at the Purnell School and she her school related anxiety is under control and she is performing well academically as she is getting all "A" grades, she has made friends, her anxiety is under control, and she sees the counselor there each week for support. J.H.'s school related anxiety was exacerbated by the setting at West Morris Public School. It was not an indication that she is emotionally disturbed. Once she was enrolled in a school with a different setting that met her individual needs as a student, her anxiety was better managed and she was able to thrive. If J.H. was truly emotionally disturbed, she would not demonstrate the ability to thrive academically in another school environment.

### B. **Petitioners did not consent to a classification of Emotionally Disturbed**

Petitioners did not agree to classify J.H. as Emotionally Disturbed. Respondent argues that Petitioners consented to the classification because they signed the Eligibility Determination Report on April 6, 2017. Petitioners only consented to J.H. being eligible for special education and related services. In fact, Petitioners objected to the language "emotionally disturbed" being included in the eligibility determination report and were informed that this was the only term the psychologist was permitted to use. One can easily imagine that given the situation, Petitioners were overwhelmed, disheartened and frustrated. Clearly, Petitioners were not aware that by signing the report they were agreeing that their daughter was emotionally disturbed or they would not have done so. Petitioners also disagreed with the factual inaccuracies and terms used to describe their daughter in the school district evaluation reports, specifically in the

psychological report, beginning with the heading which read, "Clifton Public School" and that

J.H. was in a hospitalization program rather than an out-patient partial hospitalization program.

The district refused to correct said inaccuracies, descriptions, and mischaracterizations.

### C. Respondent Offers No Proof to Dispute the Classification of Specific Learning Disability

Respondent is attempting to dispute a diagnosis of Specific Learning Disability

without offering any proof to suggest otherwise.  In May 2017, Petitioners requested an

independent psychiatric, psychological, and educational assessment.  The School District

approved this request and in July and August 2017, an independent psycho-educational

evaluation of J.H. was conducted by Dr. Natalie Schuberth, Psy.D., BCBA-D.  The School

District does not dispute that Dr. Schuberth's report diagnoses J.H. with Specific Learning

Disorder with impairment in mathematics and an extreme sensitivity to sounds and noise.  See

Affidavit of Michael Reinknecht ¶ 33.   Instead, the School District merely states that despite

such diagnosis, J.H. does not meet the criteria for "Specific Learning Disability."  See id.

Pursuant to N.J.A.C. § 6A:14-3.5(c)(12)(i), a "specific learning disability can be

determined when a sever discrepancy is found between the student's current achievement and

intellectual ability in one or more areas….(5) Mathematical calculation; (6) Mathematical

problem solving."  The School District offers no evidence to suggest that Dr. Schuberth's report

or diagnosis is incorrect, nor does the School District offer evidence to suggest that J.H. does not

have a "Specific Learning Disability" as defined by the DSMIII, the IDEA, or N.J.A.C. § 6A:14-

3.5(c)(12).  Instead the School District relies on the same report it attempts to refute as proof of

its inaccuracy.

Further, the independent psychiatric report from Ellen Platt, D.O., provides additional

support for the diagnosis of Specific Learning Disorder as well and that J.H. also meets the

criteria for Major Depressive Disorder and General Anxiety Disorder. The School District has

offered no evidence to demonstrate that this report is inaccurate or should not be relied upon. It

is important to note, however, that neither Dr. Schuberth nor Dr. Platt diagnosed J.H. as

"Emotionally Disturbed." Without further evidence to contradict their diagnoses, the School

District must accept their reports as accurate and change J.H.'s classification from "Emotionally

Disturbed" to "Specific Learning Disability" or "Other Health Impaired." The unsupported

classification of Emotionally Disturbed by the district was not correct and did not accurately

reflect the individual diagnosis of J.H. and therefore, Petitioners are entitled to summary

judgment as the district has not sustained their burden of proof, as there are no genuine issues of

material fact regarding the inappropriate and incorrect classification by the district.

## III.    THE BEHAVIORAL SUPPORT PROGRAM IS NOT APPROPRIATE FOR J.H.

Regardless of the diagnosis agreed upon by Petitioners, Respondent and the independent

evaluators, the Mendham High School BSP is not the appropriate placement for J.H. Petitioners

did not agree to a diagnosis of Emotionally Disturbed, nor did they agree to placement in the

BSP. The BSP, offered to Petitioners as the "Behavioral Support Program" in May 2017, and

now being referred to as the Being Successful Program by the district's counsel, is a behavioral

program that focuses on "strengthening student behaviors such as responsibility for one's self

and school assignments, socialization skills, and self-confidence." See Reinknecht Aff. Exhibit

N pg. 2 (Description of the Program). The BSP is a point based incentive program that rewards

students for showing up on time, remaining alert, and participating. See id. The BSP does not

cater to students who are on a college track because many advanced classes are not offered all of

the time. If students want to be on a college track, they need to take classes in the larger general

education setting. This is a direct contradiction of what J.H. needs.

