# CLEARY | GIACOBBE | ALFIERI | JACOBS LLC

JODI S. HOWLETT, Partner
jhowlett@cgajlaw.com

Reply to: Matawan Office

February 12, 2018

**Via E-Mail (Diana.Batista@oal.nj.gov) and NJLS**
Honorable Thomas R. Betancourt, ALJ
Office of Administrative Law
State of New Jersey
33 Washington Street
Newark, New Jersey 07102

Re:   F.H. and M.H. o/b/o J.H. v. West Morris Regional High School District Board of Education
      OAL Dkt. No.: EDS 10706-2017
      Agency Ref. No.: 2017-26311

## RESPONDENT'S CROSS-PETITION FOR DUE PROCESS

Dear Judge Betancourt:

This firm represents Respondent, West Morris Regional Board of Education ("Board" or "District" or "Respondent") in the above-referenced matter. Pursuant to N.J.A.C. 6A:14-2.7(c), enclosed please find an original and one copy of Respondent's Cross-Petition for Due Process. Petitioner's counsel, Julie Warshaw, Esq., has also been served. Since this matter has already been assigned to the Office of Administrative Law, the Board has not filed the within Cross-Petition for Due Process to OSEP.

## RESPONDENT'S CONTENTIONS
## AND INFORMATION REQUIRED BY N.J.A.C. 6A:14-2.7(c)

955 State Route 34
Suite 200
Matawan, NJ 07747
Tel 732 583-7474
Fax 732 290-0753

169 Ramapo Valley Road
Upper Level 105
Oakland, NJ 07436
Tel 973 845-6700
Fax 201 644-7601

www.cgajlaw.com

1.  J.H. is a sixteen (16) year old female who resides in Long Valley, New Jersey with her parents, F.H. and M.H. ("Parents" or "Petitioners").

2.  Respondent West Morris Regional High School District ("Respondent" or "District") is the local education agency charged with providing J.H. with a free appropriate public education.

3.  In the 2015-2016 school year, J.H. attended ninth (9th) grade as a general education student at West Morris Central High School in Respondent's school district.

4.  On October 10, 2016, Petitioner M.H. sent correspondence to the District advising that J.H. was suffering from anxiety and depression and requested a "home tutor."

5.  Subsequently, Parents submitted a letter from J.H.'s pediatrician, Melissa M. Libert, C.O., FAAP, indicating that "it would be best" if J.H. did not attend school and had home bound instruction.

6.  On October 20, 2016, the District received a facsimile from the Immediate Care Children's Psychiatric Center ("ICCPC") stating that, on October 17, 2016, J.H. had been admitted to the partial care program. The letter further stated that J.H. was be expected to attend the program for two (2) weeks, at which time she would be reassessed in regards to returning to school.

7.  On October 15, 2016, Petitioner M.H. sent correspondence to the District advising that J.H. would be admitted to ICCPC's outpatient facility in Parsippany, New Jersey, where "she will attend therapy five days a week for two to four weeks."

8.  On or about October 24, 2016, the District commenced home instruction services to J.H.

9.  On December 2, 2016, the District received correspondence from ICCPC indicating that J.H. had been medically-cleared to return to school on December 7, 2016. The letter states that the "plan is for [J.H.] to attend West Morris Regional High School for half days... and then attend ICCPC from

2

12pm to 2:30pm" and continue to receive homebound instruction. The letter also recommended J.H. receive a 504 Plan "due to extreme anxiety regarding school."

10. On or about December 7, 2016, the District and Parents attended a 504 Accommodation Plan meeting. The 504 Plan provides for the following accommodations: extended time on quizzes and tests; assessments in a private setting; a "walking pass" to take breaks from class when she is feeling a high level of anxiety; access to the "Zen Zone" when it is available for meditation, deep breathing, and mindfulness exercises to help ease her anxiety; and access to a counselor when necessary.

11. On December 7, and December 8, 2016, J.H. attended West Morris Central High School. After attending the two (2) half days, J.H. refused to return.

12. On December 23, 2016, Parents asked the District to send J.H. to an out-of-district placement at Fusion Academy, located in Morristown, New Jersey.

13. On or about January 3, 2017, J.H. was referred by Joseph Cusack, J.H.'s guidance counselor, to the District's Child Study Team ("CST") for an initial evaluation to determine J.H.'s eligibility for special education and related services in suspected category of emotional disturbance, due to J.H.'s diagnoses of major depressive disorder and generalized anxiety disorder. Mr. Cusack notes that, "[Parents] explored private schools setting but have opted to keep [J.H.] at WMC and pursue the CST evaluation."

14. On January 4, 2017, the District received a letter from Parents stating that, "[J.H.] has been diagnosed with depression and severe anxiety." The letter requests a CST evaluation and IEP.

