# CLEARY | GIACOBBE | ALFIERI | JACOBS LLC

JODI S. HOWLETT, Partner
jhowlett@cgajlaw.com

Reply to: Matawan Office

March 15, 2018

**Via E-Mail (Diana.Batista@oal.nj.gov) and NJLS**
Honorable Thomas R. Betancourt, ALJ
Office of Administrative Law
State of New Jersey
33 Washington Street
Newark, New Jersey 07102

Re: F.H. and M.H. o/b/o J.H. v. West Morris Regional High School District Board of Education
OAL Dkt. No.: EDS 10706-2017
Agency Ref. No.: 2017-26311

Dear Judge Betancourt:

As Your Honor is aware, this firm represents Respondent West Morris Regional High School District Board of Education ("District") in the above-referenced matter. On behalf of Respondent, the undersigned respectfully submits this correspondence as the District's brief on the scope of the plenary hearing, scheduled to commence on Monday, April 9, 2018.

As outlined in the District's Cross-Petition for Due Process, filed on February 12, 2018, the District seeks an Order narrowing the scope of the due process proceeding to the issue of whether J.H. is eligible for special education and related services as defined by N.J.A.C. 6A:14-3.5, in light of Petitioners' revocation of consent for eligibility under the category of "emotionally disturbed." Thus, J.H.'s eligibility is an essential issue to determining the District's legal obligation to provide J.H. with a free, appropriate public education. Moreover, the Court's inquiry should be limited to a consideration of

---

955 State Route 34
Suite 200
Matawan, NJ 07747
Tel 732 583-7474
Fax 732 290-0753

169 Ramapo Valley Road
Upper Level 105
Oakland, NJ 07436
Tel 973 845-6700
Fax 201 644-7601

www.cgajlaw.com

what the District knew or should have known at the time it proposed a program and placement for J.H. For the following reasons, the District requests that the hearing in this matter be limited in scope to: (i) the question of J.H.'s eligibility for special education and related services, and (ii) consideration of only that evidence which was reasonably available to the District at the time it proposed an Individualized Education Program for J.H.

## LEGAL ARGUMENT

### I. THE ISSUE OF J.H.'S ELIGIBILITY IS ESSENTIAL TO THE COURT'S DETERMINATION OF THE DISTRICT'S LEGAL OBLIGATION.

In order for the District to have a legal obligation to provide a free, appropriate public education ("FAPE") to J.H., she must, *inter alia*, meet the criteria for eligibility under one of the enumerated categories set forth in N.J.A.C. 6A:14-3.5. See E.P. o/b/o E.P. v. North Arlington Bd. of Educ., 2017 WL 3879345, OAL Dkt. Nos. EDS 12524-16 and EDS 13086-16, at *28 (Aug. 15, 2016) ("[t]hus, in order to be eligible for special education and related services, the student must 1) have one or more disability as defined in N.J.A.C. 6A:14-3.5(c)(1)-(14); 2) the disability must adversely affect the student's educational performance; and 3) the student is in need of special education and related services.").

Here, Petitioners contend that they did *not* consent to J.H. being classified as eligible for special education under the category of "emotionally disturbed." See, e.g., Petitioners' Answer to Respondent's Cross-Petition for Due Process, ¶ 21 ("Petitioners deny the allegations in Paragraph 21 and leave Respondent to its proofs [that, "[a]t the Eligibility Determination meeting, Parents consented to the classification of "Emotionally Disturbed" and executed the Eligibility Determination Report"]); Respondent's Cross-Petition for Due Process ("Cross-Petition"), ¶¶ 40(a) – (q); 41; and 42. In fact, Petitioners allege that they "NEVER consented to the term "emotionally disturbed" as the classification

2

for J.H." See Cross-Petition, ¶ 40(i). In order for the District to have a duty to provide J.H. with a FAPE, however, there must be a determination that J.H. was eligible for special education and related services. Absent consent for eligibility, the District was not obligated to offer J.H. an Individualized Education Program ("IEP"). Without making this preliminary determination of eligibility, the hearing would be an unnecessary use of this judicial time and resources.

As such, the question of whether Petitioners consented to J.H.'s eligibility is essential to the Court's analysis of whether the District satisfied its legal obligations to J.H.

