## Batista, Diana

| | |
|---|---|
| **From:** | Jessie Rehfuss <jrehfuss@cgajlaw.com> |
| **Sent:** | Wednesday, April 04, 2018 12:55 PM |
| **To:** | Batista, Diana |
| **Cc:** | jwarshaw@warshawlawfirm.com; Jodi Howlett |
| **Subject:** | OAL Dkt. NO. EDS 10706-2017 F.H. and M.H. o/b/o J.H. v. West Morris Regional High School Board of Education |
| **Attachments:** | 2018.4.4 JSH to Hon. T. R. Betancourt.pdf |

Ms. Batista,

Please see the attached from Jodi S. Howlett, Esq. to Judge Betancourt regarding the above-referenced matter. If you should have any questions, please contact our office.

Respectfully submitted,

*Jessie Rehfuss*
Paralegal
Cleary | Giacobbe | Alfieri | Jacobs, LLC
www.cgajlaw.com | jrehfuss@cgajlaw.com
955 State Route 34
Suite 200
Matawan, NJ 07747
Tel: (732) 583-7474
Fax: (732) 566-7687

**PLEASE NOTE THAT WE HAVE MOVED. THE NEW LOCATION OF OUR MATAWAN OFFICE IS 955 STATE ROUTE 34, SUITE 200, MATAWAN, NEW JERSEY 07747. ALL OTHER CONTACT INFORMATION WILL REMAIN THE SAME. PLEASE ADJUST YOUR RECORDS.**

This email and any attachments thereto are intended for the exclusive use of the addressee. The information contained herein may be privileged, confidential or otherwise exempt from disclosure by applicable laws, rules or regulations. If you have received this email in error and are not the intended recipient, you are hereby placed on notice that any use, distribution, copying or dissemination of this communication is strictly prohibited. If you have received this in error, please notify the sender immediately at (732) 583-7474 and delete this email and any attachments immediately. Thank you for your cooperation.

# CLEARY | GIACOBBE | ALFIERI | JACOBS LLC

JODI S. HOWLETT, Partner
jhowlett@cgajlaw.com

Reply to: Matawan Office

April 4, 2018

**Via E-Mail (Diana.Batista@oal.nj.gov) and Overnight Delivery**
Honorable Thomas R. Betancourt, ALJ
Office of Administrative Law
State of New Jersey
33 Washington Street
Newark, New Jersey 07102

Re:  F.H. and M.H. o/b/o J.H. v. West Morris Regional High School Board of Education
Agency Ref. No.: 2017-26311
OAL Docket No.: EDS 10706-17

## RESPONDENT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE
## AND EXPERT WITNESSES PURSUANT TO "SNAPSHOT RULE"

Dear Judge Betancourt:

As Your Honor is aware, this firm represents Respondent West Morris Regional High School Board of Education ("Board" or "District") in the above-captioned matter. In accordance with Your Honor's Prehearing Order dated August 11, 2017 ("Prehearing Order"), the undersigned respectfully submits this letter brief as Respondent's Motion *in Limine* to Exclude Petitioners' Evidence and Expert Witnesses Pursuant to the "Snapshot Rule."

By way of background, J.H. is a seventeen (17) year old female residing within Respondent's school district. On or about April 6, 2017, J.H. was determined eligible for special education and related services under the category of "Emotionally Disturbed." At that time, Petitioners executed the Eligibility Determination Report. The Eligibility Determination meeting was thereafter terminated when J.H. became emotional and was removed from the meeting room.

955 State Route 34, Suite 200
Matawan, NJ 07747
Tel 732 583-7474
Fax 732 290-0753

169 Ramapo Valley Road
Upper Level 105
Oakland, NJ 07436
Tel 973 845-6700
Fax 201 644-7601

www.cgajlaw.com

At a subsequent Initial IEP Meeting on May 16, 2017,[1] the District proposed an Initial Individualized Education Program ("Initial IEP") for J.H. which continued home instruction, half-day placement in Mendham High School's Being Successful Program ("BSP"), and individual counseling once per week for the remainder of the 2016-2017 school year. For the upcoming 2017-2018 school year, the Initial IEP proposed J.H.'s placement in the BSP for core classes, as well as individual counseling once per week.

