**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| F.H. *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WEST MORRIS REGIONAL HIGH SCHOOL BOARD OF EDUCATION, <br><br> Defendant. | Civil Action No. 19-14465 (SDW) (LDW) <br><br> **OPINION** <br><br> December 8, 2020 |

**WIGENTON,** District Judge.

Before this Court is Plaintiffs F.H. and M.H.'s (together, "Plaintiffs") Motion for Summary Judgment, on behalf of their daughter, J.H., pursuant to Federal Rule of Civil Procedure "Rule" 56. This matter comes before this Court on Plaintiffs' appeal of the Administrative Law Judge's ("ALJ") dismissal of Plaintiffs' amended due process petition seeking, among other things, reimbursement for J.H.'s out-of-district placement for the 2016–2017 and 2017–2018 academic years. (D.E. 13-5 at 19–20.)[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 20 U.S.C. §1415(i)(2). Venue is proper pursuant to 28 U.S.C. § 1391(b). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the Motion is **DENIED** and this matter is **REMANDED** so that the ALJ can more fully vet the claims and arguments set forth in Plaintiffs' amended due process petition.

---

[1] All page references to the administrative record below contained in Docket Entry Numbers 13 through 13-27 refer to the CM/ECF pagination generated on the upper-righthand corner.

**I.     BACKGROUND**

Before turning to the Motion, this Court provides a brief overview of the Individuals with Disabilities Education Act ("IDEA") to contextualize the factual and procedural record. The IDEA was enacted to ensure that children with disabilities receive a free appropriate public education ("FAPE") and are not placed "in regular classrooms awaiting the time when they were old enough to drop out." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 179 (1982) (discussing the history of the IDEA) (internal quotations omitted). "The IDEA protects the rights of disabled children by mandating that public educational institutions identify and effectively educate those children, or pay for their education elsewhere if they require specialized services that the public institution cannot provide." *P.P. ex rel. Michael P. v. W. Chester Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009). Under the IDEA, local education agencies are required to (1) identify children in need of special education services, and (2) provide them with a FAPE. *See D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 244 (3d Cir. 2012). A FAPE "consists of educational instruction specially designed to meet the unique needs of the . . . child, supported by such services as are necessary to permit the child to 'benefit' from the instruction." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 264 (3d Cir. 2003) (quoting *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 756 (3d Cir. 1995)); *see also Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004) (discussing FAPE requirements).

States provide FAPEs by means of an "individualized education program" ("IEP"). *See* 20 U.S.C. § 1414(d); *Shore Reg'l*, 381 F.3d at 198. "The education provided must 'be sufficient to confer some educational benefit'" upon the student. *T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577–78 (3d Cir. 2000) (noting that an appropriate IEP "must provide 'significant learning' and confer 'meaningful benefit' as 'gauged in relation to a child's

potential'"). "An IEP must, among other things, identify a child's current performance, include short-term and long-term goals, and set out services to be provided." *L.W. v. Jersey City Bd. of Educ.*, No. 17-6451, 2018 WL 3536095, at *2 (D.N.J. July 23, 2018) (citing 20 U.S.C. § 1414(d)). Under New Jersey law, a child's IEP is developed by a Child Study Team ("CST") comprised of a parent, case manager, school district representative, and other specified school personnel. N.J.A.C. 6A:14–2.3(k)(2).

The administrative process delineated under the IDEA "provide[s] parents with an avenue to file a complaint and to participate in an impartial due process hearing with respect to 'any matter relating to the identification, evaluation, or educational placement of the[ir] child, or the provision of a [FAPE] to such child . . . .'" *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014) (quoting 20 U.S.C. § 1415(b)(6)(A)).