As for the actual program contained within the IEP that was offered to J.H. at the April 6, 2017 eligibility determination meeting and again at the May 16, 2017 IEP meeting state that the program is called the Behavioral Support Program. In fact, it says "Behavioral Support Program" on pages 10, 13, 16, (page 17 is missing in Respondent's Exhibit O), 18, 19 and 20 of the proposed IEP. Respondent's counsel asserts on page 16 of her brief that these are just "typographical error" and that the actual name of the program is "Being Successful Program." Counsel offers a brochure for that name in Exhibit N but there is no date of that brochure but it does describe in detail the reward and punishment system for behaviors and that the students have do their school work in order to earn privileges. J.H. never had an issue doing her school work during home instruction and she certainly does not have any issues with doing her school work at the Purnell School. However, counsel's representation that the Behavioral Support Program in several places in the IEP were merely typographical errors is a blatant falsehood. In fact, the BSP program was referred to as the Behavioral Support Program for many years as I suspect it was just renamed for this occasion. If it was actually called the Being Successful Program then why is it that in Christina Cifalino's School Administrator Portfolio of "A Day with the Director of Student Support Services" dated July 2017 is it referred to by Dr. David Leigh, the founder of the program and the former Director of Special Services as the Behavioral Support Program? **(See Exhibit H)** Further, if the program at the time that it was offered to Petitioners was called the Being Successful Program, then why is it that Janice Robbie's Linkedin account refers to her experience from September 2010-June 2012 at the West Morris Mendham HS as a "BSP Instructor/Special Education Science Teacher in the "in-district behavioral support program?" **(See Exhibit I)** Further, if the program was actually called the Being Successful Program at the time that Petitioners' were provided the IEP, why is it that the

"Report Card Narratives" of the New Jersey Department of Education for West Morris Regional

school district states, "the West Morris Regional High School District offers Bartley Academy

and the Behavioral Support Program to address the needs of disaffected and at-risk students?"

**(See Exhibit J)** Petitioners submit that the representations of Respondent's counsel that the

references to "Behavioral Support Program" in the April 6, 2017 IEP are blatant falsehoods and

go far beyond creative lawyering. Therefore, Petitioners respectfully request that their motion for

summary decision be granted, that the district be Ordered to reimburse Petitioners and pay for

the unilateral placement, and that Petitioners be declared the prevailing party.

　　　Not only is the name of the program incorrect, the entire premise of the program is

incorrect and inappropriate for J.H. She was never a behavior issue. She had anxiety related to

the large school and the overwhelming noise at that school. She was on a college track and

needed to take advanced general education classes, which were not offered in the Behavioral

Support Program and that even Dr. David Leigh, the former Director of Special Services

indicated that if J.H. was in the program, she would have to go to the general education classes

through crowded and noisy hallways to take the classes she needed to go to college. She would

also have to take Gym class on line to avoid the large general education gym classes in the

school. She would be in a self-contained one classroom in the middle of the school, with students

of varying ages, grade levels, and behavior issues. This was not the appropriate environment for

her to learn and although there was access to guidance counselors they were not there all of the

time and the district called it a therapeutic setting and that is not what J.H. needed to meet her

needs. The report from J.H.'s therapist, Melissa Dolgos at ICCPC confirms that J.H. "excels

better when people around her are mature and college bound rather than peers who have

behavioral issues." **(See Exhibit E)** Ms. Dolgos indicates that J.H. has never had any negative

behaviors and that she is distracted when others around her have behavioral issues. From this, it follows that the BSP is not the best placement for J.H. The behavior component of the program, the incentive and rewards based on behavior do not adequately address the individual needs that J.H. has.

Further, J.H.'s needs were also outlined specifically by independent evaluators, Dr. Natalie Schuberth and Dr. Ellen Platt, both of whose reports were ignored by the district and instead the district ignored the eligibility determination, failed to find an appropriate placement for her by the start of the 2017-2018 school year, and they unilaterally determined that they would treat her as a general education student with an old outdated 504 Plan that called for home instruction, but the district argued that she was not entitled to a home instruction stay put program. Petitioners' motion for summary judgment must be granted as there are no genuine issues of material fact to support Respondent's position.