15. On January 6, 2017, the District received a letter from ICCPC recommending that J.H. be provided with an Individualized Education Program ("IEP"). The letter stated that J.H. had been diagnosed with (i) major depressive disorder, recurrent, severe, without psychotic features; and (ii)

3

generalized anxiety disorder." The letter further stated that, "[i]n order for [J.H.] to continue working her anxiety and depression as well as have the ability to attend school, she will need a smaller and more therapeutic environment for school," and "would greatly benefit from more time in a therapeutic setting to continue progressing with her anxiety, depression and function in school."

16. At an Identification Meeting on January 9, 2017, Parents consented to the District conducting a psychological and social assessments. Additionally, the District agreed to accept a forthcoming psychiatric evaluation completed by ICPCC. All evaluations were completed and submitted to parents within legal timelines.

17. On January 18, 2017, the District conducted a social assessment of J.H. The social assessment report indicates that, "by September of 10th grade [J.H.] was depressed, anxious and suicidal."

18. On January 19, 2017, on behalf of the District, Sherry J. Wilk, M.A., Certified School Psychologist conducted a psychological assessment of J.H. The psychological assessment report indicates that J.H.'s full-scale IQ is 104, and that all of J.H.'s composite index scores (performance scores) are within 1.5 standard deviation of her IQ (potential score). Ms. Wilk's report also indicates that J.H. "struggles with anxiety and depression, and has a fear of academic failure."

19. On March 15, 2017, Shankar Srinivasan, M.D., of the Immediate Care Psychiatric Center ("ICPC") conducted a psychiatric assessment of J.H. In his report, Dr. Srinivasan diagnosed J.H. with (i) major depression recurrent, and (ii) panic disorder. Dr. Srinivasan also states that, "[J.H.]'s psychiatric issues, specifically, pervasive mood disturbances, avoidance behaviors even when not under stress, along with irrational fears and anxiety secondary to school issues, all collectively at this time are directly impacting learning and ability to maintain and build satisfactory interpersonal relationships."

20. The evaluations that were conducted as part of the initial evaluation were compliant with applicable New Jersey and Federal regulations, were performed by appropriately qualified professionals, and adequately addressed J.H.'s areas of need. On April 6, 2017, Parents and the District attended an Eligibility Determination Meeting. At the meeting, the CST discussed the social, psychological, and psychiatric assessments and determined J.H. to be eligible for special education and related services under the category of "Emotionally Disturbed." Parents did not question the validity or the findings of the evaluations completed by the District.

21. At the Eligibility Determination meeting, Parents consented to the classification of "Emotionally Disturbed" and executed the Eligibility Determination Report.

22. Following the eligibility determination, the CST commenced discussing a proposed program and placement for J.H. in the Being Successful Program at West Morris Mendham High School ("Mendham High School BSP").

23. Mendham High School BSP is an in-district therapeutic program for students manifesting anxiety, depression, obsessive-compulsive disorder, school avoidance, social challenges, disruptive behaviors, and academic underachievement due to a lack of productivity and follow through.

24. After hearing the CST's proposed placement in the BSP, J.H. began physically punching herself and had to be removed from the meeting room. At that time, the meeting was terminated and rescheduled.

25. On May 16, 2017, Parents and J.H. attended an IEP meeting with the CST. The IEP proposed by the CST ("May 16th IEP") continued J.H. in the same academic classes that she had then been enrolled in through home instruction and provided for half-day placement in Mendham High School BSP for the remainder of the 2016-2017 school year.

26. For the 2017-2018 school year, the May 16th IEP proposed J.H.'s placement in the Mendham High School BSP for English 3, World History, and Environmental Science, and French 3, Algebra 2, Physical Education/Health, and a Special (Band, Culinary Arts, or World Cuisine) in the general education setting. In addition to the therapeutic setting of Mendham High School BSP, the May 16th IEP also provided for individual counseling once per week for thirty (30) minutes.

27. At the IEP meeting on May 16, 2017, Parents again requested that J.H. be allowed to attend Fusion Academy. The District rejected Parents' request to place J.H. at Fusion Academy.

28. Parents did not execute the IEP at the meeting on May 16, 2017.

29. To date, Parents have not consented to the implementation of special education and related services.

30. Because the May 16th IEP is an "initial IEP" and J.H. had not previously received special education and related services, the District is prohibited from implementing the May 16th IEP without parental consent, pursuant to N.J.A.C. 6A:14-3.7(m).

31. On or about May 22, 2017, through counsel, Petitioners requested an independent psychiatric, psychological, and educational assessments.

32. On or about May 30, 2017, Petitioners filed a Petition for Due Process with the Office of Special Education Policy and Procedure ("OSEPP").