## II. THE "SNAPSHOT RULE" LIMITS THIS COURT'S INQUIRY TO THE INFORMATION AVAILABLE AT THE TIME THE IEP WAS DEVELOPED.

Evidentiary rulings on cases in the Office of Administrative Law "shall be made to promote fundamental principles of fairness and justice and to aid in the ascertainment of truth." N.J.A.C. 1:1-15.1. Consistent with upholding the principles of fairness and justice, all relevant evidence should be admitted; likewise, irrelevant evidence is not admissible. See Id. Evidence should be excluded when the "probative value is substantially outweighed by the risk that its admission will either: 1. Necessitate undue consumption of time; or 2. Create substantial danger of undue prejudice or confusion." Id.

In In re Kleinman, the ALJ excluded evidence of diagnostic and treatment reports, declaring same to be irrelevant as they were outside the scope of the hearing. 2015 WL 65311 at *6 unpub. (App.Div.2015). On appeal, the Appellate Division upheld the ALJ's exclusion of evidence as consistent with N.J.A.C. 1:1-15.1, and that the ALJ's decision is entitled to deference on appeal. Id. at *7 (holding that it would not be permissible to admit evidence outside the scope of the instant matter).

The Ninth Circuit has outlined that in determining whether a unilateral placement is appropriate, the court must "employ the 'snapshot' rule." Baquerizo v. Garden Grove Unified Sch. Dist., 826 F.3d 1179, 1186-87 (9th Cir. 2016) (denying reimbursement to the parents for their private placement when

3

the child's IEP was appropriate and the parents could not affirmatively show any violations of the IDEA); see also Admas v. Or., 195 F.3d 1141, 1149 (9th Cir. 1999). Thus, the only admissible evidence that can be considered in determining the appropriateness of a placement is the information which is relevant and within the scope of the proceedings, not prior matters that have previously been resolved. See Baquerizo, at 1186-87 (relying upon Adams, at 1149).

The Third Circuit has also adopted the snapshot rule. See Fuhrmann o/b/o Fuhrmann v. E. Hanover Bd. of Educ., 993 F.2d 1031 (3rd Cir. 1993). The majority in Fuhrmann expressed, "[e]vents occurring month and years after the placement decisions had been promulgated, although arguably relevant to the court's inquiry, cannot be substituted for *Rowley's* threshold determination of a 'reasonable calculation' of education benefit." Id. at 1040 (interpreting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176 (1982)). Thus, matters determining the appropriateness of a placement can only be assessed by the documents and information within the bounds of the instant matter, not matters previously resolved or occurring after the placement. See Id. Actions of school districts cannot "be judged exclusively in hindsight;" the judgment is based upon "a snapshot, not a retrospective." Id. (citing Roland M. v. Concord Sch. Comm., 910 F.2d 983, 992 (1st Cir. 1990), cert. denied, 499 U.S. 912 (1991)). **The appropriate timeframe "must take into account what was, and was not objectively reasonable when the snapshot was taken."** Id. (emphasis added); see also Roland M., at 992. Ultimately, evidence is relevant and admissible pursuant to N.J.A.C. 1:1-15.1 if it was known or relied upon at the time prior to or during the occurrence of the issue giving rise to litigation. Evidence should be deemed irrelevant and inadmissible if it is outside the scope of the proceeding if it was not known or used by the party prior to the events that instituted litigation. See In re Kleinman, at *6-7.

4

Here, the Court is limited to considering relevant evidence that occurred during the snapshot of this case, only the information which was known by the District at the time in question is the only admissible evidence that can be considered in determining the appropriateness of the proposed program and placement. Petitioners are attempting to circumvent the "snapshot rule" by demanding the District retroactively re-classify J.H. based upon information that was only obtained *after* the IEP was developed. Assuming J.H. is eligible for special education, the Court's inquiry is whether the District offered J.H. a free, appropriate public education that was reasonably calculated to produce a meaningful educational benefit **at the time it was offered.**

As such, the District requests that the hearing be limited to only the information that was provided to or otherwise available to the District on or before May 16, 2017.

## CONCLUSION

Based upon the foregoing, the District respectfully requests that the hearing in this matter be limited in scope to: (i) the question of J.H.'s eligibility for special education and related services, and (ii) consideration of only that evidence which was reasonably available to the District at the time it proposed an Individualized Education Program for J.H.

Respectfully submitted,

*Jodi S. Howlett*
Jodi S. Howlett

cc: Julie Warshaw, Esq., counsel for Petitioners (via e-mail)

5