Petitioners did not execute the Initial IEP and, on or about May 30, 2017, Petitioners filed the instant Petition for Due Process ("Petition") and unilaterally placed J.H. at Purnell School for the 2017-2018 school year. The Petition was subsequently amended by Order of this Court, dated December 19, 2017.

On April 2, 2018, the undersigned received from Petitioners' counsel the documentary evidence that Petitioners intend to rely upon at trial. That evidence contains a myriad of reports that were either (1) provided to the District *after* it proposed a program for J.H.; (2) created *after* filing of the Petition solely for the purpose of litigation; and/or (3) were *never* produced to the District. As such, the District **was not privy to the information contained in these reports at the time it proposed a program and placement for J.H.**

To the contrary, the District's decisions were based upon the information known at the time, and newly-obtained reports and evaluations after-the-fact should be precluded from this matter. There is also no legal basis to hold the District responsible for information of which it was not privy to at the time is proposed a program and placement for J.H. See, e.g., R.A. & R.A. o/b/o G.A. v. Jersey City Bd. of Educ., 2015 WL 8012795, *6-7 (N.J. Adm. 2015). Thus, the District respectfully requests that any

---

[1] As the IEP was initially presented to Petitioners at the Eligibility Determination Meeting, the IEP is dated "April 6, 2017."

2

reports/correspondence that was not made available or otherwise produced to the District prior to the Initial IEP proposed on May 16, 2017, be excluded from production at trial.

## LEGAL ARGUMENT

**I.  Reports and evaluations that were obtained after the District's IEP Meeting on May 16, 2017 and Petitioners' unilateral placement of J.H. at Purnell School are irrelevant, outside the scope of this proceeding, and should not be admissible.**

Evidentiary rulings on cases in the Office of Administrative law "shall be made to promote fundamental principles of fairness and justice and to aid in the ascertainment of truth." N.J.A.C. 1:1-15.1. Consistent with upholding the principles of fairness and justice, all relevant evidence should be admitted; likewise, irrelevant evidence is not admissible. See Id. Evidence should be excluded when the "probative value is substantially outweighed by the risk that its admission will either: 1. Necessitate undue consumption of time; or 2. Create substantial danger of undue prejudice or confusion." Id.

In In re Kleinman, the ALJ excluded evidence of diagnostic and treatment reports, "noting that **they were not relevant for the additional reason that [the doctor] did not have these reports in her possession when formulating her views about this case.**" 2015 WL 65311 at *6 unpub. (App.Div.2015) (emphasis added). On appeal, the Appellate Division upheld the ALJ's exclusion of evidence as consistent with N.J.A.C. 1:1-15.1, and thus the ALJ's decision is entitled to deference on appeal. Id. at *7. The Appellate Division elaborated, "[w]e agree the only evidence relevant to establishing the reasonableness of [the doctor's] working hypothesis and treatment plan for [the child] was information [the doctor] possessed before and during her treatment of the child." Id. (holding that it would not be permissible to admit evidence that a party was not privy to at the time the actions giving rise to the litigation occurred.)

The Ninth Circuit has outlined that in determining whether a unilateral placement is appropriate, the court must "employ the 'snapshot' rule, which instructs us to judge an IEP not in hindsight, but instead based on the information that was reasonably available to the parties at the time." Baquerizo v. Garden Grove Unified Sch. Dist., 826 F.3d 1179, 1186-87 (9th Cir. 2016) (denying reimbursement to the parents for their private placement when the child's IEP was appropriate and the parents could not affirmatively show any violations of the IDEA); see also Admas v. Or., 195 F.3d 1141, 1149 (9th Cir. 1999). Thus, the only admissible evidence that can be considered in determining the appropriateness of a placement is the information which was known by both parties at the time in question. See Baquerizo, at 1186-87 (relying upon Adams, at 1149).

Most importantly, the Third Circuit has also adopted the "snapshot rule." See Fuhrmann o/b/o Fuhrmann v. E. Hanover Bd. of Educ., 993 F.2d 1031 (3rd Cir. 1993). The majority in Fuhrmann expressed, "[e]vents occurring month and years after the placement decisions had been promulgated, although arguably relevant to the court's inquiry, cannot be substituted for *Rowley's* threshold determination of a 'reasonable calculation' of education benefit." Id. at 1040 (interpreting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176 (1982)). Circuit Judge Mansmann further elaborated on the Third Circuit interpretation of Rowley by requiring a school district's placement to be "based on an evaluation [of the student] done by a team of experts *prior* to the student's placement." Fuhrmann, at 1041 (Mansmann, J., concurring) (emphasis in original).