## II. FACTUAL AND PROCEDURAL HISTORY[2]

J.H. was born in January 2001 to her parents F.H. and M.H, and resided in Long Valley, New Jersey during the relevant period at issue. (ALJ Op. at 15; D.E. 29-3 ¶ 2.) She completed eighth grade at Long Valley Middle School as a general education student before attending West Morris Central High School ("WM Central"). (ALJ Op. at 15.) J.H. completed her freshman year at WM Central as a general education student during the 2015–2016 school year. (*Id.*) In Fall 2016, she began to experience depression and anxiety, which prompted her attendance at Immediate Care Children's Psychiatric Center ("ICCPC"), a therapeutic day program, from October to December 2016. (ALJ Op. at 15; D.E. 29-3 ¶¶ 5, 13; D.E. 13-19 at 39.) J.H. was

---

[2] This Court summarizes the facts from the ALJ's Opinion and Plaintiffs' statement of material facts. Notably, although Plaintiff filed a 65-page document containing 192 paragraphs of material facts (*see* D.E. 29-3), the District failed to submit a responsive statement of material facts as required pursuant to Local Civil Rule 56.1(a). Rather, the District's opposition restates the ALJ's findings of fact comprised of three pages, notwithstanding Plaintiffs' various factual disputes, an extensive administrative record, and a due process hearing that spanned four days. (*Compare* D.E. 1 ("ALJ Op." or "Final Decision") at 4, 15–17, *with* D.E. 32 at 17–20.) In addition, record citations are entirely absent from the ALJ's Final Decision.

3

medically cleared to return to WM Central in December 2016 with an approved Accommodation Plan pursuant to Section 504 of the Rehabilitation Act. (ALJ Op. at 15; D.E. 29-3 ¶ 7.) After a few days, however, J.H. could no longer attend WM Central because of anxiety and reverted to home instruction for the remainder of the 2016–2017 academic year. (D.E. 29-3 ¶¶ 8–9.)

In January 2017, J.H. was referred to a CST to evaluate whether she was eligible for special education and related services under the IDEA. (ALJ Op. at 15; D.E. 29-3 ¶ 11.) Plaintiffs attended the January 9, 2017 evaluation meeting and consented to psychological and social assessments. (ALJ Op. at 15; *see* D.E. 29-3 ¶ 16.) The District accepted a March 15, 2017 psychiatric assessment from Dr. Shankar Srinivasan, an ICCPC psychiatrist, which recommended an out of district placement. (*See* ALJ Op. at 15; D.E. 29-3 ¶ 17 (citing D.E. 13-18 at 89).) Dr. Sherry Wilk also conducted a psychological evaluation on the District's behalf on January 19, 2017. (D.E. 29-3 ¶ 25 (citing D.E. 13-18 at 76).) Plaintiffs contend that because J.H. received therapeutic services outside the school setting, she was not in need of a therapeutic school environment. (D.E. 29-3 ¶ 14.)

***IEP Development*:** An IEP meeting was held on April 6, 2017, in which the District determined that J.H. was eligible for special education and related services under the "Emotionally Disturbed"[3] criteria, and Plaintiffs signed the corresponding Eligibility Determination Report reflecting this classification. (ALJ Op. at 15–16; D.E. 13-18 at 18.) Plaintiffs contend they consented to J.H.'s eligibility for special education and related services, but dispute that they agreed to the "Emotionally Disturbed" classification. (D.E. 29-3 ¶ 21.) Plaintiffs did not agree to implement the April 6, 2017 IEP ("April IEP") (ALJ Op. at 16), which recommended J.H.'s

---

[3] Although the "Emotionally Disturbed" classification under New Jersey Administrative Code § 6A:14-3.5(c)) was amended to "Emotional Regulation Impairment" effective October 5, 2020, the definition otherwise remains unaltered. *See* 52 N.J.R. 1822(b) R. 2020 d.100. This Opinion refers to "Emotionally Disturbed" as that term was in effect during the relevant period.

4

placement in the "Behavioral Supports Program"—also referred to as the "BSP"—at West Morris Mendham High School ("WM Mendham"). (*See* D.E. 13-18 at 19–40.)