## IV. THE PURNELL SCHOOL WAS NOT PREDETERMINED BY PETITIONERS

Respondent's counsel has asserted that Petitioners predetermined that they wanted J.H. to attend the Purnell School. First, predetermination does not apply to the parents only to the school district in predetermining an IEP. Second, the Respondents admit in paragraph 13 of their brief that as of December 23, 2016, Petitioners requested that the district consider sending J.H. to the Fusion Academy, which was rejected by the district because they felt she needed a therapeutic learning environment.

Moreover, at the May 16, 2017, Dr. Leigh, the former Director of Special Services at that time, was the one who suggested that the family look at Purnell School for J.H. At his suggestion, J.H. visited the school and after consultation with her therapist, felt that it would be an appropriate place for both her academic and social needs. An out-of-district placement at the

Purnell School, with small classes, an appropriate peer group, a full-time counselor on staff and a

three day a week psychologist, would allow J.H. to meet and develop friendships as she

continues with her therapeutic component at ICCPC where she has trusted therapists and

appropriate services. The Purnell School has allowed J.H. to thrive in an environment where she

can develop friendships and address her anxiety.  Respondent does not provide factual support

for dismissing the report from J.H.'s therapist. Instead, Respondent argues that her report was

created for the "purposes of litigation" and should not be relied upon.  See Opposition pg. 13.

The report by Ms. Dolgos was submitted to the district as an update of J.H.'s condition. Even if it

was submitted for litigation, which it was not, Respondent's counsel's assertions are offensive,

without support and an attempt to attack the character of Ms. Dolgos instead of offering factual

support for their assertions.  Again, Respondents cannot meet their burden of proof and

Petitioners' motion for summary judgment should be granted.

## V. THE SCHOOL DISTRICT FAILED TO PROVIDE J.H. WITH AN IEP AT THE BEGINNING OF THE YEAR

Under IDEA, a State must provide a free appropriate public education to all students with

intellectual disabilities.  See 20 U.S.C. § 1412(a)(1)(A).  In order to satisfy the procedural

requirements of the IDEA, an individualized education program — frequently abbreviated as

"IEP" — must be created and in effect for each child with disabilities by the beginning of each

school year.  See 20 U.S.C. §§ 1412(a)(4), 1414(d)(2)(A). See also DM v. New Jersey Dept. of

Educ., 801 F. 3d 205, 209 (3d Cir 2015); FRY v. Napoleon Community Schs., 788 F.3d 622, 625

(6th Cir. 2015); Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 194 (2nd Cir. 2005); see also 34

CFR § 300.323 which states that "[a]t the beginning of each school year, each public agency

14

must have in effect, for each child with a disability within its jurisdiction, an IEP, as defined in §
300.320."

The School District violated the procedural requirements of the IDEA because J.H. did
not have an IEP in effect the beginning of the school year. Instead, on September 11, 2017, days
after the school year began, the School District sent Petitioners an email stating that the district
de-classified J.H. by now considering her a general education student with a 504 Plan that was
drafted in December 2016 and was not complete or up to date. This change was done in direct
violation of the provisions of the IDEA which indicates that notice shall be provided to the
parents of a child with a disability before any evaluation procedures, including a change in
eligibility. See 20 U.S.C. §§ 1414(b)(1) through 1414(c)(5).

Further, Respondent cannot rely upon N.J.A.C. 6A:14-2.3 to justify placing J.H. back
into the general education program without any support. Petitioners consented to J.H. being
found eligible for special education services but they never consented to the implementation of
the proposed initial IEP on May 16, 2017 because they disagreed with the classification and
placement option being presented at the meeting. At no time did Petitioners disagree that J.H.
qualified for special education services. Petitioners requested an independent evaluation of J.H.
shortly after the initial IEP conference in May. The parties participated in unsuccessful
mediation on July 27, 2017, at which Petitioners indicated that they would start looking at
schools and notified the district that if the matter could not be amicably resolved, then the
Petitioners would seek an out of district placement for J.H. and seek reimbursement for such
unilateral placement from the district. Petitioners did not even apply to the Purnell School until
August 2017.