33. In July and August 2017, an independent psychoeducational evaluation of J.H. was conducted by Natalie Schuberth, Psy.D., BCBA-D, Licensed Psychologist. In her report, Dr. Schuberth indicates that J.H. continues to meet criteria for major depressive disorder and generalized anxiety disorder.

34. Dr. Schuberth also diagnosed J.H. with a "Specific Learning Disorder with impairment in mathematics, specifically with fluent calculation, Moderate." Dr. Schuberth's diagnosis is based upon J.H.'s performance on a single math fluency subtest, in which J.H. scored at least two (2) standard deviations lower than predicted by her general ability index score. None of J.H.'s composite index scores or other subtest scores exceeded 1.5 standard deviations below her full-scale IQ.

35. Based upon the results of Dr. Schuberth's psychoeducational evaluation, and Ms. Wilk's previous psychological assessment, J.H. does not meet the criteria for special education under the category of "specific learning disability" as defined by N.J.A.C. 6A:14-3.5(c).

36. On September 6, 2017, Ellen M. Platt, D.O., conducted an independent psychiatric evaluation of J.H. In her report, Dr. Platt finds that J.H. meets DSM-V criteria for: (i) Major Depressive Disorder, recurrent episode, moderately severe (with irrational thinking); (ii) Generalized Anxiety Disorder; (iii) Panic Disorder; (iv) School avoidance; (v) Specific Learning Disorder with impairment in mathematics, specifically with fluent calculation, moderate; (vi) Major Depressive Disorder, recurrent, severe, without psychotic features; (vii) Central Auditory Processing Disorder; and (viii) Agoraphobia.

37. Dr. Platt's report states that, "[J.H.] remains exceedingly emotionally fragile and the probability of her attending her school is extremely low at this time. She requires an academic environment with the capability of a great deal of emotional awareness and intervention."

38. On September 25, 2017, the District received a letter from Parents advising that they "are withdrawing [J.H.] from West Morris Central High School, effective immediately. [J.H.] is now enrolled at the Purnell School in Pottersville."

39. On September 20, 2017, Petitioners filed a Motion for Summary Decision ("MSD").

7

40. In their MSD, as well as their Reply to Respondent's Opposition to the MSD and supporting affidavits, Petitioners appear to challenge the District's determination that J.H. is eligible for special education and related services under the criteria of "emotionally disturbed." Specifically, Petitioners' contend:

   a. "J.H. is not emotionally disturbed, as she does not meet the criteria for said classification." See MSD at ¶ 10.
   b. "Nowhere was J.H. ever diagnosed as being emotionally disturbed." See MSD at ¶ 12.
   c. "Dr. Schuberth indicated in her evaluation report that JH met the criteria for the diagnosis of Specific Learning Disorder with impairment in mathematics, specifically with fluent calculation and she had issues with processing speed." See MSD at ¶ 14.
   d. "J.H. is entitled to an updated and appropriate document and this 504 Plan does not cover her learning disability and is not appropriate for her current issues or placement." See MSD at ¶ 21.
   e. "To date, the School District has failed to classify [J.H.] appropriately or offer her an appropriate educational placement that meets her unique academic, social, emotional and physical needs." See MSD at ¶ 26.
   f. "The school district also attempted to classify her incorrectly [as emotionally disturbed]…". See MSD at p. 18.
   g. "Instead, the School District insisted on trying to classify J.H. as emotionally disturbed without any of the criteria for that diagnosis being met…". See MSD at p. 18.

h. "[I]t is respectfully requested that this Court find that the school district denied J.H. a FAPE in the least restrictive environment… by trying to classify her incorrectly as emotionally disturbed…". See MSD at p. 28.

i. "…Petitioners NEVER consented to the term 'emotionally disturbed' as the classification for J.H. We objected to the language and the school psychologist told us that it was the only term she was permitted to use." See Affidavit of Petitioner F.H., at ¶ 11.

j. "…Petitioners did not agree to the term 'emotionally disturbed'…". See Petitioners' Reply to Opposition to MSD ("Reply"), at p. 5.

k. "A review of the pertinent facts as well as the reports from ICPC, and independent evaluators, Dr. Schuberth and Dr. Platt, support Petitioners' argument that J.H. does not meet the criteria for classification of emotionally disturbed." See Reply, at p. 5.

l. "…J.H. does not exhibit one of the five marked symptoms contained in the definition of Emotionally Disturbed. Even, if for argument's sake, J.H. exhibits one of the five marked symptoms, she does not meet the remaining requirements set forth in the definition [of "emotionally disturbed"]…". See Reply, at p. 6.

m. "…J.H. has never meet (sic) the criteria for being classified as emotionally disturbed." See Reply, at p.6.

n. "Petitioners did not agree to classify J.H. as Emotionally Disturbed." See Reply, at p. 8.

o. "In fact, Petitioners objected to the language 'emotionally disturbed' being included in the eligibility determination report and were informed that this was the only term the psychologist was permitted to use." See Reply, at p. 8.

  p. "The unsupported classification of Emotionally Disturbed by the district was not correct and did not accurately reflect the individual diagnosis of J.H...". See Reply, at p. 10.

  q. "Petitioners did not agree to a diagnosis of Emotionally Disturbed...". See Reply, at p. 10.