Thus, "the appropriateness of a student's placement must be assessed in terms of its appropriateness at the time it is created and not at some later date when one has the benefit of the child's actual experience." Id. Actions of school districts cannot "be judged exclusively in hindsight;" the judgement is based upon "a snapshot, not a retrospective." Id. (citing Roland M. v. Concord Sch.

4

Comm., 910 F.2d 983, 992 (1st Cir. 1990), cert. denied, 499 U.S. 912 (1991)). **The appropriate timeframe "must take into account what was, and was not objectively reasonable when the snapshot was taken."** Id. (emphasis added); see also Roland M., at 992.

Ultimately, evidence is relevant and admissible pursuant to N.J.A.C. 1:1-15.1 if it was known or relied upon at the time prior to or during the occurrence of the issue giving rise to litigation. Evidence should be deemed irrelevant and inadmissible if it was not known or used by the party prior to the events that instituted litigation. See In re Kleinman, at *6-7.

Here, only the reports presented to Respondent prior to the District's May 16, 2017 Initial IEP Meeting and before Petitioners unilaterally placed J.H. at Purnell School are admissible. The following reports that were created or provided after the District's Initial IEP meeting and/or Petitioners' unilateral placement of J.H. are *de facto* irrelevant as time barred to the proceedings in front of Your Honor:

    i.    P-28 (August 17, 2017)

    ii.    P-29 (August 24, September 8, and September 11, 2017)

    iii.    P-30 (October 16, 2017)[2]

    iv.    P-32 (August 21 and December 13, 2017)

    v.    P-33 (September 6, 2017)

    vi.    P-34 (March 3, 2018)[3]

    vii.    P-39 (October 9, 2017)

    viii.    P-40 (October 12, 2017)

    ix.    P-41 (October 15, 2017)

    x.    P-42 (Fall 2017)[4]

---

[2] This correspondence was not previously produced to the District and fails to include an expert report.
[3] This report was not previously produced to the District.

5

    xi.    P-43 (Mid-Term 2017-2018)[5]

    xii.    P-44 (March 17, 2018)[6]

    xiii.    P-49 (March 27, 2018)[7]

As continuously upheld throughout federal and State courts, the "snapshot rule" would unequivocally bar the reports from admission because at the time J.H. attended Respondent's school district, these reports were not provided or, in some cases, had not yet even been created. It is patently unreasonable of Petitioners to rely upon such reports, correspondence, and evaluations. That reliance, if allowed, would undoubtedly unduly prejudice the District.

Here, it is undisputed that Petitioners had several assessments of J.H. conducted after the May 16, 2017 Initial IEP Meeting – as well as after Petitioners unilaterally placed J.H. at Purnell School. Since the District is only charged of what it knew of should have known at the time it proposed the Initial IEP, such after-acquired reports are prejudicial and only serve to create undue confusion to the case at bar. To require school districts to have to reimburse parents for unilateral placements based upon information acquired post-unilateral placement flies in the face of fairness and the collaborative spirit of the IDEA.

In sum, any reference to, or reliance upon, such reports, correspondence, and/or expert testimony is disingenuous, irrelevant, objectively unreasonable, and in direct violation of the language, intent, and spirit of N.J.A.C. 1:1-15.1 – ***Respondent cannot be held responsible for knowing information that was not provided to it during the decision-making process.*** Accordingly, Respondent prays this Court to

---

[4] This report was not previously produced to the District.
[5] This report was not previously produced to the District.
[6] This document was not previously produced to the District.
[7] This correspondence was not previously produced to the District and fails to include an expert report.

exclude any documentary evidence dated after the District proposed the Initial IEP should be excluded from presentation during this matter and deemed irrelevant pursuant to the "snapshot rule."

## CONCLUSION

Based upon the foregoing, Respondent West Morris Regional High School Board of Education respectfully submits this letter brief as Respondent's Motion *in Limine* to Exclude Petitioners' Evidence and Expert Witnesses Pursuant to the "Snapshot Rule."

Respectfully submitted,

Jodi S. Howlett

cc: Julie Warshaw, Esq. – counsel for Petitioners (via E-Mail and Overnight Delivery)
Michael Reinknecht – Director of Special Services (via E-Mail)