A second IEP meeting was held on May 16, 2017. (ALJ Op. at 16; D.E. 29-3 ¶ 37.) Again, the District proposed an IEP ("May IEP") that placed J.H. in the "Behavioral Supports Program" or "BSP" at WM Mendham. (ALJ Op. at 16; D.E. 29-3 ¶ 37; *see* D.E. 13-18 at 19–62.) Although both proposed IEPs referenced the "Behavioral Supports Program" or "BSP," the ALJ determined that the CST proposed the "Being Successful Program" located at WM Mendham, which he found to address distinctly different needs than the "Behavioral Supports Program" at WM Central. (ALJ Op. at 16.) Plaintiffs contend that the April and May IEPs did not reflect their input or suggestions, and were identical, except that a different case manager's name appeared on the May IEP. (D.E. 29-3 ¶¶ 31–32, 37.) Plaintiffs insist that J.H. was placed in the "Behavioral Supports Program" and that it did not meet J.H.'s needs because she never exhibited behavioral issues. (D.E. 29-3 ¶¶ 22, 33, 42.) In addition, Plaintiffs purportedly voiced concerns about how or whether academic instruction within the BSP could be modified for upper-level courses. (ALJ Op. at 6.)

*Additional Assessments***:** On May 22, 2017, Plaintiffs requested independent psychiatric, psychological, and educational assessments for J.H. (*Id.* at 16.) Dr. Schuberth conducted a psychoeducational evaluation of J.H. in July and August of 2017. (*Id.*; D.E. 29-3 ¶¶ 54–56.) Dr. Schuberth's August 21, 2017 report reflects J.H.'s diagnosis of major depressive disorder, generalized anxiety disorder, and a specific learning disorder with impairment in mathematics. (ALJ Op. at 16; D.E. 29-3 ¶¶ 55–56 (citing D.E. 13-18 at 94–97, D.E. 13-19 at 1–19).) However, Dr. Schuberth did not find that J.H. met the criteria for a specific learning disability. (ALJ Op. at 16.) An independent psychiatric evaluation of J.H. was conducted by Dr. Ellen M. Platt, and her report is dated September 6, 2017. (*Id.* at 10, 17; D.E 13-19 at 22–35.) Similarly, Dr. Platt did

5

not determine whether J.H. fit the criteria for a specific learning disability; however, she diagnosed her with major depressive disorder, generalized anxiety disorder, panic disorder, school avoidance, specific learning disorder, central auditory processing disorder and agoraphobia. (ALJ Op. at 17.) J.H.'s IEP was never amended or updated following Dr. Schuberth or Dr. Platt's independent assessments. (D.E. 29-3 ¶ 62; *see generally* D.E. 13 through D.E. 13-27.)

*Unilateral Placement*: Plaintiffs submitted a tuition payment to the Purnell School ("Purnell") on August 31, 2017, and J.H. began instruction at Purnell on September 11, 2017. (ALJ Op. at 17; D.E. 29-3 ¶ 72.) The ALJ concluded that J.H. was removed on August 31, 2017, the date of her enrollment at Purnell. (ALJ Op. at 17.) Moreover, because the ALJ found that Plaintiffs notified the District of J.H.'s placement after September 11, 2017, he concluded that Plaintiffs failed to provide 10-days' notice pursuant to 20 U.S.C. § 1412(a)(10)(C)(iii). (*Id.*) Plaintiffs heavily dispute both the date the District was notified of their intent to unilaterally place J.H. at Purnell, and the date of J.H.'s removal. (*See* D.E. 29-3 ¶¶ 65–72, 144.) In sum, Plaintiffs argue that both they and counsel reached out to the District prior to August 31, 2017, regarding J.H.'s placement for the upcoming school year, and that J.H. was removed to Purnell on the date of her attendance. (*See id.*)

*Administrative Proceedings*: Shortly after Plaintiffs' May 22, 2017 request for independent assessments, Plaintiffs filed their initial due process petition with the Office of Special Education Programs ("OSEP") on June 5, 2017, and an amended petition with the New Jersey Office of Administrative Law on October 23, 2017.[4] (ALJ Op. at 3.) The parties requested an adjournment to partake in mediation, which took place on July 27, 2017. (D.E. 29-3 ¶ 52 (citing

---

[4] The record reflects that the OSEP received Plaintiffs' request on May 30, 2017, and that Plaintiffs specifically requested (i) classification of J.H. as "Other Health Impaired"; (ii) development of an IEP with an out-of-district placement; (iii) continued home instruction; (iv) compensatory education; and (v) reimbursement. (D.E. 13-2 at 3.)