Although the School District wishes to argue that no program could be implemented so they continued J.H.'s 504 Plan upon her return to school, this 504 Plan was outdated and was not the last service that J.H. received from the School District. J.H. had been placed on home instruction by the school district from December 2016-June 2017, the stay put placement referred to in the Section 504 Plan dated December 2016. The School District had an obligation to continue these services until an agreed upon IEP was in place. Respondent knew that J.H. could not manage in the general education classes because she had been in the partial hospitalization ICCPC program and they even tried to classify her as Emotionally Disturbed. Further, Respondent knew that J.H. did not have a behavior issue and that her school related anxiety was preventing her from attending classes. The school district was aware that J.H. was unable to return to school because she had severe anxiety issues related to being in a large school setting. Regardless of whether or not Petitioners signed the initial IEP, Respondent had a responsibility to determine her educational needs and act accordingly. If the parties could not agree on an educational placement, the district was responsible for providing J.H. with her stay put placement of home instruction. The district failed to do so. See generally, 34 CFR § 300.301. See also Petitioner's counsel's letter dated August 26, 2017 attached as part of Exhibit E of their motion describing the contradictory arguments to the Court by Respondent's counsel as to why the district failed to provide stay put for J.H.

Moreover, it can be argued that the School District violated the stay put provisions by putting J.H. in the general education setting. The Third Circuit has noted that "because the goal of (20 U.S.C.) § 1415(j) is to maintain the status quo, if an IEP has already been implemented, that IEP would be the proper placement." See Valentino C. v. Sch. Dist of Phila., 2004 U.S. Dist Lexis 2114, *17 (E.D.Pa. January 30, 2004) (citing Drinker v. Colonial Sch. Dist., 78 F.3d 859,

867 (3d Cir. 1996).   However, when the "dispute arises *before* any IEP has been implemented, the current educational placement will be the operative placement under which the child is actually receiving instruction at the time the dispute arises." Drinker, at 867.  (citing Thomas v. Cincinnati Bd. of Educ, 918 F.2d 618, 625-26 (6th Cir. 1990) (finding that although no IEP was implemented, child was receiving five hours of home instruction per week and determining that was the current educational placement.) Id. Thus, the School District should have kept J.H. in the setting at which she was receiving instruction at the time of the dispute, which would have been home instruction. Respondents cannot sustain their burden of proof that genuine issues of fact exist. Petitioners are entitled to summary judgment and to be declared the prevailing party and the relief requested should be granted.

## VI. RESPONDENT FAILS TO ADDRESS THE OTHER ISSUES RAISED IN PETITIONERS' MOTION

Respondent failed to address the arguments set forth in Petitioners' motion for summary judgment regarding the standard of review, their failure to comply with the IDEA requirements and their failures to provide J.H. with a free appropriate public education in the least restrictive environment, two independent experts' findings, the definitions of Other Health Impaired and Specific Learning Disability, and the stay put arguments raised by Petitioners in their motion for summary judgment. Therefore, Respondents cannot sustain their burden of proof with regard to these issues. Petitioners have sustained their burden of proof and therefore, are entitled to summary judgment and to be declared the prevailing party.

## CONCLUSION

For the foregoing reasons set forth above, Petitioners respectfully request that their motion for summary decision be granted.

Respectfully Submitted,

17

By: _____
       Julie Warshaw, Esq.

Dated: December 9, 2017

**Warshaw Law Firm, LLC**
Julie Warshaw, Esq. (ID# 027931993)
266 King George Road, Suite C2
Warren, New Jersey 07059
Phone (973) 433-2121
Fax (973) 439-1047
Attorneys for Petitioner

| | |
|---|---|
| F.H. and M.M. o/b/o J.H., MINOR CHILD  : | STATE OF NEW JERSEY |
| : | OFFICE OF ADMINISTRATIVE LAW |
| : | |
| Petitioners  : | |
| : | |
| v.  : | AGENCY NO.: 2017-26311 |
| : | DOCKET NO.: EDS 10706-2017 N |
| WEST MORRIS REGIONAL  : | |
| HIGH SCHOOL DISTRICT  : | |
| BOARD OF EDUCATION  : | |
| : | CERTIFICATION OF SERVICE |
| Respondent  : | |
| : | |

I, Julie Warshaw, do hereby certify as follows:

1. On December 12, 2017, I personally sent by email and Priority Mail a copy of Petitioners' Reply brief, Petitioner's Affidavit, Counsel's Certification with Exhibits, and a Certification of Service to Jodi Howlett, Esq.

2. I further certify that on December 12, 2017, I personally sent by Priority Mail the original and one copy of Petitioners' Reply brief, Petitioner's Affidavit, Counsel's Certification with Exhibits, and a Certification of Service to Judge Betancourt.

CERTIFICATION

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By: _____
Julie Warshaw, Esq.

Dated: December 12 2017