41.  To the contrary, Petitioners assert that J.H. is eligible under the category of "specific learning disability." In particular, Petitioners state:

  r. "The discrepancies in [J.H.'s] scores [in Dr. Wilk's report] should have led the district to identify a learning disability but instead, these discrepancies were ignored." See MSD at ¶ 11.

  s. "The school district failed under Child Find to recognize that she had an underlying learning disability and they failed to classify her as such." See MSD at ¶ 11.

  t. "The School District failed to identify J.H. as a student with learning disabilities, despite finding deficits in some areas. As indicated by Dr. Schuberth's report, J.H. meets the criteria for the diagnosis of Specific Learning Disorder with impairment in mathematics and she has processing issues. The School District has an obligation to evaluate and find this learning disorder...". See MSD at p. 18.

  u. "The school district failed to discover or acknowledge J.H.'s specific learning disability...". See MSD at p. 25.

  v. "[I]t is respectfully requested that this Court find that the school district denied J.H. a FAPE in the least restrictive environment... by failing to find that she has a specific learning disability...". See MSD at p. 28.

w. "...Dr. Schuberth is the expert that was required and paid for by the district. The doctor diagnosed J.H. with a 'Specific Learning Disorder...'". See Affidavit of Petitioner F.H. at ¶ 16.

x. "...the school district ignores Dr. Schuberth's professional diagnosis of 'Specific Learning Disorder...'". See Affidavit of Petitioner F.H. at ¶ 18.

y. "...Dr. Schuberth indicated that J.H. met the criteria for the diagnosis of Specific Learning Disorder...". See Reply, at 5.

z. "...Dr. Schuberth diagnosed J.H. with a Specific Learning Disability... The wording does not change the fact that it is a Specific Learning Disability as per the DSSMIII (sic) and the IDEA and therefore, once the district received Dr. Schuberth's independent report, the child study team should have considered the diagnosis and changed her classification to Specific Learning Disability...". See Reply, at p. 7.

42. Petitioners' repeated and obstinate assertion that J.H. does not meet the criteria for "emotionally disturbed" and that the District should reclassify her under the category of "specific learning disability," constitutes a revocation of their prior consent to have J.H. classified as "emotionally disturbed."

43. Respondent does not object to Petitioners' revocation of consent to classify J.H. as eligible for special education and related services under the category of "emotionally disturbed."

44. Without parental consent as to J.H.'s eligibility for special education, the District is relieved of its obligation to provide a free, appropriate public education to J.H.

11

45. Petitioners acted in bad faith when they failed to meaningfully participate in the development of an IEP, in that they had an *idea fixe* that any in-District program would not be appropriate.

46. Petitioners' conduct in unilaterally removing J.H. from the District to Purnell School is unreasonable, as Purnell School is not approved for the provision of special education and related services by the State of New Jersey.

### RELIEF REQUESTED

**WHEREFORE,** based upon the foregoing, the District requests the following relief:

1. A judicial determination that Petitioners' conduct is *per se* revocation of their consent to classify J.H. for special education and related services under the category of "emotionally disturbed," as defined by N.J.A.C. 6A:14-3.5(c)(5).

2. An Order narrowing the scope of the plenary hearing to whether J.H. meets the eligibility criteria to be eligible for special education and related services under the category of "specific learning disability," as defined by N.J.A.C. 6A:14-3.5(c)(12).

3. A judicial determination that Petitioners' failure to meaningfully participate in the IEP process was unreasonable.

4. A judicial determination that Petitioners' removal of J.H. to Purnell School was unreasonable, as it is not approved for the provision of special education and related services by the State of New Jersey.

Cleary Giacobbe Alfieri Jacobs, LLC<br>
Attorneys for Respondent/ Cross-Petitioner<br>
<br>
_____<br>
Jodi S. Howlett, Esq.

## PROOF OF SERVICE

The undersigned hereby certifies that a copy of this herein Cross-Petition for Due Process is being served simultaneously with its filing upon counsel for Petitioners, Julie Warshaw, Esq., via email (jwarshaw@warshawlawfirm.com) and Federal Express.

_____
Jodi S. Howlett, Esq.