D.E. 13-1).) A due process hearing occurred on April 9, 2018, April 23, 2018, July 25, 2018, and August 29, 2018. (ALJ Op. at 4.) Post-hearing briefs were submitted to the ALJ by both parties and the Final Decision was rendered on February 13, 2019. (*See id.*)

Plaintiffs appealed the ALJ's Final Decision to the Superior Court of New Jersey, Law Division, Morris County, on May 11, 2019. (D.E. 1.) The District removed the state action to this Court on June 27, 2019. (*Id.*) An Answer from the District followed, and the Court denied Plaintiffs' motion to remand to the state court. (D.E. 4, 6, 12.) After a settlement conference on May 7, 2020, Plaintiffs filed the instant motion for Summary Judgment based on the administrative record. (D.E. 29.) The District filed an opposition and Plaintiffs submitted a reply. (D.E. 32, 33.)

### III.  LEGAL STANDARD

Under New Jersey law, the "process for resolving disputes arising in special education cases starts with mediation." *S.H.*, 336 F.3d at 266 (citing N.J.A.C. 1:6A-4.1). "If mediation fails, the case is forwarded to the Office of Administrative Law and assigned" to an ALJ. *Id.*; *see also D.B. v. Ocean Twp. Bd. of Educ.*, 985 F. Supp. 457, 472 (D.N.J. 1997) (citing *Lascari v. Bd. of Educ. of Ramapo Indian Hills Reg'l High Sch. Dist.*, 560 A.2d 1180, 1185 (N.J. 1989)). Once an ALJ makes a determination, any party has the right to appeal directly to the New Jersey Superior Court or a federal district court. *Id.* The reviewing court "shall receive the records of the administrative proceedings; shall hear additional evidence at the request of a party; and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(i)–(iii).

The standard of review "under which this Court considers an appeal of a state administrative decision under the IDEA differs from that governing the typical review of summary judgment." *M.A. ex rel. G.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J.

2002), *aff'd*, 65 F. App'x 404 (3d Cir. 2003) (internal quotations omitted). Although the district court will conduct an independent review of the case, "due weight" and deference must be given to the factual findings of the administrative agency. *E.I.H. v. Fair Lawn Bd. of Educ.*, 747 F. App'x 68, 71 (3d Cir. 2018) (quoting *S.H.*, 336 F.3d at 270). The Third Circuit has interpreted the due weight requirement to be a "modified de novo review." *S.H.*, 336 F.3d at 270. If the reviewing court disagrees with the administrative agency's factual findings, it must give an explanation as to why. *Id.* "[T]he court must explain why it does not accept the ALJ's findings of fact to avoid the impression that it is substituting its own notions of sound educational policy for those of the agency it reviews." *Id.* In addition, if the reviewing court finds factual conclusions contrary to that of the ALJ's without hearing any additional evidence, it must point to evidence in the record before it for support. *Id.* On a motion for summary judgment, when no new evidence is presented to the district court, the motion becomes "the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *M.A.*, 202 F. Supp. 2d at 359 (quoting *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997)). Here, the parties only present the administrative record for this Court's review.

Review of the ALJ's "conclusions of law are subject to plenary review." *E.I.H.*, 747 F. App'x at 71. Where the ALJ has "heard live testimony," its credibility determinations are given "special weight." *Shore Reg'l*, 381 F.3d at 199. "Specifically, this means that a [d]istrict [c]ourt must accept the state agency's credibility determinations unless the non-testimonial extrinsic evidence in the record would *justify* a contrary conclusion." *Id.* (internal quotations omitted). "[T]he word 'justify' demands essentially the same standard of review given to a trial court's findings of fact by a federal appellate court." *Id.* (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985)).

## IV. DISCUSSION

Plaintiffs ask this Court to reverse the ALJ's Final Decision and award reimbursement for J.H.'s out-of-district placement, compensatory education, attorneys' fees, and costs. (D.E. 29-1 at 50.) Plaintiffs assert numerous arguments in support of their request, which boil down to four broad categories, including: (i) the District's alleged procedural and substantive failures to provide J.H. a FAPE in the least restrictive environment ("LRE"); (ii) the District's purported failure to provide J.H. with an IEP at the beginning of the 2017–2018 school year, or, alternatively, to maintain her current homeschool placement under the IDEA's "Stay Put" provision (*see* 20 U.S.C. § 1415(j)); (iii) Plaintiffs' allegedly adequate notice of J.H.'s unilateral placement at Purnell (*see* 20 U.S.C. § 1412(a)(10)(C)(iii)); and (iv) the ALJ's purported bias against Plaintiffs, resulting in incorrect findings of fact and conclusions of law.

"If parents believe that the school district is not providing a FAPE for their child, they may unilaterally remove [her] from the school, enroll [her] in a different school, and seek tuition reimbursement for the cost of the alternative placement." *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 426 (3d Cir. 2013). However, "parents who unilaterally change their child's placement . . . without the consent of state or local school officials, do so at their own financial risk." *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373–74 (1985). To recover such costs, plaintiffs must establish "(1) that the district failed to provide a [FAPE] in the [LRE], and (2) that [their] private placement was appropriate." *G.A. ex rel. L.A. v. River Vale Bd. of Educ.*, No. 11-3801, 2013 WL 5305230, at *12 (D.N.J. Sept. 18, 2013) (citing *T.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 582 (3d Cir. 2000)). Under the IDEA, parents must provide written notice of "their intent to enroll their child in a private school at public expense" at least 10 business days before the child is removed from public school. 20 U.S.C. §

1412(a)(10)(C)(iii)(I); *see* N.J.A.C. 6A:14–2.10(c)(2).  Reimbursement for a child's unilateral placement in a private school may be reduced or denied for any of the following reasons: "(1) the parents did not inform the district at the most recent IEP meeting that they were removing the child; (2) the parents failed to provide written notice to the district at least 10 business days prior to removal of their intent to unilaterally remove the student and seek reimbursement; (3) the district proposed a reevaluation prior to the removal and the parents did not make the student available for reevaluation; or (4) a judicial body finds the parental actions unreasonable." *W.D. v. Watchung Hills Reg'l High Sch. Bd. of Educ.*, No. 13-3423, 2014 WL 793459, at *2 (D.N.J. Feb. 26, 2014), *aff'd*, 602 F. App'x 563 (3d Cir. 2015) (citing 20 U.S.C. § 1412(a)(10)(C)(iii)).  The notice requirement exists "to give the school district an opportunity, '*before* the child is removed, to assemble a team, evaluate the child, devise an appropriate IEP, and demonstrate whether or not a FAPE can be provided in the public schools.'" *T.H. ex rel. A.H. v. Clinton Twp. Bd. of Educ.*, No. 05-3709, 2006 WL 1128713, at *6 (D.N.J. Apr. 25, 2006) (quoting *J.B. v. Watchung Hills Reg'l Sch. Dist. Bd. of Educ.*, No. 05-4722, 2006 WL 38936, at *8 (D.N.J. Jan. 5, 2006)).

Although Plaintiffs adamantly argue that they provided sufficient notice of J.H.'s unilateral placement to the District, the first step in the analysis is whether the District provided J.H. a FAPE in the LRE.  *See Upper Freehold Reg'l Bd. of Educ. v. T.W.*, 496 F. App'x 238, 245 (3d Cir. 2012) (noting that "the [d]istrict [c]ourt did not reach the real issue before it: whether the IEP proposed by the [d]istrict offered [the student] a FAPE, and, if not, whether the [student's] placement . . . was proper under the IDEA"); *see also H.L. o/b/o V.L. v. Marlboro Twp. Bd. of Educ.*, No. 16-9324, 2017 WL 5463347, at *6 (D.N.J. Nov. 14, 2017).  Relevant to this threshold issue, Plaintiffs contend that the District committed various procedural and substantive violations that resulted in

10

its failure to provide J.H. a FAPE.[5] (*See generally* D.E. 29-1.)  For example, Plaintiffs claim that (i) the District predetermined J.H.'s IEP and did not consider Plaintiffs' input in developing her IEP (*see id.* at 7–9); (ii) the District failed to conduct an educational evaluation of J.H. to assess all areas of suspected disability (*see id.* at 18–19); (iii) the District failed to provide J.H. a valid IEP to begin the 2017–2018 school year and failed to update her IEP to reflect independent assessments (*see id.* at 19–20); (iv) the April and May IEPs failed to include annual measurable academic and functional goals or objectives (*see id.* at 6); and (v) the April and May IEP meetings were convened without a general or special education teacher (*see id.* at 7).  Significantly, although Plaintiffs raised these same arguments before the ALJ (*see generally* D.E. 13-23), the Final Decision does not analyze any of these claims.  Without acknowledging Plaintiffs' specific arguments, the Final Decision characterizes all claims as "allege[d] substantive violations of [the] IDEA."  (*See* ALJ Op. at 19.)  As the Third Circuit has noted, however, even a procedural violation can constitute a denial of FAPE "only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 565 (3d Cir. 2010).

Here, the ALJ summarily concluded that based on the credible testimony of two witnesses for the District, J.H.'s placement in the "Being Successful Program" at WM Mendham "was based upon her specific needs, specifically her school based anxiety" and thus "support[s] a conclusion that the IEP was reasonably calculated to confer a meaningful academic benefit and was tailored to meet J.H.'s individual educational and therapeutic needs."  (ALJ Op. at 21.)  The Final Decision does not provide further explanation as to why the proposed placement was sufficient in light of *all* J.H.'s needs, and does not explain how the "Being Successful Program" operated to meet those

---

[5] Albeit Plaintiffs do not explicitly distinguish which alleged violations fall under the substantive or procedural categories.

11

needs.[6]  Similarly, the determination that J.H. was appropriately classified as "Emotionally Disturbed" was summarized in one sentence following a recitation of the classification's definition: "Clearly this was the appropriate classification given the information available to the district at the time the classification was made." (*Id.* at 22.)  This conclusion was rendered without addressing the substance of information the District had in reaching J.H.'s classification, or Plaintiffs' specific arguments that J.H. did not meet the classification criteria.  (*Compare* ALJ Op., *with* D.E. 13-23 at 27–37.)  Although this Court does not take issue with the underlying conclusion at this time, it finds that "there is a paucity of reasoning in the ALJ's opinion regarding these crucial analytical issues."[7]  *See Upper Freehold Reg'l Bd. of Educ.*, 496 F. App'x at 245; *R.S. v. Montgomery Twp. Bd. of Educ.*, No. 10-5265, 2012 WL 2119148, at *7 (D.N.J. June 11, 2012) (expressing "serious reservations as to whether the pointed critiques of the [s]chool [d]istrict's proposed IEP [were] sufficiently addressed within the ALJ's [f]inal [d]ecision" and remanding the matter to the ALJ "for redetermination of whether plaintiff received a FAPE").

For these reasons, this Court finds it appropriate to remand this matter to the ALJ so that it

---

[6] Moreover, the April and May IEPs placed J.H. in the "Behavioral Supports Program" at WH Mendham, but the ALJ found that the District intended to place J.H. in the "Being Successful Program" at WH Mendham.  (ALJ Op. at 16.)  The ALJ further concluded that the "Being Successful Program" catered to different needs as compared to the "Behavioral Supports Program" at WM Central.  (*Id.*)  Even if true, the Final Decision fails to address why J.H.'s IEP was never updated to reflect the "Being Successful Program," particularly after Plaintiffs expressed their concerns about the proposed "Behavioral Supports Program" as stated on the IEPs.  (*Id.* at 6 (acknowledging testimony that Plaintiffs had "felt that the BSP program was not the right fit for J.H. and were concerned how academics would be modified to a higher level within that setting").)

The "BSP" discrepancy is compounded further by Ms. Tracy Costa and Dr. David Leigh's testimony, whom the ALJ deemed credible in support of his conclusion.  (*Id.* at 13.)  Both witnesses testified that the WM Mendham program had been called the "Behavioral Supports Program," but neither specifically testified as to when the name purportedly changed to the "Being Successful Program."  (*See* D.E. 13-21 at 219:1–12, 283: 6–19.)  Nor did the ALJ make a finding as to when the name was changed at WM Mendham.  (*See* ALJ. Op.)

[7] It appears that the Final Decision lifts its findings of fact and analyses from the District's post-hearing brief.  (*Compare* ALJ Op., *with* D.E. 13-26); *see B.H. v. Johnston Cty. Bd. of Educ.*, No. 12-405, 2015 WL 1268280, at *3–4 (E.D.N.C. Mar. 19, 2015) (alluding that in circumstances such as where the ALJ's decision "is virtually a wholesale, verbatim recitation of the [school] Board's proposed final decision" remand to an administrative hearing officer may be appropriate for additional fact finding).

can address Plaintiffs' arguments that were not previously decided, and elaborate on the reasoning in support of its conclusions, particularly as to whether the District provided J.H. with a FAPE in the LRE and whether J.H. was properly classified.[8] *See Upper Freehold Reg'l Bd. of Educ.*, 496 F. App'x at 245 (permitting the district court to "request a remand to the ALJ" so that it could expand on the decision below); *R.R. v. Manheim Twp. Sch. Dist.*, 412 F. App'x 544, 549 (3d Cir. 2011) ("There is a reason for insisting on administrative review and the heightened level of deference accorded to its results: judicial review is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.") (internal quotations omitted); *R.S.*, 2012 WL 2119148, at *7 (noting that "courts lack the "specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy, and must be careful to avoid imposing their view of preferable educational methods upon the States") (internal quotations omitted). To the extent necessary, the ALJ may make additional findings of fact in support of its conclusion. In the event the ALJ finds that the District did *not* provide J.H. with a FAPE and that Plaintiffs' failed to comply with the IDEA's 10-day notice requirement,[9] it should then decide whether a reduction in tuition reimbursement would be appropriate.[10] *See H.L.*, 2017 WL 5463347, at *6.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion is **DENIED** and the matter is

---

[8] In addition, it appears that the ALJ should have addressed whether the District had an obligation to continue J.H.'s home instruction until an IEP was in place under the IDEA's "Stay Put" provision. (*See* D.E. 13-23 at 56.)

[9] Although this Court does not take issue with the conclusions below at this time, the record is unclear as to why Plaintiffs' Exhibit P27 was not analyzed with respect to notice. (*Compare* ALJ Op., *with* D.E. 13-25 at 3.)

[10] Because this Court finds that remand is warranted to further develop critical issues, it will not address arguments pertaining to the ALJ's alleged bias and his purported misapplication of law. Finally, this Court will not address the issue of constructive expulsion because Plaintiffs failed to raise this argument before the ALJ. (*See* D.E. 13-23); *see also P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 737 n.3 (3d Cir. 2009).

**REMANDED** to the Administrative Law Judge.  An appropriate order follows.

    /s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:    Clerk
cc:    Leda D. Wettre, U.S.M.J.
    Parties